**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| |
|---|
| GREGORY FOX and RITA FOX, individually and as parents to C.F., <br><br> Plaintiffs, <br><br> v. <br><br> PENDER MAKIN, MAINE SCHOOL ADMINISTRATIVE DISTRICT 51, JEFFREY PORTER, SALLY LOUGHLIN, and COREY MUNSEY, <br><br> Defendants. |

Civil Action No. 2:22-cv-00251-GZS

**COMMISSIONER MAKIN'S MOTION TO DISMISS WITH**
**INCORPORATED MEMORANDUM OF LAW**

Defendant Pender Makin, Commissioner of the Maine Department of Education, (Commissioner), hereby moves to dismiss Plaintiffs' Amended Complaint, ECF No. 45 [hereinafter, "Compl."], pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1]

**STATUTORY BACKGROUND ON MANDATORY IMMUNIZATIONS**

For nearly 40 years, Maine law has required that a parent immunize their child against several childhood diseases in order to attend any public or private elementary or secondary school in the State.[2] P.L. 1977, ch. 471 (eff. Oct. 24, 1977); 20-A M.R.S.A. §§ 6352-55 (2008 & Supp. 2022) (current codification). When the legislation was introduced in 1977, the Maine Legislature

---

[1]  As explained within, this motion seeks to dismiss all claims against the Commissioner.  In the event that the Commissioner, but not one or more of the other defendants, are dismissed from the case, the Attorney General would likely seek to intervene in the matter for the limited purpose of defending the constitutionality of Maine's statutes.

[2]  The original law applied only to grades kindergarten through six, P.L. 1977, ch. 471 (eff. Oct. 24, 1977) (enacting 20 M.R.S. § 1191(4)), but was expanded to grades kindergarten through 12 in 1981, P.L. 1981, ch. 693, § 5 (eff. Jul. 1, 1983) (enacting 20-A M.R.S. § 6351(1)(B)).

was concerned with the "large number of Maine children entering school without benefit of basic immunization against childhood diseases" which "constitute[d] a serious threat to themselves and to others." Exh. 34 at 3.[3]  As explained by then Maine State Senator Olympia Snowe: "[P]arents have become apathetic in the last few years about immunizing their children, and now we find, not only in the State of Maine, but across the country, that there have been a number of outbreaks in various childhood communicable diseases, and it has become a serious problem."[4]  Exh. 35 at 2. To protect children from childhood diseases, the Maine Legislature chose to require all elementary and secondary school children attending public and private schools to be immunized against vaccine-preventable childhood diseases.

Today, the diseases that children must be immunized against are designated in state regulations, jointly promulgated by Maine Department of Education and the Maine Center for Disease Control and Prevention: Immunization Requirements for School Children, 05-071 Me. Code R. ch. 126 (2021); 10-144 Me. Code R. ch. 261 (2021) [hereinafter "Immunization Rule"].[5] The exemptions to these vaccination requirements are provided in state statute. 20-A M.R.S.A. § 6355. A student may not attend any public or private elementary or secondary school in the State unless the students shows proof of vaccination or qualifies for an exemption. *Id.* Until 2019,

---

[3] In this memorandum, the Commissioner refers to official public records which are filed in support of this motion. The Court may consider these materials without converting this motion to dismiss into one for summary judgment. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (in ruling on a motion to dismiss, the court may consider "documents the authenticity of which are not disputed by the parties[,] official public records[,] documents central to plaintiffs' claim[,] or for documents sufficiently referred to in the complaint").

[4] The federal government was also concerned with outbreaks of childhood diseases in schools during this period. Department of Health and Human Services Secretary Joseph Califano urged all governors "to enact and enforce compulsory vaccination laws," and the Centers for Disease Control and Prevention likewise advocated for "the establishment and universal enforcement for immunisation before school entry[.] By 1980, all 50 states had laws that linked vaccination with school entrance." Daniel A. Salmon, et al., *Compulsory vaccination and conscientious or philosophical exemptions: past, present, and future*, 367 THE LANCET 436, 439 (2006); *see also* Exh. 35 at 2 (noting Secretary Califano's program seeking "to raise the level of immunization of children, up to over 90 per cent").

[5] As originally adopted, Maine school children had to be vaccinated against poliomyelitis, diphtheria, pertussis, tetanus, measles, and rubella—six childhood diseases against which Maine students still must be immunized in order to attend school. *Compare* Exh. 36 at 2, *with* Immunization Rule § 2(A).

there were three statutory exemptions[6] to school vaccination requirements: when vaccination was (A) medically inadvisable, (B) contrary to a sincerely held religious belief, or (C) opposed for philosophical reasons.  20-A M.R.S.A. §§ 6355(2), (3) (2008).

By 2018, vaccination rates for required vaccinations for Maine school children had fallen below the population-wide rates of vaccination necessary to prevent the spread of those communicable diseases.  *See* Exhs. 2-3.  In certain school districts, a third of the students were claiming nonmedical exemptions.  Exh. 3 at 1; *see also* Exh. 20 (including data from 2017 and 2018 on outbreaks of communicable diseases and percent of vaccination exemption by county).

In 2019, a bill was introduced in the Maine Legislature to eliminate nonmedical exemptions from the State's mandatory school vaccination requirements: L.D. 798 (129th Legis. 2019).  Exh. 1.  The purposes of the legislation were clear: to reverse the trajectory of falling vaccination rates in schools, to prevent childhood diseases from taking root in schools, and to protect schoolchildren and other who are unable to be vaccinated for medical reasons.  *See* Exhs. 2-12.  "Evidence shoes that states that have tighter exemption laws haver higher immunization rates, and less disease."  Exh. 5 at 2.  As explained by the bill's sponsor, "we [must] work together . . . to raise our immunity threshold to the point where a disease cannot take root, and then keep it at that level until there is no source of that disease left to defend."  Exh. 2 at 1.  Achieving this threshold allows vulnerable populations, including "infants, children, and adolescents too young" or too ill to be vaccinated "to rely on what is called 'herd immunity,'" Exh. 10 at 1, meaning a sufficient vaccination rate that prevents that disease from taking hold, Exh. 7 at 1; *see also* Exh. 6 at 4, Exh. 9 at 1.  *See also* Exhs. 13-18 (testimony of parents and relatives of immunocompromised children

---

[6]  In addition, the statute includes a grace period provision that permits students to attend school for up to 90 days while they are coming into compliance with one or more vaccination requirements.  20-A M.R.S.A. § 6355(1) (Supp. 2022).

and of immunocompromised high school students).

After significant debate on the floor of the Maine House and Senate, in May of 2019, the Maine Legislature voted to eliminate nonmedical exemptions to vaccination requirements for schoolchildren.[7]  P.L. 2019, ch. 154 (varying effective dates).  The elimination of nonmedical exemptions for certain students with individualized education plans (IEPs) was accomplished through a sunset provision.[8]  Under the IEP sunset provision, a student covered by an IEP as of September 1, 2021, and who previously had claimed a nonmedical exemption to the State's school vaccination requirements, could continue to qualify for and claim that nonmedical exemption. 20-A M.R.S.A. § 6355(4) (Supp. 2022).  The provision ensures continued access to school for students with disabilities currently receiving an education designed to meet their unique needs. Students with IEPs first effective after September 1, 2021, however, are eligible only for the medical exemption, thereby sunsetting the IEP provision.  *Id.*

This statutory change was the subject of a statewide people's veto referendum on March 3, 2020.  Exh. 31.  Seventy-two percent (72%) of Maine voters approved the 2019 statutory amendment.  Exh. 31.  Although passed in 2019, the portions of the law affecting elementary and secondary school students did not become effective until September 1, 2021, thereby allowing affected families more than two years to plan for the change in the law.  P.L. 2019, ch. 154, §§ 2, 12.

The elimination of nonmedical exemptions has had profound effects on the vaccination rates of elementary and secondary school students.  In 2019, statewide, 6.20%, 4.68%, and 5.13% of kindergarten, seventh, and twelfth grade students, respectively, were claiming exemptions from

---

[7]  The law also eliminated nonmedical exemptions to State-mandated vaccinations for healthcare workers, daycare employees, and post-secondary students.  P.L. 2019, ch. 154, §§ 6, 9-10.

[8]  An IEP is an educational plan to meet a student's individualized educational needs that is developed by a team of individuals, including the student's parent.  Once in place, an IEP acts as an agreement between the parent and the school that can be enforced through administrative and judicial proceedings.

Maine's mandatory school vaccinations.[9]  Exh. 32 at 9.  By 2022, only 1.76%, 1.33%, and 1.24% of students statewide in kindergarten, seventh, and twelfth grade, respectively were claiming the medical exemption or utilizing the IEP sunset provision.  Exh. 33 at 7.  As time passes, the number of students utilizing the IEP provision will decrease, eventually to zero.

## FACTUAL BACKGROUND[10]

Plaintiffs Gregory and Rita Fox are residents of the Town of Cumberland and parents to seven-year-old C.F.  Compl. ¶¶ 6-8.  The Foxes have sincere, religious beliefs that prevent them from vaccinating C.F.  Compl. ¶ 22.  C.F. attended kindergarten at Mabel I. Wilson Elementary School (MWES) in Cumberland, Maine during the 2020-2021 school year by claiming a religious exemption.  Compl. ¶ 23.  C.F. could no longer claim a religious exemption during the 2021-2022 school year after the statutory amendment went into effect, and C.F. was not permitted to attend first grade at MWES.  Compl. ¶¶ 24-29.  C.F.'s sibling and several other children who had previously claimed a nonmedical exemption and had an IEP in place effective September 1, 2021, still are able to attend MWES.  Compl. ¶ 30.  Students with medical exemptions are also able to attend MWES.  Compl. ¶ 32.  In addition, there are adults present at MWES and in other schools, such as teachers, staff, and volunteers, against whom the school vaccination requirements do not apply.  Compl. ¶ 33.

The Foxes claim that section 6355 is unconstitutional, both on its face and as applied, under the Free Exercise Clause of the First Amendment and Equal Protection Clause of the Fourteenth Amendment because it discriminates on the basis of religious belief and does not treat similarly situated children equally.  Compl. ¶¶ 34-51.

---

[9]  These statewide averages mask that some schools had vaccination exemption rates in certain grades as high as 30%, 42.9%, and 62.5%.  Exh. 32 at 3.

[10]  The Commissioner assumes for the purposes of this motion that all the well-pleaded factual allegations in the complaint are true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (conclusory allegations not entitled to presumption of truth).

## LEGAL STANDARDS

Pursuant to Fed. R. Civ. P. 12(b)(6), the Commissioner moves to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted.  To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *United States v. Conagra Grocery Prods. Co.*, 4 F. Supp. 3d 243, 252 (D. Me. 2014) (cleaned up).  A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "'differs little from that used to review motions to dismiss' under Rule 12(b)(6)."  *Pollack v. Reg'l Sch. Unit 75*, 12 F. Supp. 3d 173, 184 (D. Me. 2014) (quoting *Benjamin v. Aroostook Med. Ctr.*, 57 F.3d. 101, 104 (1st Cir. 1995)).  However, a "district court may 'resolve . . . factual disputes between the parties' 'in order to determine its own jurisdiction.'"  *Me. Mar. Acad. v. Fitch*, 425 F. Supp. 3d 24, 28 (D. Me. 2019) (quoting *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001)).

## ARGUMENT

**I.      The Eleventh Amendment bars the Foxes' official capacity damage claims against the Commissioner.**

The Foxes have sued the Commissioner under federal law in her official and personal capacities, and they seek compensatory damages.[11]  Compl. 1 & ¶¶ 42, 51.  The Court should dismiss, pursuant to Rules 12(b)(1) and 12(b)(6), the official-capacity damages claims against the Commissioner.  The Eleventh Amendment serves as a bar to claims for monetary damages against State officers in their official capacities.  *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).  In a section 1983 action, "[a] suit against a state official in his or her official capacity . . . is no different from a suit against the State itself."  *Will*, 491 U.S. at 71 (citation omitted).  Accordingly, all

---

[11]   The Foxes previously asserted that they were not seeking damages against the Commissioner in her official capacity, ECF No. 25 at 6, but their Amended Complaint makes no such distinction between official capacity and personal capacity damage claims.

official capacity damage claims against the Commissioner should be dismissed.

## II.     The Commissioner is entitled to qualified immunity for all damages claims brought against her in her personal capacity.

"The qualified immunity doctrine protects . . . state officials from civil liability in the performance of 'discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Martínez-Rodríguez v. Guevara*, 597 F.3d 414, 419 (1st Cir. 2010) (alteration omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)).  "A rule is clearly established either when it is dictated by controlling authority or a robust consensus of cases of persuasive authority."  *Irish v. Fowler*, 979 F.3d 65, 76 (1st Cir. 2020) (quotation marks omitted).  The crucial inquiry is "whether the precedent is 'clear enough that every reasonable [state] official would interpret it to establish the particular rule the plaintiff seeks to apply' and whether '[t]he rule's contours [were] so well defined that it is clear to a reasonable [state] officer that his conduct was unlawful in the situation he confronted.'"  *Id.* (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)) (first and last alteration added).  Accordingly, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law."  *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quotation marks omitted).

As explained *infra*, courts of this country routinely have upheld mandatory vaccination laws to a variety of constitutional challenges for more than a century—including Free Exercise challenges to school vaccination laws without religious exemptions.  Therefore any action taken by the Commissioner to explain or enforce Maine's mandatory school vaccination law did not violate any clearly established right of the Foxes or C.F.

In their Amended Complaint, the Foxes assert that the legal principles at issue in this case were "firmly established prior to 2022."  Compl. ¶ 41.1.  But they misapprehend what constitutes

"clearly established" authority for purposes of qualified immunity. Compl. ¶ 41.1. "[T]he clearly established law must be particularized to the facts of the case," *White v. Pauly*, 580 U.S. 73, 79 (2017) (quotation marks omitted), and must give fair warning to state officials, *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). The Supreme Court's "longstanding principle" is that "clearly established law should not be defined at a high level of generality." *White*, 580 U.S. at 79 (cleaned up). Instead, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quotation marks omitted).

The cases the Foxes rely on run afoul of these qualified immunity principles—they "lay out [Free Exercise] principles only at a general level." *White*, 580 U.S. at 79. None of the cases cited are "particularized" to mandatory school vaccination laws nor place the constitutional issues they raise "beyond debate." *Id.* Instead, these cases address the constitutionality of a criminal drug possession statute, a zoning ordinance, an agreement to provide foster care placement services, and COVID-19 gathering restrictions.[12] In short, the Foxes have failed to identify any precedent, much more a consensus of cases, in which a mandatory school vaccination law was held to be unconstitutional on Free Exercise grounds. The Commissioner therefore is entitled to qualified immunity, and the personal capacity damages claims against her should be dismissed.

## III.  The Foxes' Free Exercise challenge to Maine's school vaccination law fails under Fed. R. Civ. P. 12(b)(6).

The First Amendment, applicable to the states through the Fourteenth Amendment, "declares that Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940); U.S. Const. amend. I. The First Amendment "embraces two concepts": the "freedom to believe" and the "freedom to

---

[12] *Emp't Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872 (1990); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993); *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021); *Tandon v. Newsom*, 141 S. Ct. 1294 (2021) (per curiam).

act." *Cantwell*, 310 U.S. at 303.  While the freedom to believe is "absolute," the freedom to act "cannot be." *Id.* at 304.

In Count I, the Foxes assert that the available exceptions to Maine's mandatory school vaccinations constitute a violation of their rights to free religious exercise because the law does not allow them to claim a religious exemption for C.F.  Compl. ¶¶ 30, 31.1-42.

As an initial matter, Maine's basic framework for school vaccinations (mandatory vaccination with a medical exemption) has already been upheld by this Court.  In August, this Court dismissed a suit challenging, in part on First Amendment grounds, Maine's requirement that healthcare workers be vaccinated against COVID-19.  *See Lowe v. Mills*, No. 1:21-cv-00242-JDL, 2022 WL 3542187 (D. Me. Aug. 18, 2022).  That suit also challenged the elimination of nonmedical exemptions for mandatory vaccinations for healthcare workers, and the medical exemption in both statutes is substantially identical.  *Compare* 22 M.R.S.A. § 802(4-B) (Supp. 2022), *with* 20-A M.R.S.A. §§ 6354-55.  Judge Levy concluded in *Lowe* that Maine's "COVID-19 vaccine mandate," which includes only a medical exemption, "is both neutral and generally applicable, [and] rational basis review applies." 2022 WL 3542187 at *14.  The Court determined that the laws were rationally related to Maine's interests in limiting the spread of disease and "protecting the lives and health of Maine people," and dismissed the Free Exercise claim.  *Id.*

The addition of the IEP sunset provision does not change the outcome for the Foxes in this case.  Both the medical exemption and IEP sunset provision are constitutionally valid.  The court should dismiss the Foxes' Free Exercise challenge to Maine's mandatory school vaccination laws.

**A.    The Constitution does not require a religious exemption to a mandatory vaccination law.**

The courts of this country, including the Supreme Court, have long upheld states' mandatory vaccination laws against constitutional challenges.  In *Jacobson v. Massachusetts*, the

City of Cambridge had an outbreak of smallpox, and it enacted a regulation requiring, under threat of criminal penalties, that <u>all</u> inhabitants, adults and children alike, be vaccinated.  197 U.S. 11, 12-13 (1905).  The ordinance included an exception for children "who present[ed] a certificate, signed by a registered physician, that they are unfit subjects for vaccination."  *Id.* at 12; *cf.* 20-A M.R.S.A. § 6355(2) (including similar medical exemption for students).  Mr. Jacobson refused to be vaccinated based on his personal beliefs, was convicted of violating the regulation, and then challenged the law pursuant to the Due Process and the Equal Protection Clauses of the Fourteenth Amendment.  197 U.S. at 13-14.  The Supreme Court rejected the challenge, reasoning that

> There are manifold restraints to which every person is necessarily subject for the common good.  On any other basis organized society could not exist with safety to its members.  Society based on the rule that each one is a law unto himself would soon be confronted with disorder and anarchy.

*Id.* at 26; *accord Emp't Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 890 (1990) (rejecting system of religious accommodation "in which each conscience is a law unto itself"). The Court upheld the compulsory vaccination law because the means chosen to "stamp out the disease of smallpox"—mandatory vaccination—had a "real or substantial relation to the protection of the public and the public safety."  *Jacobson*, 197 U.S. at 31.

Relying in part on *Jacobson*, the Supreme Court likewise has upheld a state's compulsory school vaccination laws against a Fourteenth Amendment challenge brought by a parent whose child was denied enrollment in both public and private schools.  *See Zucht v. King*, 260 U.S. 174, 176 (1922) (explaining *Jacobson* "settled that it is within the police power of a state to provide for compulsory vaccination").  Later, when confronted with First Amendment challenges to laws regulating the conduct of children, the Supreme Court wrote:

> [T]he family itself is not beyond regulation in the public interest, as against a claim of religious liberty.  And neither rights of religion nor rights of parenthood are beyond limitation.  [A parent] cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds.  The right to practice

> religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death.

*Prince v. Massachusetts*, 321 U.S. 158, 165–67 (1944) (citations omitted); *Smith*, 494 U.S. at 888-89 ("The First Amendment's protection of religious liberty does not require" "religious exemptions [to] compulsory vaccination laws"); *see also In re Z.S.*, 2015 ME 110, ¶¶ 7-10, 121 A.3d 1286 (affirming Maine trial court decision to approve vaccination of child in Department custody over mother's non-medical objections to vaccination).

In the subsequent decades, federal and state courts have applied *Jacobson*, *Zucht*, and *Prince* to uphold compulsory school vaccination law against Free Exercise challenges. *See, e.g.*, *Phillips v. City of New York*, 775 F.3d 538, 543-44 (2d Cir. 2015) ("mandatory vaccination as a condition for admission to school does not violate the Free Exercise Clause"), *cert. denied*, 577 U.S. 822 (2015); *Workman v. Mingo Cnty. Bd. of Educ.*, 419 F. App'x 348, 352-54 (4th Cir. 2011) (concluding West Virginia's mandatory school vaccination law that allowed for only medical exemptions withstood strict scrutiny review), *cert. denied*, 565 U.S. 1036 (2011). In addressing claims of religious discrimination, numerous courts have held that the Constitution simply does not require a state to provide a religious exemption to a mandatory vaccination law. *See, e.g.*, *Nikolao v. Lyon*, 875 F.3d 310, 316 (6th Cir. 2017) ("[Nikolao] has not been denied any legal right on the basis of her religion. Constitutionally, Nikolao has no right to [a vaccine] exemption."), *cert. denied*, 138 S. Ct. 1999 (2018) (mem.); *Phillips*, 775 F.3d at 543 ("New York law goes beyond what the Constitution requires by allowing an exemption [to mandatory vaccination] for parents with genuine and sincere religious beliefs."); *Harris v. Univ. of Mass., Lowell*, No. 21-CV-11244-DJC, 2021 WL 3848012, at *7 (D. Mass. Aug. 27, 2021) ("UMass is under no constitutional obligation to offer a religious exemption to its Vaccine Requirement."); *Klaassen v. Trs. of Ind. Univ.*, 549 F.Supp.3d 836, 861-67, 890 (N.D. Ind. July 18, 2021) (upholding vaccination

requirement applied to college students and reasoning "courts have consistently held that schools that provided a religious exemption from mandatory vaccination requirements did so *above and beyond* that mandated by the Constitution"), *appeal dismissed as moot*, 24 F.4th 638 (7th Cir. 2022); *Davis v. Maryland*, 451 A.2d 107, 111-112 (Md. 1982) (explaining state need not "provide a religious exemption from its immunization program").

While a state may choose to provide a religious exemption to a vaccination requirement, that policy choice is not of constitutional dimension. Accordingly, Maine was never required to provide a religious exemption to its school vaccination requirements, and the elimination of that exemption is not a constitutional violation. *F.F. v. New York*, 143 N.Y.S.3d 734 *passim* (N.Y. App. Div. 2021) (upholding repeal of religious exemptions from mandatory school vaccination law against free exercise challenge), *cert. denied*, 142 S. Ct. 2738 (2022).

### B.     Maine does not violate the Free Exercise Clause by not providing a religious exemption to its mandatory school vaccination law.

"When a religiously neutral and generally applicable law incidentally burdens free exercise rights," it will be sustained "against constitutional challenge if it is rationally related to a legitimate governmental interest." *Doe v. Mills*, 16 F.4th 20, 29 (1st Cir. 2021), *cert. denied.* 142 S. Ct. 1112 (2022); *Smith*, 494 U.S. at 879 ("[T]he right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" (citations omitted)). "When a law is not neutral or generally applicable, however," it may be sustained "only if it is narrowly tailored to achieve a compelling governmental interest." *Doe*, 16 F.4th at 29.

The Foxes challenge, on Free Exercise grounds the medical exemption and the IEP sunset provision to the State's school vaccination requirements.[13]  Compl. ¶¶ 30-33.

---

[13]  The Foxes also challenge the grace period provision, but the Court can and should reject this challenge summarily.

Medical exemption.  The medical exemption to Maine's school vaccination requirements allows that child to attend school upon providing "a written statement from a licensed physician, nurse practitioner or physician assistant that, in the licensed physician's, nurse practitioner's or physician assistant's professional judgment, immunization against one or more of the diseases may be medically inadvisable."  20-A M.R.S.A. § 6355(2).

IEP sunset provision.  Under the IEP sunset provision, certain students with IEPs in place as of September 1, 2021, are also exempt, provided they had previously claimed a nonmedical exemption.  *See* 20-A M.R.S.A. § 6355(4).  In order to continue to claim that nonmedical exemption, a student or the student's parent must submit a signed statement from a physician indicating that the physician explained the risks and benefits of vaccination to the student or the student's parent.  *See* 20-A M.R.S.A. § 6355(4) (exempting qualifying students with IEPs from school vaccination requirements).  Students with IEPs in place after September 1, 2021, do not qualify for this provision.  *Id.*

      1.     Maine's school vaccination law is a neutral law of general applicability that is rationally related to a legitimate state interest.

Neutrality.  "[I]f the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral."  *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993).  In the healthcare worker context, the First Circuit has already

---

The provision allows a student up to 90 days to come into compliance with the required immunizations by providing a school with written assurance that the child will be vaccinated within that time frame.  *See* 20-A M.R.S.A. § 6355(1). The provision thus allows a one-time, temporary grace period during which they may attend school.  Immunization Rule § 3(A)(1).  If the student does not receive all their vaccinations in that time frame, they must be excluded from school until they are completed.  Immunization Rule § 3(A)(1).  In essence, the grace period is a limited delay in enforcement, which applies to all students and easily passes constitutional muster.  The grace period provision furthers the State's interests in of increasing the overall vaccination rate of schoolchildren, which will protect the health of students unable to be vaccinated and prevent the spread of communicable diseases amongst schoolchildren.  *See Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1179 (9th Cir. 2021) (reasoning a 30-day grace period to a single vaccination requirement did not defeat general applicability), *reconsideration en banc denied*, 22 F.4th 1099 (9th Cir. 2022).  Moreover, not being able to immediately serve students because they are unvaccinated would draw federal scrutiny.  *See* 42 U.S.C.A. § 11432(g)(3)(C) (Westlaw, through P.L. 117-262).

held that Maine's basic framework (mandatory vaccination subject to minimal exemptions) "is facially neutral." *Doe*, 16 F.4th at 30.

The Foxes have failed to demonstrate that their religious views were targeted by the elimination of nonmedical exemptions. *See Lukumi*, 508 U.S. at 535. The Legislature's elimination of nonmedical exemptions[14] was intended to increase the overall rate of student vaccination, prevent disease from taking root in Maine's schools, and protect children who are unable to be vaccinated for medical reasons.[15] Moreover, the Maine "[L]legislature removed both religious and philosophical exemptions from mandatory vaccination requirements, and thus did not single out religion alone." *Doe*, 16 F.4th at 30; *see also Whitlow v. Cal., Dep't of Educ.*, 203 F. Supp. 3d 1079, 1086-87 (S.D. Cal. 2016) (concluding plaintiffs were unlikely to succeed on merits of First Amendment Free Exercise challenge to mandatory California school vaccination law that included both a medical exemption and an IEP exemption).

The law is also facially neutral. "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *See Lukumi*, 508 U.S. at 535. Maine's school vaccination requirements do not refer to religious practice, conduct, belief, or motivation. The IEP sunset provision does continue to allow for religious and philosophical exemptions for some students, but those students must have had IEPs in place on September 1, 2021. Thus, the provision distinguishes between students with IEPs, not solely by religious conduct or motivation. Moreover, even laws that provide religious exemptions have been upheld as facially neutral. *See Tingley v. Ferguson*, 47 F.4th 1055, 1064-65 & 1088-89 (9th Cir.

---

[14] The IEP sunset provision operates over a longer period of time, but still represents an elimination of nonmedical exemptions to school vaccination requirements.

[15] *See, e.g.*, Exh. 2 (Rep. Tipping testimony); Exh. 3 (Rep. MacDonald testimony); Exh. 23 at H-397 (Rep. Ingwersen remarks) & H-400 (Rep. Tipping remarks); Exh. 24 at S-556 & S-563 (Sen. Millett remarks) & S-560 to -561 (Sen. Bellows remarks); Exh. 25 at H-492 (Rep. Fecteau remarks); Exh. 26 at S-651 to -652 (Sen. L. Sanborn remarks); Exh. 27 at H-595 to -596 (Rep. McDonald remarks); Exh. 29 at S-754 (Sen. H. Sanborn remarks) & S-755 (Sen. L. Sanborn remarks).

2022) (concluding law prohibiting conversion therapy on minors with an exception for religious counselors was facially neutral).

Finally, Maine's framework is very similar to Connecticut's school vaccination requirements, which have also been held to be neutral laws of general applicability. Connecticut recently eliminated the religious exemption to its school vaccination requirements, except for students in kindergarten to grade twelve with existing religious exemptions, while maintaining a medical exemption. *See* 2021 Conn. Legis. Serv. P.A. 21-6 (Westlaw). Parents of incoming students who wanted to claim a religious exemption for their children filed suit, claiming the new law violated their Free Exercise rights. *See We the Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 579 F. Supp. 3d 290, 298 (D. Conn. 2022). Upon the State's motion to dismiss, the court analyzed the Free Exercise claim and concluded Connecticut's mandatory vaccination laws were neutral. *See id.* at 306-07 (dismissing Free Exercise challenge to mandatory school vaccination law with medical exemption and religious exemption sunset pursuant to Rule 12(b)(6)). This Court should likewise conclude that Maine's law, which also allows for certain students to continue utilizing nonmedical exemptions (subject to a sunset), is religiously neutral.

<u>General applicability</u>. The general applicability requirement prohibits the government from selectively "impos[ing] burdens <u>only</u> on conduct motivated by religious belief," *Lukumi,* 508 U.S. at 543 (emphasis added); "consider[ing] the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions,'" *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021) (quoting *Smith*, 494 U.S. at 884); or "prohibit[ing] religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way," *Fulton*, 141 S. Ct. at 1871. Maine's school vaccination law does none of these things.

*First*, the school vaccinations requirements apply to all students, not "only against conduct with a religious motivation." *Lukumi*, 508 U.S. at 542-43. Superintendents of public and private

elementary and secondary schools must verify children are vaccinated against several childhood diseases, unless the student is medically exempt or able to claim the IEP provision. Neither the medical exemption nor the IEP sunset provision defeats general applicability by imposing burdens <u>only</u> on those with religious beliefs.

*Second*, the medical exemption to the Rule is not a "mechanism for individualized exemptions," wherein the government has discretion to allow an exemption "based on the circumstances" of each claimant. *Fulton*, 141 S. Ct. at 1877 (quotation marks omitted); *see also Sherbert v. Verner*, 374 U.S. 398, 406 (1963). The constitutional defect in *Fulton* and *Sherbert* was that each state law allowed for government officials to exercise broad discretion to exempt a person or entity from the state law's requirements. Unlike in *Fulton* and *Sherbert*, section 6355 vests discretion regarding medical exemptions with healthcare providers, not State officials. *See Doe*, 16 F.4th at 30. The medical exemption to Maine's school vaccination requirements allows that child to attend school upon providing "a written statement from a licensed physician, nurse practitioner or physician assistant that, in the licensed physician's, nurse practitioner's or physician assistant's professional judgment, immunization against one or more of the diseases may be medically inadvisable." 20-A M.R.S.A. § 6355(2). School officials do not interrogate the medical professional's judgment in evaluating medical exemptions—just as the State of Oregon did not evaluate why a doctor prescribed a controlled substance in *Smith*, 494 U.S. at 874. Likewise, the requirements for the IEP sunset provision are clearly stated, and do not allow for individualized discretionary determinations.[16] Maine's school vaccination laws are not an unconstitutional, discretionary system of individualized exemptions.

*Third*, the inclusion of a medical exemption and IEP sunset provision does not undermine

---

[16] The same is true for the grace period provision.

the State's interests.  In 2018 and 2019, Maine faced vaccination rates among school children that had fallen below the rates of vaccination necessary to prevent the spread of those communicable diseases.  In eliminating nonmedical exemptions to vaccination requirements, the Maine Legislature sought to reverse the trajectory of falling vaccination rates, prevent communicable, preventable diseases from taking root in schools, and protect children and others who are unable to be vaccinated for medical reasons.  Exempting persons who are medically able to be vaccinated would <u>not</u> serve Maine's goals, but exempting persons for whom vaccination is medically advisable does serve the State's goals.  *See Doe* 16 F.4th at 30–31; *see also Prince*, 321 U.S. at 166-67 ("The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death.").

*Fourth*, the Foxes' focus on the comparable risks posed from the presence of unvaccinated students and adults in schools misstates the general applicability analysis.  According to the Foxes, the risks posed by unvaccinated students and adults in school is the same, regardless of the reason they are not vaccinated.[17]  Compl. ¶¶ 18.1-18.5, 30-33.  This "risk analysis" stems the Supreme Court's COVID-19 gathering restriction decisions in *Tandon v. Newsom*, 141 S. Ct. 1294 (2021) (per curiam), and *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) (per curiam).

But the Foxes are wrong in two interrelated ways.  First, they misconstrue and misapply *Tandon*'s analysis.  *Tandon* explained that "government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* <u>comparable</u> secular activity more favorably than religious exercise."  141 S. Ct. at 1296 (second emphasis added).  The Foxes' Amended Complaint ignores that comparability "for

---

[17]  Even though certain persons present in schools are not required to be vaccinated, that does not mean they are <u>not</u> vaccinated against one, some, or all of the diseases against which students must be immunized.

purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Id.*

Second, the Foxes are forcing the facts of *Roman Catholic Diocese* and *Tandon* onto this case.  In both cases, the States assessed the transmission risks posed by different activities and settings and prohibited or limited religious gatherings while placing no restrictions (or fewer restrictions) on numerous, secular settings based on each State's risk assessments. *Tandon*, 141 S. Ct. at 1297 (persons at permitted "to bring together more than three households at a time" at "hair salons, retail stores, personal care services, movie theaters, [and] private suites at sporting events," but not for "at-home religious exercise"); *Roman Cath. Diocese*, 141 S. Ct. at 66 (limiting admission to houses of worship in certain area to ten persons, but not in "essential" businesses, such as "acupuncture facilities, camp grounds, garages, [and] plants manufacturing chemicals"). In each case, the Supreme Court rejected the risk assessments the State made because, in the Court's view, the State singled out religious activity for harsher treatment than secular activity that posed equal risk.

In contrast, Maine has made no comparative assessment of risk between secular and religious activities.  In eliminating nonmedical exemptions to school vaccination requirements, the Maine Legislature sought to reverse the trajectory of falling vaccination rates amongst schoolchildren in order to prevent communicable, preventable diseases from taking root in schools and to ensure that all students medically u̲n̲able to be vaccinated could be protected by the immunity of his or her classmates.  Exhs. 2-20.

Framed properly, the existing exceptions to the school vaccination requirements do not undermine Maine's actual interests in increasing the overall vaccination rate of schoolchildren, protecting the health of students unable to be vaccinated, and preventing childhood diseases from

taking root in schools.[18]  Providing an exemption to students who cannot be vaccinated for medical reasons to be vaccinated furthers the State's interests in protecting those children.  *See Lowe*, 2022 WL 3542187 at *13.  And, the IEP sunset also furthers the State's goals, albeit over a longer period of time.  Eventually, this provision will have no further application, and the Legislature's elimination of nonmedical exemptions to school vaccination requirements will be complete.  The Foxes fail to address the time limitation of the IEP sunset and the actual interests of the State.

*Fifth*, Maine's vaccination requirements are not substantially underinclusive because they do not require "teachers, principals, school staff, janitors, volunteers, and other non-students" to be vaccinated.  Compl. ¶ 33.  As explained by the Second Circuit: "neither the Supreme Court, our court, nor any other court of which we are aware has ever hinted that a law must apply to all people, everywhere, at all times, to be 'generally applicable.'"  *Kane v. De Blasio*, 19 F.4th 152, 166 (2d Cir. 2021 (rejecting Free Exercise challenge to New York City's COVID-19 vaccine mandate for city employees).  The school vaccination laws apply to school children as a class, and a law that "applies to an entire *class* of people" not only "can be generally applicable," but also is so here.  *Kane*, 19 F.4th at 166.  Maine's interests in its school vaccination laws have always been in protecting students from childhood diseases, *see* Exhs. 34-36, which interests are not harmed by not requiring non-students to be vaccinated.  *See Lowe*, 2022 WL 3542187 at *14 (dismissing Free Exercise claim challenging vaccine mandate that applied to employees of certain healthcare facilities, but not patients or visitors).  The vaccination status of adults with respect to childhood diseases has no impact on the policy the State of Maine is implementing.

---

[18]  For the same reasons, Maine's school vaccination laws do not reflect a value judgment in favor of a secular interest over religious interests because whether a vaccine exemption reflects a value judgment that discriminates against religious exercise must be evaluated based on the policy objective to be achieved.  *Cf. Yellowbear v. Lampert*, 741 F.3d 48, 61 (10th Cir. 2014) (Gorsuch, J.) (explaining a State may "identify[] a qualitative or quantitative difference between the particular religious exemption requested and other secular exceptions already tolerated, and then explain[] how such differential treatment furthers" the State's concern).

Rational basis review.  Because Maine's mandatory school vaccination laws are neutral and generally applicable, the applicable standard of constitutional review is rational basis. Preventing disease from taking root in schools and protecting students unable to be vaccinated for medical reasons are unquestionably legitimate state interests.  *See Workman*, 419 F. App'x at 353-54 (holding States have a clear, compelling interest in preventing the spread of communicable diseases even when there is no ongoing pandemic and when those diseases are not prevalent).  And requiring vaccination, the most effective method of preventing the spread of communicable disease, is rationally related to achieving that goal.  *Accord Jacobson*, 197 U.S. at 31 (upholding municipality's mandatory vaccination law based on its "real or substantial relation" to protecting public health).

      2.    <u>Maine's school vaccination laws are narrowly tailored to achieve the State's compelling interests.</u>

As shown, because Maine's school vaccination laws are neutral and generally applicable, they "need not be justified by a compelling governmental interest even if the law[s] ha[ve] the incidental effect of burdening a particular religious practice."  *Lukumi*, 508 U.S. at 531.  But if strict scrutiny were to apply, then Maine's law would still withstand the Foxes' Free Exercise challenge.

A "state's wish to prevent the spread of communicable diseases" in schools or elsewhere "clearly constitutes a compelling interest," *Workman*, 418 Fed. App'x at 353, and the laws challenged here are narrowly tailored to serve its objective.  Narrow tailoring requires the government to show that its policy is the "least restrictive means" of achieving its objective, *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981), and that it "seriously undertook to address the problem with less intrusive tools readily available to it," *McCullen v. Coakley*, 573 U.S. 464, 494 (2014).  To evaluate the requirement of narrow tailoring, "the court

should ask whether the challenged regulation is the least restrictive means among available, effective alternatives." *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004).

The Foxes' Amended Complaint does not suggest that there are any other means to accomplish the State's goal of preventing childhood diseases from taking root in schools or in increasing the overall rate of vaccination.[19] "[T]he elimination of communicable diseases through vaccination" is "one of the greatest achievements of public health in the 20th century," *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 226 (2011) (quotation marks omitted), and mandatory vaccination "has long been recognized as the gold standard for preventing the spread of contagious diseases," *Brown v. Smith*, 235 Cal. Rptr. 3d 218, 226 (Cal. Ct. App. 2018) (holding mandatory school vaccination law with medical and IEP exemptions did not violate free exercise clause under California Constitution). "Evidence shows that states that have tighter exemption laws have higher immunization rates, and less disease." Exh. 5 at 2. The State's elimination of nonmedical exemptions is narrowly drawn to achieve the State's interests, and, just like West Virginia's mandatory school vaccination statute, survives strict scrutiny review. *See Workman*, 418 Fed. App'x at 352-54 (concluding West Virginia's mandatory vaccination law that allowed for only medical exemptions withstood strict scrutiny review).

## IV.    Plaintiffs' Equal Protection challenge to the school vaccination exceptions fails under Fed. R. Civ. P. 12(b)(6).

In Count II of their Complaint, the Foxes allege that their right to equal protection of the laws has been violated by the lack of a religious exemption and the IEP sunset provision because C.F. is not being treated the same as similarly situated students. Compl. ¶¶ 43-51. The Foxes

---

[19] Nevertheless, testimony on L.D. 798 described alternative approaches of other states that were ineffective: "Other states . . . have eliminated philosophical exemptions, only to see their religious exemptions increase, and states that have mandated parent-provider education did not see a significant reduction in opt-out rates. These approaches simply aren't enough to get us where we need to be." Exh. 6 at 2.

claim other students with IEPs are allowed to attend school with a nonmedical exemption, but C.F. cannot.  Compl. ¶¶ 30-32.[20]

"The Equal Protection Clause does not forbid classifications."  *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).  "Equal protection of the laws means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances."  *Walsh v. Massachusetts*, 618 F.2d 156, 158 (1st Cir. 1980) (cleaned up).  "Unless state action burdens a suspect class or impinges upon a fundamental right," an equal protection claim is reviewed "for a rational relationship between the disparity of treatment and a legitimate government purpose."  *Toledo v. Sanchez*, 454 F.3d 24, 33 (1st Cir. 2006).

"Where a plaintiff's First Amendment Free Exercise claim has failed, the Supreme Court has applied only rational basis scrutiny in its subsequent review of an equal protection fundamental right to religious free exercise claim based on the same facts."  *Wirzburger v. Galvin*, 412 F.3d 271, 282 (1st Cir. 2005) (citing *Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004)).  As shown above, the State's goals of preventing the spread of childhood disease in school and protecting children unable to be vaccinated for medical reasons are legitimate state interests.  Requiring vaccination, the most effective method of preventing the spread of communicable diseases, *Bruesewitz*, 562 U.S. at 226, is rationally related to achieve those goals.

Further, even assuming that the Foxes and C.F. have standing to challenge the IEP provision, there are no fundamental rights or suspect classifications at issue in the IEP sunset

---

[20]  The Foxes incorrectly assert that "Defendants are not requiring new students to get vaccinated until 90 days after the[y] start attending school."  Compl. ¶ 31.1.  This misstates the grace period provision, which allows students to attend school for up to 90 days while coming into compliance with the mandatory immunization requirements.  All students, regardless of whether they have an IEP, can utilize grace period one time.

provision.[21]   Accordingly, the IEP provision must be "'rationally related' to a legitimate governmental purpose." *Medeiros v. Vincent*, 431 F.3d 25, 29 (1st Cir. 2005), *abrogated on other grounds*, *Bond v. United States*, 564 U.S. 211 (2011).

The Foxes assert that C.F. is similarly situated to students with existing IEPs who are claiming nonmedical exemptions at MWES, and the State's classification is irrational.  But,

> remedial choices made by the appropriate legislative or regulatory body are invested with a strong presumption of validity, rebuttable only where the party challenging the legislation or regulation can establish that there exists no fairly conceivable set of facts that could ground a rational relationship between the challenged classification and the government's legitimate goals.

*Medeiros*, 431 F.3d at 29 (quotation marks omitted).

Here, the IEP sunset provision ensures that children with previously-identified individualized educational needs have continued access to school.  These are children whose parents had worked diligently with their school administrative unit to develop each child's individualized plan and relied on those exemptions when making decision about how to educate their children.  Allowing children with pre-existing IEPs that were already being implemented by their public schools to keep existing nonmedical exemptions protects the expectation interests of their parents.  It also furthers the State's legitimate interest in providing special education and related services to its citizens.

Over time the number of students attending school under the IEP sunset provision will diminish as those students graduate, eventually eliminating nonmedical exemptions while also balancing the expectation interests of parents.  *See* Exh. 23 at H-394 ("As a matter of practicality, [L.D. 798] grandfathers students who are both currently claiming nonmedical exemptions and are

---

[21]  Intellectual disability is not a suspect class, *see City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 442 (1985), and there is no fundamental right to a public education guaranteed by the United States Constitution, *see San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35-38 (1973); *Toledo v. Sanchez*, 454 F.3d 24, 33 (1st Cir. 2006).

enrolled in individualized education plans."). Moreover, although the Legislature acted to remove nonmedical exemptions in 2019, the portion of the law applicable to elementary and secondary schools, including the IEP sunset, did not go into effect until September 1, 2021. Parents thus had more than two years to plan for the change in the law and its impact on their children's education. The Legislature's choice to sunset the IEP provision over time is rationally related to eliminating nonmedical exemptions while also protecting expectations of parents and their children. *See We the Patriots*, 579 F. Supp. 3d at 313 (dismissing Equal Protection challenge to law that allowed schoolchildren with existing religious exemptions to vaccination requirements to maintain those exemptions, but did not allow new students to claim religious exemptions).

## V.  The IEP sunset provision is severable from the rest of Maine's mandatory school vaccination law.

As shown, Maine's mandatory school vaccination law does not violate the First Amendment or the Equal Protection Clause of the Fourteenth Amendment. The Foxes have failed to state a claim that these rights have been abridged. But, to the extent the Court disagrees, the Court should conclude the Foxes' only colorable claim is based on the IEP sunset provision. The only substantive difference between the vaccination law already upheld by the Court, *see Lowe*, 2022 WL 3542187 at *14, and the school vaccination laws is the IEP sunset provision, which can be severed from the rest of the statute.[22]

The severability of a statute is a legal question that is governed by state law. *Leavitt v. Jane L.*, 518 U.S. 137, 139-44 (1996) (analyzing severability as a legal question governed by state law); "*R.I. Med. Soc'y v. Whitehouse*, 239 F.3d 104, 106 (1st Cir. 2001) ("Severability is a matter of state law"). "Maine law mandates that the 'provisions of the statutes are severable,'" *IMS*

---

[22]  The school vaccination law also includes the grace period provision, but the Commissioner has explained why that provision presents no constitutional concerns.

*Health Corp. v. Rowe*, 532 F.Supp.2d 183, 186 (D. Me. 2008) (quoting 1 M.R.S.A. § 71(8) (Supp. 2022)).  "An invalid portion of a statute" can be severed unless "it is such an integral portion of the entire statute or ordinance that the enacting body would have only enacted the legislation as a whole."  *Kittery Retail Ventures, LLC v. Town of Kittery*, 2004 ME 65, ¶ 18, 856 A.2d 1183, 1190. As demonstrated by the legislative debate in this case, the focus of the law that eliminated nonmedical exemptions and added the IEP sunset provision was not the IEP sunset.  The IEP sunset is mentioned in passing by only two legislators during the floor debate that occurred on L.D. 798, *see* Exh. 23 at H-394 (statement of Rep. Tipping); Exh. 24 at S-560 (statement of Sen. Bellows); the vast majority of the debate and testimony centered on the elimination of nonmedical exemptions.  The IEP sunset is not integral and can be severed and the rest of the statute.  Maine's basic framework of mandatory school vaccinations with a medical exemption can stand on its own. *See Lowe*, 2022 WL 3542187 at *14.

## CONCLUSION

For the reasons set forth above, the Commissioner requests that the Foxes' Amended Complaint be dismissed.

DATED:  January 6, 2023                    Respectfully submitted,

AARON M. FREY,
Attorney General

/s/ Kimberly L. Patwardhan
KIMBERLY L. PATWARDHAN
Assistant Attorney General
kimberly.patwardhan@maine.gov
SARAH A. FORSTER
Assistant Attorney General
sarah.forster@maine.gov

Office of the Attorney General
6 State House Station
Augusta ME  04333-0006
Tel.  (207) 626-8800

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2023, I electronically filed this document and any attachments with the Clerk of the Court using the CM/ECF system and that the same will be sent electronically to registered participants as identified in the CM/ECF electronic filing system for this matter.

/s/ Kimberly L. Patwardhan
KIMBERLY L. PATWARDHAN
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta ME  04333-0006
Tel.  (207) 626-8570
Fax (207) 287-3145
kimberly.patwardhan@maine.gov