UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| GREGORY FOX, and<br>RITA FOX,<br><br>Individually and on behalf of C.F.,<br><br>                        Plaintiffs,<br><br>v.<br><br>MAINE DEPARTMENT OF EDUCATION<br>COMMISSIONER PENDER MAKIN,<br>MAINE SCHOOL ADMINISTRATIVE<br>DISTRICT 51,<br>SUPERINTENDENT JEFFREY PORTER,<br>PRINCIPAL SALLY LOUGHLIN, and<br>VICE PRINCIPAL COREY MUNSEY,[1]<br><br>Individually and in Their Official Capacities,<br><br>                        Defendants. | No. 2:22-cv-00251-GZS |

**SCHOOL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW**

    Defendants Maine School Administrative District 51 (MSAD 51), Jeffrey Porter, Sally Loughlin and Cory Munsey (collectively, the School Defendants), move to dismiss the Plaintiffs' Amended Complaint, ECF No. 45, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). In short, the School Defendants cannot be held liable for merely complying with state law, nor can Porter, Loughlin, or Munsey be held liable in their individual or official capacities. The School Defendants offer the following incorporated memorandum of law in support of their motion, and adopt by

---

[1] During all times relevant to the Amended Complaint, Sally Loughlin served as the Principal of Mabel I. Wilson Elementary School and Cory Munsey served as the Assistant Principal. Loughlin has since retired, and Munsey is now the Principal of Mabel I. Wilson Elementary School. The Amended Complaint also misspells Principal Munsey's first name, which is correctly spelled "Cory," not "Corey."

reference subsections "Statutory Background on Mandatory Immunizations" and III-IV of the Motion to Dismiss Plaintiffs' Amended Complaint and Exhibits filed on behalf of Maine Commissioner of Education Pender Makin ("Makin"), ECF No. 50, pursuant to Fed. R. Civ. P. 10(c).

## BACKGROUND

### I.  Mandatory Immunizations and Maine's Repeal of Nonmedical Exemptions

For over a century, U.S. courts have consistently upheld mandatory immunization laws as constitutional, even absent religious exemptions. *See, e.g., Prince v. Massachusetts,* 321 U.S. 158, 166-67, 64 S. Ct. 438, 88 L.Ed. 645 (1944); *Jacobson v. Massachusetts*, 197 U.S. 11 (1905); *Lowe v. Mills*, 2022 WL 3542187 (D. Me. Aug. 18, 2022). For over four decades, the State of Maine has required schoolchildren to receive immunizations as a condition of school enrollment and attendance. *See* P.L. 1977, ch. 471 (eff. Oct. 24, 1977). Prior to 2019, Maine's student immunization law contained both a medical exemption and a philosophical or religious exemption.[2] In 2019, a bill was introduced in the Maine Legislature entitled "An Act to Protect Maine Children and Students from Preventable Diseases by Repealing Certain Exemptions from the Laws Governing Immunization Requirements." ECF No. 49, Ex. 1. The Legislature proposed removing nonmedical exemptions by repealing subsection 3 of 20-A M.R.S. § 6355. L.D. 798 (129th Legis. 2019); *compare* 2001 Me. Legis. Serv. Ch. 326 (West) *with* 2019 Me. Legis. Serv. Ch. 154 (West).[3] The bill also included a sunset provision for those students covered by an

---

[2] 20-A M.R.S. § 6355(3), as enacted in 1983, provided for a philosophical or religious exemption where "the parent states in writing a sincere religious belief which is contrary to the immunization requirement of this subchapter or an opposition to the immunization for moral, or other personal reasons."  P.L. 1983, ch. 661 § 8.  The language of the section was slightly modified in 2001, and until 2019 the law provided a philosophical or religious exemption where "the parent states in writing a sincere religious belief that is contrary to the immunization requirement of this subchapter or an opposition to the immunization for philosophical reasons." P.L 2001, ch. 326, § 2.

[3] The Court may take judicial notice of the statute and its legislative history. *See Lowe,* 2022 WL 3542187 *2 (D. Me. Aug. 18, 2022) (citations omitted).

individualized education plan (IEP) on or before September 1, 2021, if they had previously elected a philosophical or religious exemption on or before that date. The effect of the sunset provision allowed affected students to remain in school under the religious and philosophical exemption as long as the family produced evidence that an appropriate medical professional had advised them "of the risks and benefits associated with the choice to immunize." L.D. 798 (129th Legis. 2019). Following debate and an opportunity for public testimony, the Maine Legislature adopted the bill, and it was signed into law by the Governor on May 24, 2019. P.L. 2019, ch. 154 (varying effective dates).[4]

Under the new law, effective September 1, 2021, school children must be immunized against ten common diseases unless they meet the limited exceptions prescribed by State law. *See* 20-A M.R.S. § 6355 (Supp. 2022); 10-144 C.M.R. Ch. 261 §§ 2(A), 3.[5] Superintendents of Maine schools are prohibited from allowing "any child to be enrolled in or to attend school without a certificate of immunization for each disease or other acceptable evidence of required immunization or immunity against the disease." 20-A M.R.S. § 6355; 10-144 C.M.R. Ch. 261 § 2(B). Students who do not qualify for an exception and have not "received all the required doses of vaccine must not be permitted to attend school beyond the first day." 10-144 C.M.R. Ch. 261 § 7(C)(2).

## II. Factual Background

The Plaintiffs, Gregory and Rita Fox, individually and on behalf of their minor child C.F., challenge the constitutionality of 20-A M.R.S. § 6355 under the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the U.S.

---

[4] The bill also eliminated nonmedical exemptions to vaccine requirements for healthcare workers and daycare employees. The lawsuit challenging the constitutionality of the law as applied to healthcare workers was dismissed, in large part, for failure to state a claim. *Lowe*, 2022 WL 3542187 (D. Me. Aug. 18, 2022).
[5] Students are also eligible for a one-time, 90-day grace period to receive required vaccinations. *See* 20-A M.R.S. § 6355(1); 10-144 C.M.R. Ch. 261 § 3(1).

Constitution. The allegations in the Amended Complaint are taken as true for purposes of the motion to dismiss and provide as follows: Plaintiffs allege they have "sincerely held religious convictions that prevent them from having C.F. get vaccinated. In particular, God has impressed upon them that they should not have their children vaccinated, and that to do so would be to disobey God !" ECF No. 45, ¶ 22. For the 2020-2021 school year, prior to the change in law, C.F. received a religious exemption from the immunization requirement and was permitted to enroll as a student at Mabel I. Wilson Elementary School. *Id*. ¶ 23. Although C.F. enrolled in Mabel I. Wilson Elementary School for the 2021-2022 school year, he was no longer eligible for a nonmedical exemption from the vaccine requirement due to the intervening change in State law, and was consequently not permitted to attend school. *Id*. ¶¶ 24-25. After repeated efforts to work with C.F.'s parents, in May of 2022, Defendant Porter "unenrolled" C.F. from school "with the explanation that Maine law had changed and that students could no longer get religious exemptions from the vaccination requirement." *Id*. ¶ 26.

Plaintiffs seek equitable relief, damages, attorney's fees, expert fees, interest and costs pursuant to 42 U.S.C. §§ 1983 and 1988. *Id*. ¶ 2. For the reasons that follow, Plaintiffs have failed to state a claim upon which relief can be granted.  As described below, the individual School Defendants are entitled to qualified immunity, the Amended Complaint fails to state a claim for municipal liability, and the statute itself is constitutional, so its application by school personnel consistent with the guidance and directives of the Department of Education does not violate Plaintiffs' rights. Finally, to the extent the Complaint purports to seek damages from the individual School Defendants in their *official* capacities, such claims are barred by the Eleventh Amendment and should be dismissed for lack of subject matter jurisdiction.

**STANDARD OF REVIEW**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Mehta v. Ocular Therapeutix, Inc.*, 955 F.3d 194, 205 (1st Cir. 2020) (internal quotation marks omitted). In reviewing a complaint, a court accepts "well-pleaded factual allegations in the complaint as true and views all reasonable inferences in the plaintiffs' favor." *Id*. However, the factual allegations must be sufficient "to raise a right to relief above the speculative level." *Dagi v. Delta Airlines, Inc.*, 961 F.3d 22, 27 (1st Cir. 2020) (internal quotation marks and citations omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 565 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

The standard of review under Fed. R. Civ. P. Rule 12(b)(1) is similar. When ruling on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court, subject to exceptions not relevant here, "credit[s] the plaintiff's well-pleaded factual allegations … draw[s] all reasonable inferences from them in [the plaintiff's] favor," and assesses whether the plaintiff has alleged an adequate basis for subject-matter jurisdiction, including jurisdictional facts that would overcome a defendant's assertion of sovereign immunity. *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362 (1st Cir. 2001).

**ARGUMENT**

**I.     Plaintiffs' Official Capacity Claims For Damages Are Barred By The Eleventh Amendment.**

Plaintiffs' claims for damages under 42 U.S.C. § 1983 against Porter, Loughlin, and Munsey in their official capacities should be dismissed for lack of subject matter jurisdiction. *See Valentin*, 254 F. 3d at 362-63 (identifying Rule 12(b)(1) as the "proper vehicle" to raise a sovereign

immunity challenge). Plaintiffs' Amended Complaint names Porter, Loughlin, and Munsey "individually and in their official capacities." ECF No. 45. The Eleventh Amendment "bars the recovery of damages in *official* capacity suits brought against [state] officials." *Culebras Enters. Corp. v. Rivera Rios*, 813 F.2d 506, 516 (1st Cir. 1987). Pursuant to 20-A M.R.S. §§ 1001, 1055, Porter, Loughlin, and Munsey are state officials and are therefore immune from Plaintiffs' § 1983 claims for damages in their official capacities.

As this Court recently held, "to the extent that the Complaint purports to state claims under 42 U.S.C. § 1983 against any individual Defendant in his or her 'official capacity,' such claims fail because the individually named officials are immune from any official capacity claims under the Eleventh Amendment." *Doyle v. Porter*, No. 2:22-cv-00127-GZS, 2022 WL 3716245 (D. Me. Aug. 29, 2022) (citing *Davidson v. Howe*, 749 F.3d 21, 27 (1st Cir. 2014) (dismissing School Superintendent under 11th Amendment)); *see also Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Accordingly, Plaintiffs' claims for damages against Porter, Loughlin, and Munsey in their official capacities should be dismissed, pursuant to Fed. R. Civ. P 12(b)(1)[6].

### II. Porter, Loughlin, And Munsey Are Entitled To The Protections Of Qualified Immunity.

Turning to the claims against the school officials in their individual capacities, it is well established that the "doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Because qualified

---

[6] To the extent the Amended Complaint asserts claims for damages against Defendants Porter, Laughlin or Munsey in their official capacities, these claims should be dismissed for a further reason: Plaintiffs have previously abandoned any such claims in a previous filing in this proceeding. *See* ECF No. 26, p. 3 ("The Plaintiffs did not intend to seek damages from [Porter, Loughlin, and Munsey] in their official capacities, and therefore do not object to a dismissal of any such claims.")

immunity is an immunity from suit rather than a mere defense to liability, it is effectively lost if a case is erroneously permitted to go to trial." *Pearson*, 555 U.S. at 231 (quotation marks and alteration omitted). Accordingly, the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation" and in particular doing so prior to discovery. *Id*.

The doctrine of qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. In order to overcome qualified immunity, a plaintiff must show first that the official's conduct violated a constitutional right, and then show that the right was "clearly established." *Id.* "Courts need not engage in the first inquiry and may choose, in their discretion, to go directly to the second." *Penate v. Hanchett*, 944 F.3d 358, 366 (1st Cir. 2019).[7] Whether a right is "clearly established" hinges on two factors: 1) "the clarity of the law at the time of the violation," and 2) "the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights." *Id*. (quoting *Drumgold v. Callahan*, 707 F.3d 28, 42 (1st Cir. 2013)). Even when "guidance concerning the right is lacking or unclear," qualified immunity attaches so individuals are not penalized for "picking the losing side of the controversy." *Lopera v. Town of Coventry*, 652 F. Supp. 2d 203, 213 (D. R.I. 2009) (citations omitted).

The sum total of Plaintiffs' allegations against the individual School Defendants are as follows: 1) Porter, Loughlin, and Munsey, at all relevant times, were employed by MSAD 51 in the Town of Cumberland, Maine; 2) pursuant to 20-A M.R.S. § 6355, they stated "that religious exemptions were no longer allowed under state law, and refused to let C.F. attend school for the

---

[7] To the extent the Court finds it useful to analyze constitutionality for the purposes of qualified immunity, the constitutionality of 20-A M.R.S. § 6355 is addressed in subsections IV and V herein.

7

2021-2022 school year;" 3) pursuant to 20-A M.R.S. § 6355, they "told the Plaintiffs that C.F. cannot enroll in or attend Mabel I. Wilson Elementary School until he gets his vaccinations, and that he cannot get a religious exemption to the vaccination requirement;" 4) ultimately, Porter "unenrolled" C.F. "with the explanation that Maine law had changed and that students could no longer get religious exemptions from the vaccination requirement." ECF No. 45, ¶¶ 25-29; and 5) the individual School Defendants were forced by Defendant Makin to deny the Plaintiffs a religious exemption for C.F., to "unenroll" C.F. from school, and to inform the Plaintiffs that religious exemptions were no longer allowed, or, in the alternative, the individual School Defendants independently acted consistently with the directives of the Commissioner of Education. ECF No. 45, ¶¶ 41.4-41.7. Put differently, the basis for the suit against them is that Porter, Loughlin, and Munsey followed 20-A M.R.S. § 6355 to the very letter of the law, and also acted consistently with the explicit directives of the Commissioner of Education. This is exactly the type of conduct protected by qualified immunity.

First, the constitutional right to a religious exemption from a vaccine requirement is not clearly established. On the contrary, for more than a century the Supreme Court has consistently *upheld* mandatory vaccination laws against challenges that they infringe on the First Amendment right to free exercise of religion. *See, e.g., Prince v. Massachusetts,* 321 U.S. 158, 166-67, 64 S. Ct. 438, 88 L. Ed. 645 (1944) ("[t]he right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death"); *Zucht v. King,* 43 S. Ct. 24 (1922); *Jacobson v. Massachusetts*, 197 U.S. 11 (1905); *Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015); *Workman v. Mingo Cnty. Bd. of Educ.*, 419 F. App'x 348, 355-56 (4th Cir. 2011); *We the Patriots USA, Inc. v. Connecticut Off. of Early Childhood Dev.,* 579 F. Supp. 3d 290 (D. Conn. 2022); *F.F. v. New York*, 143 N.Y.S.3d 734, 194

A.D.3d 80 (App. Div. 3rd Dep't.) (upholding repeal of religious exemption from mandatory school vaccination law against free exercise challenge), *cert. denied*, 142 S. Ct. 2738 (2022); *Whitlow v. California*, 203 F. Supp. 3d 1079, 1084-85 (S.D. Cal. 2016) ("it is clear that the Constitution does not require the provision of a religious exemption to vaccination requirements"). Second, a reasonable defendant would certainly not have understood that their conduct – following the explicit directives of a state law –violated Plaintiffs' constitutional rights. Even if the Court were to ultimately find the statute unconstitutional, Porter, Loughlin, and Munsey are still entitled to and protected by qualified immunity because state officials should not be penalized for "picking the losing side of the controversy." *Lopera*, 652 F. Supp. 2d at 213.

To the extent Plaintiffs seek injunctive relief, enjoining Porter, Loughlin, or Munsey in their individual capacities would not be appropriate. First, as acknowledged in the Amended Complaint, Loughlin is retired and has no ability to re-enroll C.F. in Mabel I. Wilson Elementary School. ECF No. 45, ¶14. Second, as Plaintiffs concede, the Commissioner of Education is "ultimately responsible for implementing and enforcing Maine laws concerning education in the State of Maine." ECF No. 45, ¶ 11. Therefore, even if the Court determines injunctive relief is warranted in this case, the School Defendants are not the proper parties to be enjoined.

Based on the foregoing, Plaintiffs' claims should be dismissed as to Porter, Loughlin, and Munsey in their individual capacities.

### III. The Complaint Fails To State A Claim For Municipal Liability Against MSAD 51.

Municipal entities are "persons" under 42 U.S.C. § 1983 and therefore can be held liable for civil rights violations. *See Monell v. Dep't of Soc. Serv's of City of New York*, 436 U.S. 658, 690 (1978). However, a § 1983 action only lies against a municipal entity where an official policy or custom causes the constitutional violation. *Id.* at 694. To show a causal link, plaintiff must

establish one of four conditions: 1) that an officially adopted policy violates the Constitution, *id.* at 690; 2) that a "final policymaker" has made a decision which is attributable to the municipality due to his or her role, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 485 (1986); 3) that the municipal entity has been deliberately indifferent to a pattern of constitutional violations or a strong likelihood of such violations due to a failure to train employees, *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); or 4) that there is a custom or practice that is so widespread and persistent that it effectively has the force of law, *see Miller v. Kennebec Cty.*, 219 F.3d 8, 12 (1st Cir. 2000). Plaintiff "bears the burden of showing that, 'through its *deliberate* conduct, the [municipality] was the moving force behind the injury alleged.'" *Haley v. City of Boston*, 657 F.3d 39, 51 (1st Cir. 2011) (emphasis in original) (citation omitted).

In their Amended Complaint, Plaintiffs plead two theories of municipal liability. On one hand, Plaintiffs take the position that MSAD 51 is liable for an alleged constitutional deprivation because Defendants Porter, Loughlin and Munsey complied with state law. *See, e.g.,* ECF No. 45, ¶¶ 41.4 - 41.5. The First Circuit has opined that school officials' compliance with state law should not constitute a municipal policy giving rise to liability under § 1983. *See Yeo v. Town of Lexington*, 131 F.3d 241, 257 (1st Cir. 1997) (Stahl, J., concurring) ("it seems obvious that, as an action taken in what appears to have been good faith reliance upon state law… this policy cannot give rise to municipal liability under § 1983"). Plaintiffs' theory of liability has been even more forcefully rejected by other courts. *See Snyder v. King,* 745 F.3d 242, 243-44 (7th Cir. 2014) (no causal link between county policy and deprivation of federal right where "the only local government 'policy' at issue [was] general compliance with the dictates of state law"); *Surplus Store & Exchange, Inc. v. City of Delphi*, 928 F.2d 788, 791-92 & n.4 (7th Cir. 1991) ("It is hard to imagine a municipal policy more innocuous and constitutionally permissible, … than the

'policy' of enforcing state law. If the language and standards from *Monell* are not to become dead letter, such a 'policy' simply cannot be sufficient to ground liability against a municipality"); *Whitesel v. Sengenberger*, 222 F.3d 861, 872 (10th Cir. 2000) (Board of County Commissioners not liable for "merely implementing" policy created at the state level); *see also Anderson v. Town of Durham*, 2003 WL 21386768 *1, *5 (Me. Super. May 14, 2003) ("while it is true that Raymond and Durham did not enact the statute, it is equally clear that the city's policy of enforcing the statute constitutes *state action* and not local action"). The same rationale holds true in this case. MSAD 51 did nothing more than follow the duly-enacted and clearly-stated provisions of Maine law. Such action is insufficient to give rise to municipal liability.

"In the alternative," Plaintiffs allege "Defendant Porter independently decided and made a policy for MSAD 51 that religious exemptions could no longer be granted to the vaccination law and independently decided to 'unenroll' C.F. from school" *or* "Defendants Loughlin and Munsey … independently decided to deny the Plaintiffs a religious exemption for C.F." *Id*. ¶¶ 41.6 – 41.7. To the extent the Amended Complaint alleges an independent decision in a particular case by one or more of the individual School Defendants – rather than a policy adopted by an individual or entity with final policymaking authority, such as the MSAD 51 School Board – it fails to state a claim for municipal liability. *See Dirrane v. Brookline Police Dep't*, 315 F.3d 65, 71 (1st 2002) (damages claim against a town under ¶1983 "cannot be based on *respondeat superior* but requires independent liability based on an unconstitutional policy or custom of the municipality itself.").

### IV. Plaintiffs' Free Exercise Claim Should Be Dismissed For Failure To State A Claim.

In Count I of their Amended Complaint, Plaintiffs allege that 20-A M.R.S. § 6355 violates their rights to the Free Exercise of Religion and that by enforcing the law, Defendants have engaged in religious discrimination against Plaintiffs. The Free Exercise Clause provides that

11

"Congress shall make no law prohibiting the free exercise" of religion. U.S. Const. amend. I. "The Clause embraces two concepts: freedom to believe and freedom to act. Although the freedom to believe is absolute, the freedom to act on one's religious beliefs remains subject to regulation for the protection of society." *Lowe,* 2022 WL3542187 at *10 (internal quotations and citations omitted). Plaintiffs' Free Exercise claim fails under the applicable standard of review.

### A. The Statute Is Neutral And Generally Applicable And Is Therefore Subject To Rational Basis Review.

A claim under the Free Exercise Clause may be subject to rational basis review or strict scrutiny. "Laws that are deemed both neutral and generally applicable are traditionally subject to rational basis review," but a law that "burdens a religious practice and does not satisfy the requirements of neutrality and general applicability… is invalid under the Free Exercise Clause unless it survives strict scrutiny." *Lowe*, 2022 WL3542187 at *10 (citation omitted). "The Free Exercise Clause does not prevent states from enacting a 'neutral, generally applicable regulatory law,' even when that law infringes on religious practices." *Id*.

First, with respect to neutrality, the "minimum requirement" is that the law "not discriminate on its face." *Church of the Lukumi Babalu Aye, Inc. v City of Hialeah*, 508 U.S. 520, 533 (1993). Neutrality further examines whether "the State's object, or purpose, was to infringe upon or restrict practices because of their religious motivation." *Lowe,* 2022 WL3542187 at *11 (citation omitted). "[F]acial neutrality is not dispositive, though, because a government also fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Id*. To determine whether a law is discriminatory, courts analyze "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decision-making body." *Id*. (internal

12

quotations omitted). Ultimately, "[t]he absence of a religious exception to a law does not, on its own, establish non-neutrality such that a religious exception is constitutionally required." *We the Patriots,* 579 F.Supp.3d at 306 (citation omitted).

Here, the statute is both facially neutral and non-discriminatory. The statute does not reference or target any particular religious practice, or "single out [religion] for especially harsh treatment." *Id.* (quoting *Roman Catholic Diocese of Brooklyn*, 141 S. Ct. 63, 66, 208 L.Ed.2d 206 (2020)). The statute is also non-discriminatory, in that it does not restrict religious beliefs or religious practices because of their religious nature. The law requires schoolchildren to get vaccinated, independent of religious beliefs, to protect public health. It is clear from the legislative history that the intention of the law is to protect public health by improving vaccination rates against communicable diseases, and thus preventing the reintroduction of infectious diseases into schools. *See* ECF No. 50.

Second, the Court must determine if the statute is generally applicable. "General applicability addresses whether the State has selectively imposed burdens only on conduct motivated by religious belief." *Lowe,* 2022 WL3542187 at *12. "Courts must first determine whether the religious and secular interests at issue are comparable and then, if they are, examine whether the less favorable treatment of religious interests results from a constitutionally impermissible value judgment." *Id*. For the purpose of a Free Exercise claim, comparability "is concerned with the risks various activities pose." *Dr. T. v. Alexander-Scott*, 579 F.Supp.3d 271 (D.R.I. Jan. 7, 2022), *appeal dismissed sub nom*. *Dr. T. v. McKee*, No. 22-1073, 2022 WL 2962029 (1st Cir. Apr. 13, 2022). Ultimately, a law lacks general applicability if "it prohibits religious

13

conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021).

The limited exceptions contained in the law – a medical exemption, a sunset provision for certain students covered by an individualized education plan, and a short one-time grace period for students to obtain the required immunizations – do not change the conclusion that the law is generally applicable. As articulated in *Lowe*, "a medical exemption to a state-mandated vaccine is fundamentally different from, and, therefore, not comparable to, a religious exemption because a medical exemption aligns with the State's interest in protecting public health and, more specifically, medically vulnerable individuals from illness and infectious diseases, while nonmedical exemptions, including religious exemptions, do not." *Lowe,* 2022 WL3542187 at *12-13. Therefore, "the medical exemption available as to all mandatory vaccines required by Maine law does not reflect a value judgment unfairly favoring secular interests over religious interests." *Id*. at *14. The fact that a small subset of students – special education students who previously elected a religious or philosophical exemption – are "grandfathered in" and allowed to remain in school so long as they receive vaccine guidance from their healthcare provider, does not undermine the government's interests in protecting public health. Each year, the proportion of unvaccinated students in Maine schools will decline, reducing the likelihood of a preventable outbreak among schoolchildren. The statute also does not lend itself to individual decision-making or "value judgments," because the sunset clause applies to an entire class of students – *all* special education students with both an active IEP and an active exemption on file on or before September 1, 2021 may remain in school, so long as they have been advised by a healthcare provider of the risks and benefits to immunization. Last, although not an exemption from the vaccine requirement, the statute contains a one-time, 90-day written assurance period that allows families a reasonable

14

period of time to get their child vaccinated. As acknowledged in *F.F. v. New York* and *Doe v. San Diego Unified School District*, grace periods for families to come into compliance with school vaccine requirements are consistent with the overall intent and purpose of school vaccination laws. 143 N.Y.S.3d 734, 740 (N.Y. App. Div. 2021), *cert. denied*, 142 S. Ct. 2738 (2022); 19 F.4th 1173, 1179 (9th Cir. 2021), *reconsideration en banc denied*, 22 F. 4th 1099 (9th Cir. 2022).

For all of these reasons the statute is subject to rational basis review. Of course, "[a]dded comfort comes from the consistent use of rational basis review to assess mandatory vaccination measures." *Klassen v. Trustees of Indiana University* (*Klassen I*), 549 F.Supp.3d 836, 869-70 (N.D. Ind. July 18, 2021), *motion for stay pending appeal denied*, 7 F.4th 592 (7th Cir. 2021), *vacated as moot*, 24 F.4th 638 (2022) (collecting cases demonstrating the "consistent use of rational basis review to assess mandatory vaccination measures"); *see also Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 St. Ct. 63, 70 (2020) (Gorsuch, J., concurring (acknowledging that *Jacobson v. Commonwealth of Massachusetts*, 197 U.S.. 11 (1905), the seminal Supreme Court case addressing mandatory immunization laws, "essentially applied rational basis review" to a vaccination requirement)).

### B. The Statute Survives Rational Basis Review Because It Is Rationally Related To A Legitimate Governmental Interest.

Ultimately, "a law survives rational basis review so long as the law is rationally related to a legitimate governmental interest." *Id*. (citation omitted). "Thus, the Plaintiffs must plead facts to plausibly support a claim that the governmental infringement is not rationally related to a legitimate government purpose." *Id.* (internal quotations and citation omitted). Conclusory

statements unsupported by "any facts which cast doubt on the legitimacy of the Government's asserted interests" will not sustain a free exercise claim. *Id*.

This case is strikingly similar to *We the Patriots USA, Inc. v. Conn. Off. Of Early Childhood Development*, which challenged Connecticut's school vaccine law under the Establishment Clause, Free Exercise Clause, and Equal Protection Clause, among other claims. 579 F.Supp.3d 290, 296 (D. Conn. 2022). Connecticut law permitted religious exemptions until the spring of 2021, when the state legislature voted to remove religious exemptions due to declining student vaccination rates. *Id*. at 306-07. All Connecticut students are now required to receive common vaccinations, except those with "medical exemptions and those in grades kindergarten through twelve with existing religious exemptions" on file before the April 28, 2021 effective date of the statute. *Id*. at 306.

Applying rational basis review, the U.S. District Court for the District of Connecticut dismissed plaintiffs' free exercise claim and all other claims, upholding the Connecticut statute even *after* the state legislature eliminated religious exemptions. Ultimately, Connecticut was determined to have a "legitimate interest in protecting the public health of the community," and the decision to provide medical exemptions, but not religious exemptions, "did not render the law irrational." *Id*. at 310-11. The court determined medical exemptions did not undermine the state's interest because "Connecticut would not be protecting the health and safety of schoolchildren if it required these children to undergo medically contradicted treatment." *Id*. at 308. Moreover, the sunset clause allowing children in grades K-12 with existing religious exemptions to remain in school did not undermine the State's interest or render the law irrational. *Id*. at 308, 312. In the end, Connecticut's "legislators identified that the purpose of [the] law is to protect community

health and plaintiffs [made] no showing that this interest [was] pretextual or unwarranted." *Id*. at 307-308.

This Court should reach the same conclusion as the District of Connecticut in *We the Patriots*, because the same circumstances are present here. The State of Maine has a legitimate interest in protecting the health of schoolchildren and the larger community. Medical exemptions further that goal by protecting medically vulnerable individuals from illness and infectious diseases. Medical and religious exemptions are not comparable "when considering the 'interest that justified the regulation at issue,'" because "medical exemptions further the state's interest in health and safety while religious exemptions undercut that same interest." *Id*. at 307-8 (citing *Tandon*, 141 S. Ct. at 1296) (recognizing that "an overarching religious exemption … jeopardizes the community immunity" and therefore does not further the purpose of the statute). The sunset clause does not undermine the State's interest either, because each year, the proportion of unvaccinated children in Maine schools will decline, reducing the opportunity for communicable diseases to spread amongst schoolchildren.

Although the Court need not reach this issue, Plaintiffs' allegations that § 6355 is underinclusive also fails. First, the medical exemption does not render the statute underinclusive because, as described, exempting students who cannot safely be vaccinated furthers the goal of the statute—indeed, protecting these medically vulnerable students is one of the express goals of the statute. The same is true of the sunset clause pertaining to special education students, the impact of which is temporary and will ultimately decrease the number of unvaccinated students in Maine schools. Plaintiffs also allege the statute is underinclusive because it does not extend to other individuals in school buildings, such as "teachers, principals, school staff, janitors, volunteers, visitors (either adults or children) and other non-students…." ECF No. 45 ¶ 33. However, "neither

the Supreme Court … nor any other Court of which we are aware has ever hinted that a law must apply to all people, everywhere, at all times, to be 'generally applicable.'" *Kane v. DeBlasio*, 19 F.4th 152, 166 (2d Cir. 2021) (rejecting Free Exercise challenge to vaccine mandate that applied to New York City employees, but not contractors or the general public); *see also We the Patriots*, 579 F.Supp.3d at 309 ("No case of the Supreme Court holds that a single objective exemption renders a rule not generally applicable") (quoting *Does 1-6 v. Mills*, 16 F.4th 20, 30 (1st Cir. 2021), cert. denied sub nom. *Does 1-3 v. Mills*, --- U.S. ---, 142 S. Ct. 1112, 212 L.Ed.2d 9 (2022)).To the extent Plaintiffs question the legislative history of the law, pursuant to Fed. R. Civ. P. 10(c), the School Defendants rely on "Statutory Background on Mandatory Immunizations" of the Motion to Dismiss Plaintiffs' Amended Complaint and Exhibits filed on behalf of Defendant Makin, ECF. No. 50.

### V. Plaintiffs' Equal Protection Claim Also Fails Under Rational Basis Review.

In Count II of their Complaint, Plaintiffs allege that their right to equal protection of the laws has been violated by the statute, which lacks a religious exemption. Because Count I fails under rational basis review, Count II fails too. "Where a law subject to an equal protection challenge does not violate a plaintiff's right of free exercise of religion, courts do not apply to the challenged classification a standard of scrutiny stricter than the traditional rational basis test." *Lowe,* 2022 WL3542187 at *14 (cleaned up) ("[b]ecause … the vaccine mandate is rationally based, no further analysis is required, and the amended complaint's Equal Protection claim is appropriately dismissed"); *see also Wirzburger v. Galvin*, 412 F.3d 271, 282 (1st Cir. 2005) ("Because we [hold] that the [challenged law] does not violate the Free Exercise Clause, we apply rational basis scrutiny to the fundamental rights based claim that [the law] violates equal protection"); *Dr. T*, 579 F.Supp.3d at 284 ("Because the plaintiffs are unlikely to succeed on their

18

free exercise claims, they are unlikely to succeed on their equal protection claims").

## CONCLUSION

For the foregoing reasons, the Plaintiffs' claims against the School Defendants should be dismissed with prejudice.

Dated: January 6, 2023

Respectfully submitted,

/s/ Nathaniel A. Bessey
Nathaniel A. Bessey
Stacy O. Stitham
Hannah L. Wurgaft
BRANN & ISAACSON
113 Lisbon Street; P.O. Box 3070
Lewiston, ME  04243-3070
Tel. (207) 786-3566
nbessey@brannlaw.com
sstitham@brannlaw.com
hwurgaft@brannlaw.com

*Attorneys for Defendants, Maine School Administrative District 51, Jeffrey Porter, Sally Loughlin, and Cory Munsey*

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification to counsel of record.

/s/ Hannah L. Wurgaft

Hannah L. Wurgaft
BRANN & ISAACSON
113 Lisbon Street; P.O. Box 3070
Lewiston, ME  04243-3070
Tel. (207) 786-3566
hwurgaft@brannlaw.com