## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

GREGORY FOX  and  RITA FOX,
Individually and as Parents of C.F.

          Plaintiffs

-vs-

MAINE DEPARTMENT OF EDUCATION
COMMISSIONER PENDER MAKIN,
MAINE SCHOOL ADMINISTRATIVE
DISTRICT 51,
SUPERINTENDENT JEFFREY PORTER,
PRINCIPAL SALLY LOUGHLIN, and
VICE PRINCIPAL CORY MUNSEY,
Individually and in their Official Capacities

          Defendants

Civil Action No. 2:22-cv-00251-GZS

**PLAINTIFFS' AMENDED OBJECTION TO DEFENDANT MAKIN'S MOTION TO
DISMISS WITH INCORPORATED MEMORANDUM OF LAW**

In re-reading their Objection to Defendant Makin's Motion to Dismiss [ECF #42], the

Plaintiffs noticed that a sentence on Page 19 was misstated.  Therefore, the Plaintiffs are filing

this Amended Objection to correct that misstated sentence.  The misstatement is corrected herein

in bold at Pages 19-20.

NOW COME Plaintiffs Gregory Fox and Rita Fox, individually and as parents of C.F.,

pursuant to Local Rule 7(b), and object to Defendant Makin's Motion to Dismiss. [ECF #50]  In

support of this Objection, the Plaintiffs state:

In this action, brought pursuant to Title 42 U.S.C. §1983, the Plaintiffs seek injunctive

relief from Defendant Makin in her official capacity and damages in her personal capacity for violating the Plaintiffs' constitutional rights to Free Exercise of Religion and Equal Protection. The Plaintiffs do not claim that Maine cannot enact a law mandating that people get vaccinated against communicable diseases.  Rather, they are claiming that if Maine does enact such a law, it cannot fail to include groups of people who pose identical risks as those covered by the law, and cannot be applied by the Defendants unevenly, in a way that exempts certain groups for secular reasons while refusing to exempt people with sincere religious objections.

Defendant Makin has filed a Motion to Dismiss, claiming that this Court has no subject matter jurisdiction (under F.R.Civ.P. 12(b)(1)) and /or that the Plaintiffs' Amended Complaint fails to state claims upon which relief can be granted (under F.R.Civ.P. 12(b)(6)).

The Plaintiffs object to Defendant Makin's Motion to Dismiss for the reasons set forth below.

## I.   FACTUAL BACKGROUND

The facts are set forth in the Plaintiffs' Amended Complaint, which the Plaintiffs incorporate by reference.  In footnote 10 of her Motion, Defendant Makin acknowledges that the factual allegations in the Complaint should be accepted as true.

## II.   PLAINTIFFS' OFFICIAL CAPACITY DAMAGE CLAIMS

At pages 6-7  of her Motion, the Defendant argues that the Plaintiffs cannot maintain claims for damages against her in her official capacity.  As stated previously, the Plaintiffs are not seeking damages from the Defendant in her official capacity... but only in her personal capacity.

## III.   PLAINTIFFS' OFFICIAL CAPACITY CLAIMS FOR EQUITABLE RELIEF

As Commissioner of the Maine Department of Education, Defendant Makin has the

statutory power and duty to make sure that the local school superintendents enforce Title 20-A

M.R.S. §6355 and do it correctly.  Title 20-A M.R.S. §253.  Consequently, it is proper for the

Plaintiffs to seek injunctive relief from Defendant Makin as well as from the local school

officials in this case.  *Ex parte Young*, 209 U.S. 123, 157 (1908); and *Shell Oil Co. -v.- Noel*, 608

F.2d 208, 211 (1st Cir. 1979).  Specifically, the Plaintiffs are asking the Court to grant injunctive

relief against Defendant Makin, enjoining her from requiring C.F. to get the required

vaccinations and to allow him to attend school; and directing her to direct the local school

Defendants not to require C.F. to get the vaccinations and to allow him to enroll at the Mabel I.

Wilson Elementary School.

      A.  **<u>Religious Discrimination</u>**.

    In Count I of their Amended Complaint [ECF #45], the Plaintiffs allege that the

Defendants - including Makin - have discriminated against them and their child, C.F., because of

their religious beliefs and practices.

    The Defendant does not challenge the Plaintiffs' allegation that:

        "22.   The Plaintiffs have sincerely held religious convictions that prevent them
        from having C.F. get vaccinated.  In particular, God has impressed on them that they
        should not have their children vaccinated, and that to do so would be to disobey God !"

    The First and Fourteenth Amendments give the Plaintiffs the right to not only hold

religious beliefs, but also to act on those beliefs.  *Cantwell v. Connecticut*, 310 U.S. 296, 303

(1940).  However, laws and policies that only incidentally burden religious practices - as opposed

to beliefs - are not subject to strict scrutiny **so long as** they are neutral and generally applicable.

*Employment Division v. Smith*, 494 U.S. 872 (1990).  The problem in this case is that Title 20-A

M.R.S. §6355 is "underinclusive" and the way the Defendants are applying the statute make it

neither neutral nor generally applicable. [1]

### (1.)  Neutrality.

To be neutral, a law or policy may not single out religion or religious practices.  *Church of the Lukumi Babalu Aye, Inc. -v.- City of Hialeal*, 508 U.S. 520, 532-534 (1993); and *Doe v. Mills*, 16 F.4th 20, 29 (1st Cir. 2021).  A law or policy is not neutral toward religion when it expressly treats religious practices more harshly than comparable secular activities.  *Roman Catholic Diocese of Brooklyn, New York -v.- Cuomo*, 141 S. Ct. 63, 67-68 (2020); and *Tandon -v.- Newsom*, 141 S.Ct. 1294, 1296 (2021).  In this case, Defendant Makin has implemented a policy expressly requiring local school officials to deny all requests for religious exceptions to the school vaccination law, despite the fact that Title 20-A M.R.S. §6355 gives exemptions for three other secular reasons and "underinclusively" fails to include thousands who should be included.  As the Plaintiffs allege in their Amended Complaint:

> "16.    Maine law, Title 20-A M.R.S. §6355, provides, in pertinent part:
> "A superintendent may not permit any child to be enrolled in or to attend school without a certificate of immunization for each disease or other acceptable evidence of required immunization or immunity against the disease..."
>
> 17.    Pursuant to their joint rulemaking authority, the Maine Department of Education and the Maine Center for Disease Control have listed 10 diseases as "diseases" against which a student must be vaccinated.
>
> 17.1.  While the 10 diseases listed by the MDOE and the MCDC are commonly referred to as "childhood diseases," in fact most of them are contracted and spread by

---

[1]    At pages 9-12 of her Motion, Defendant Makin argues that: "The Constitution does not require a religious exemption to a mandatory vaccination law."  Again, the Plaintiffs do not argue that Maine cannot enact a law mandating that people get vaccinated against communicable diseases without including an express religious exemption in the statute.  Rather, they are claiming that if Maine does enact such a law, the law cannot fail to include groups of people who pose identical risks as those covered by the law, and the law cannot be applied unevenly, in a way that exempts certain groups for secular reasons, while refusing to exempt people with sincere religious objections... Such as the Defendants are doing in this case.

adults as well.

18.     Title 20-A M.R.S. §6355 lists three exceptions to the vaccination requirement:

      A.  If the parents agree to have their child get the required vaccinations within 90 days of entering school [exemption 1];

      B.  If the child has a written statement from a licensed medical provider that it would be medically inadvisable for the child to take a vaccination [exemption 2]; or

      C.  If the child was covered by an individualized education plan on September 1, 2021 and had been granted a philosophical or religious exemption by that date [exemption 4].

18.1.   Each of these three exemptions pose a risk that is comparable to the risk of unvaccinated religious objectors attending school.

18.2.   In particular, allowing new students to attend school without being vaccinated for 90 days poses the same risk of spreading diseases throughout the school as allowing unvaccinated religious objecting students to attend school would pose... at least for the first 90 days of each new student's attendance.

18.3.   Similarly, allowing students with medical exemptions to attend school without being vaccinated poses the same risk of spreading diseases throughout the school as allowing unvaccinated religious objecting students to attend school would pose.

18.4   And allowing students covered by individualized education plans on September 1, 2021 with philosophical or religious exemptions in place on that date to attend school without being vaccinated poses the same risk of spreading diseases throughout the school as allowing unvaccinated religious objecting students to attend school would pose... at least until that exemption "sunsets" in 2033.

18.5.   Furthermore, Maine law - including but not limited to Title 20-A M.R.S. §6355 - is underinclusive because neither §6355 nor any other law, rule, or regulation in Maine requires teachers, principals, school staff, janitors, volunteers, visitors - either adults or children - or other non-students to get the vaccinations before coming to school, even though they pose an identical risk of harm of spreading diseases throughout the school as unvaccinated students with religious objections.

33.1.   Altogether, it has been estimated that between 20% and 50% of the individuals who populate public schools in Maine are not required to be vaccinated. [2]

---

[2]     Randy J. Kassa, former School Approval and Student Enrollment Specialist at the Maine Department of Education, testified to the Maine Legislature:

19.     Previously, Title 20-A M.R.S. §6355 provided that any student could be exempted from the vaccination requirement for philosophical or religious reasons [exemption 3].  However, that exemption was deleted from the state statute on September 1, 2021.

20.     While the state statutory exemption for religious objections was deleted from Maine law, the change in that statute did not, and could not, delete the Free Exercise of Religion clause from the First Amendment to the U.S. Constitution.

21.     However, Defendant Makin has informed, directed, and ordered Defendants Porter, Loughlin, and Munsey (hereinafter collectively the "School Defendants"), and all other educators in this State, that children can no longer get religious exemptions from the vaccination requirement.

21.1.   That is the official policy of the Maine Department of Education..."

Because Defendant Makin's policy does not allow religious exemptions, while the statute provides exemptions for three secular reasons and fails to include thousand more who pose identical risks, the Defendant's policy is not neutral toward religion.  *Roman Catholic Diocese of Brooklyn, New York -v.- Cuomo*, 141 S.Ct.63, 67-68 (2020); and *Tandon -v.- Newsom*, 141 S.Ct. 1294, 1296 (2021).

At page 14 of her Motion, Defendant Makin cites *Doe -v.- Mills*, 16 F.4th 20, 30 (1st Cir. 2021) and *Whitlow -v.- Cal. Dep't of Educ.*, 203 F. Supp. 3d 1079, 1086-87 (S.D. Cal. 2016) for the proposition that §6355 is neutral because: "the Maine "[L]egislature removed both religious and philosophical exemptions from mandatory vaccination requirements, and thus did not single out religion alone.""  However, the Defendant misunderstands the Plaintiffs' "non-neutrality"

---

        "Maine's statutes do not require any adult staff working with children to be immunized against the relevant diseases a child must [be vaccinated against] in order to attend a public or approved private school.  Any unimmunized teacher, ed tech, administrator, custodian, substitute, social worker, monitor, volunteer, bus driver, cafeteria worker, or contracted services personnel could infect enrolled students.  Why would we pass LD798 when it leaves out 20-50% of a school's population?"

ECF #25, Attachment #1, taken from the Maine Legislature's website.

argument.  The Plaintiffs are not arguing that §6355 is not neutral toward religion, or that the removal of the religious exemption from §6355 was not neutral.  Rather, the Plaintiffs are alleging that Defendant Makin's policy - expressly denying exemptions to those with sincere religious objections - and the way that she and the local school Defendants are applying §6355 in light of that policy, is not neutral.  Consequently, *Doe* and *Whitlow* [3] are inapposite.  Defendant Makin's policy - as described in paragraphs 21 and 21.1 of the Amended Complaint - is expressly directed at religious objectors and treats them more harshly...  in fact, denies them all together.  Clearly, her policy is not neutral toward religion.

### (2.) General Applicability

"A law [or policy]... lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton v. City of Philadelphia, Pennsylvania*, 141 S.Ct. 1868, 1877 (2020).  Permitting secular conduct can occur by creating exemptions for similar secular conduct and/or by making the law "underinclusive," so that it does not include similar secular conduct.  See: *Lukumi, at 2232 - 2233; Fulton*, at 1877; and *Dr. A -v.- Hochul*, 595 U.S. 552, 558 (2021), On Application for Injunctive Relief,  dissenting opinion of Justice Gorsuch.

"[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise..." [Emphasis in original.]  *Tandon v. Newsom*,

---

[3]    In addition, the District Court's statement in *Whitlow*, at 1086,  that: "... nowhere... does the Supreme Court state that if the government provides a secular exemption to a law or regulation that it must also provide a religious exemption," was negated five years later when the Court stated in *Tandon -v.- Newsom*, 141 S. Ct. 1294 (2021), at 1296: "... government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise."   [Emphasis in the original.]

141 S.Ct. 1294, 1296 (2021).

Again, §6355 mandatory school vaccination law expressly includes three exemptions.  In addition, it fails to include thousands of people who work in or visit Maine schools every day.  As a result, 20% to 50% of the people in schools each day are not required to be vaccinated.  Nevertheless, the Defendants have not allowed C.F. to attend school because of Defendant Makin's "no religious exceptions" policy.

The only issue is whether any of these exemptions and/or underinclusions are "comparable."

"[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue..." *Tandon v. Newsom*, at 1296.  If they both affect the government's interest in a similar way, they are "comparable." *Fulton v. City of Philadelphia, Pennsylvania*, at 1877.  "Comparability is concerned with the <u>risks</u> various activities pose, not the <u>reasons</u> [for the activities.]." *Tandon -v.- Newsom*, at 1296. [Emphasis added.]

The problem in this case is that the "asserted government interest" is a moving target.  In its original Motion to Dismiss the Plaintiffs' Complaint [ECF #20] the Attorney General explained the government's interest in enacting §6355, at Page 16, as:

> "The law challenged by the Foxes is a public health measure **to stop the spread of childhood diseases in school settings**." [Emphasis added.]

After the Plaintiffs responded to that Motion [ECF #25], and explained why all three exemptions and underinclusions were comparable to C.F.'s requested religious exemption, the Attorney General reframed the State's interests for the law, at Pages 5-6 of its Reply Brief [ECF #29], to be:

> "Maine's actual interest in increasing the overall vaccination rate of

schoolchildren, protecting the health of students unable to be vaccinated, and preventing the spread of communicable, childhood diseases amongst schoolchildren."

Now, after reviewing the Plaintiffs' Amended Complaint, the Attorney General claims, in its Motion to Dismiss the Plaintiffs' Amended Complaint [ECF #50], at Page 17:

"In eliminating nonmedical exemptions to the vaccination requirements, the Maine Legislature sought to reverse the trajectory of falling vaccination rates, prevent communicable, preventable diseases from taking root in schools, and protect children and others who are unable to be vaccinated for medical reasons."

However, §6352 of the Act, itself, states that the purpose of the law is:

"**To assure a safe and healthful school environment**, the Legislature intends that the provisions of this subchapter on immunization shall apply in the schools of the State." [Emphasis added.]

Simply put, the purpose of the law is to protect school children from getting communicable diseases.

Again, Title 20-A M.R.S. §6355 contains three express exemptions.  It reads, in pertinent part:

"A superintendent may not permit any child to be enrolled in or to attend school without a certificate of immunization for each disease or other acceptable evidence of required immunization or immunity against the disease, except as follows.

**1.  Written assurance.**  The parent provides a written assurance the child will be immunized within 90 days...

**2.  Medical exemption.**  The parent or child provides a written statement from a licensed physician, nurse practitioner or physician assistant that, in the licensed physician's, nurse practitioner's or physician assistant's professional judgment, immunization against one or more of the diseases may be medically inadvisable...

**4.  Student covered by individualized education plan.**  A student covered by an individualized education plan on September 1, 2021 who elected a philosophical or religious exemption from immunization

requirements on or before September 1, 2021..."

Under exemption 1, a child can attend school for up to 90 days without being vaccinated so long as his/her parents provide written assurance that the child will take the vaccinations within 90 days. Obviously, a child claiming such an exemption could spread diseases throughout the school for up to 90 days. The risk of spreading diseases by allowing these children to attend school is identical to the risk of allowing unvaccinated children with religious objections to attend school, except the risk would be limited to 90 days... A distinction without a difference.

The Defendant discusses the "comparability" of this exemption in footnote 13 of her Motion. She cites *Doe -v.- San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1179 (9th Cir. 2021) as reasoning that a 30-day grace period to a single vaccination requirement did not defeat general applicability. The Plaintiffs respectfully disagree with that reasoning. Again, a "conditionally enrolled" unvaccinated child is just as likely to spread a communicable disease in a school as an unvaccinated child with a religious exemption. How is that "not comparable" and constitutionally acceptable for 30 days... Much less for 90 days, as in the case of §6355 ? "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod -v.- Burns*, 427 U.S. 347, 373 (1976).

In that footnote the Defendant also argues that: "The grace period provision furthers the State's interests of increasing the overall vaccination rate of schoolchildren..." However, the Plaintiffs fail to understand how giving children a 90 day grace period to get vaccinated, rather than requiring them to get vaccinated before coming to school, will "increase the overall vaccination rate of schoolchildren." Presumably, this is why the argument was tucked away in a footnote.

Under exemption 2, children with medical issues can attend school without being

vaccinated and can spread diseases throughout the school, just as unvaccinated children with religious objections could.  The risk of spreading diseases of the two groups is identical.  See: Dissenting opinion of Justice Gorsuch in *Dr. A v. Hochul*, supra.

Defendant Makin argues, at page 17 of her Motion, that:

> "Exempting persons who are medically able to be vaccinated would <u>not</u> serve Maine's goals, but exempting persons to whom vaccination is medically inadvisable does serve the State's goals."   citing *Doe v. Mills*, 16 F. 4th 20, 30-31 (1st Cir. 2021).

Clearly, the State should not require children to get a vaccination that could harm them.  And if the Court accepts the Defendants latest iteration of the State's interests in its school vaccination law -  (1.) to reverse the trajectory of falling vaccination rates; (2.) to prevent communicable, preventable diseases from taking root in schools; and  (3.) to protect children and others who are unable to be vaccinated for medical reasons - then the medical exception furthers goal #3 insofar as that child is concerned.  However,  allowing a medically exempt child into the school runs counter to goals #1 and #2, and even runs counter to goal #3 insofar as other unvaccinated students are concerned.  Again, the risk of spreading diseases in schools is identical between groups of children who are unvaccinated for medical reasons and groups of children who are unvaccinated for religious reasons.  As the Sixth Circuit Court of Appeals explained, in *Maryville Baptist Church, Inc. -v.-Beshear*, 957 F.3d 610, 614: "Risks of contagion turn on social interactions in close quarters; the virus does not care why they are there."

The Plaintiffs understand how Defendant Makin may feel that children who are unable to be vaccinated for medical reasons have a more compelling reason for an exemption than children who cannot be vaccinated for religious reasons.  However, the First Amendment does not permit such a value comparison between competing secular and religious interests.  See: *Lukumi*, at 537-538.  As compelling as it may seem, it is simply not appropriate for the government to judge that potential

adverse health consequences are more worthy of protection than potential, eternal adverse spiritual consequences.  Again, as the Court explained in *Tandon*, at 1296:

> "Comparability is concerned with the <u>risks</u> various activities pose, not the <u>reasons</u> [for the activities]."   [Emphasis added.]

And under exemption 4, special needs children with individualized education plans and philosophical or religious exemptions in place before September 1, 2021 can attend school without being vaccinated and can spread diseases throughout the school, just as unvaccinated children with religious objections could.  Again, the risk of spreading diseases of the two groups is identical.

At Pages 16-17 of her Motion, the Defendant argues:

> "... the inclusion of a[n] IEP sunset provision does not undermine the State's interests."

But even if the Court accepts the Defendants latest iteration of the State's interests in its school vaccination law -  (1.) to reverse the trajectory of falling vaccination rates; (2.) to prevent communicable, preventable diseases from taking root in schools; and  (3.) to protect children and others who are unable to be vaccinated for medical reasons - the IEP exemption flunks all three of these tests. [4]   Without this exemption, all these students would have to be vaccinated now and would be added to the tally of the totally vaccinated.  That would further all three of the State's purported interests.  But exempting these students only runs counter to those interests.

At Page 19 of her Motion, the Defendant argues that the IEP exemption is not "comparable" because it sunsets, and will be fully gone in 2033 ! [ECF 45, para. 18.4]  Really ?  2033 !  CF will be graduating from high school in 2034.  And his request for a religious exemption is not comparable !  All the Plaintiffs' arguments concerning exemption 1 (the 90-day grace period) are equally

---

[4]   The Defendant all but concedes this point, and at Pages 24-25 of her Motion, argues that the IEP exemption should be severed to save the rest of §6355.

applicable to this IEP exemption; but even more so. [5]   This is a 10 year exemption, rather than a 90-day exemption.

Finally, §6355  is "underinclusive," because it does not require teachers, principals, school staff, janitors, volunteers, visitors (either adults or children), or other non-students  to get vaccinations before entering schools, even though most of the 10 diseases school children must get vaccinated against are contracted and spread by adults as well, and even though they pose an identical risk of harm of spreading diseases throughout the school as unvaccinated students with religious objections. [ECF #45, para. 17.1 and 18.5]

In response to this "underinclusiveness" argument, the Defendant argues in her Motion, at Pages 17-18:

> "The Foxes' Amended Complaint ignores that comparability "for the purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue," citing *Tandon*, at 1296.

However, the Defendant does not say how the Plaintiffs' "underinclusiveness" argument would fare if judged by those asserted interests... No doubt because it would pass with flying colors.  Again, if the Court accepts the Defendant's latest iteration of the State's interests in its school vaccination law -  (1.) to reverse the trajectory of falling vaccination rates; (2.) to prevent communicable, preventable diseases from taking root in schools; and  (3.) to protect children and others who are unable to be vaccinated for medical reasons - amending the law to require all people who enter a school to be vaccinated would promote all three goals.

In fact, amending the law to require all people who enter a school to be vaccinated is the **only**

---

[5]   At Page 24 of her Motion, the Defendant cites *We the Patriots USA, Inc. -v.- Conn. Off. Of Early Childhood Dev.*, 579 F. Supp. 3d 290 (D. Ct. 2022) as upholding a religious "sunset" exemption against an Equal Protection challenge.  However, the Court simply upheld the provision by finding that it had a rational basis.  The Plaintiffs in that case did not argue that there was a Free Exercise problem with that "sunset" provision.

way the State can ever achieve the 90% to 95% vaccination rate it is striving for to achieve "herd immunity." [ECF 49-9, 10, and 14]  Again, somewhere between 20% and 50% of the people in a school each day are not required to be vaccinated. [ECF 45, para 33.1; and Plaintiff's Exhibit 1] As of 2022 only 0.5% of the kindergarteners at Mabel I Wilson Elementary had medical exemptions, and there were no other kindergarteners with exemptions. [ECF 49-33]  That means the other 19.5% to 49.5% of people in the school who weren't required to be vaccinated were teachers, principals, school staff, janitors, volunteers, visitors - either adults or children - or other non-students... the "underincluded group.

All such people pose comparable risks for the spread of diseases in schools, and none of them are required to be vaccinated - either by §6355 or by any other law, rule, or regulation in Maine. Such underinclusion is further proof that §6355 is not generally applicable and is being applied in a discriminatory manner against those who profess religious objections to its vaccine mandate.   See: *Lukumi,* at 544-546; and *Fulton,* at 1877.

In response to this argument, Defendant Makin argues, at page 19 of her Motion, that:

> "... a law [does not need ] to apply to all people, everywhere, at all times, to be "generally applicable." "

However, a law does have to be applicable to all people who pose a comparable risk to be generally applicable.  See:  *Lukumi,* at 544-546.

Defendant Makin may argue that visitors, volunteers, and people who only occasionally enter a school may pose the same kind of risk - the spread of disease in the school - but not pose the same magnitude of risk.  Clearly, however, unvaccinated teachers and people who work with students every day do pose the same magnitude of risk, and therefore do pose a "comparable" risk.  See generally:  *Kane v. De Blasio*, 19 F. 4th 152, 166 (2nd Cir. 2021); and  *Jane Doe -v.- Northshore University Healthsystem*, No. 21-cv-05683, at 12 , Judge John F. Knese  (ED, ND Ill.  11/30/21).

As noted above, §6355 leaves out and exempts so many people that pose the same risk of harm that unvaccinated religious objectors pose that any claim to "general applicability" does not pass the straight face test.

The second argument the Defendant makes to the Plaintiffs' "underinclusiveness" argument is that "Maine has made no comparative assessment of risk between secular and religious activity." The Plaintiffs do not understand this argument.  In *Fulton; Lukumi; Tandon;* and *Roman Catholic Diocese,* the governments did not make risk assessments.  Rather, the Court reviewed the relative risks of the various activities and found them comparable; which led them to conclude that the governments were discriminating against religious beliefs and practices.  Similarly, the risks are comparable - even identical - between unvaccinated religious objectors and other unvaccinated people with exemptions and/or with those who have been "underincluded" and left out of the school vaccination program.

Finally, the Defendant argues, at Page 19 of her Motion, that: "The vaccination status of adults with respect to childhood diseases has no impact on the policy the State of Maine is implementing."  However, this is just factually untrue.   As stated above, most of the 10 diseases school children must get vaccinated against are contracted and spread by adults as well.  And even though they pose an identical risk of harm of spreading diseases throughout the school as unvaccinated students with religious objections, there is no law, regulation, or policy that requires them to be vaccinated before entering a school.  [ECF #45, para. 17.1 and 18.5]

At Page 9 of her Motion, the Defendant notes that Judge Levy recently upheld a Free Exercise challenge by healthcare workers to Maine's law requiring vaccinations for them. *Lowe - v.- Mills*, No. 1:21 CV-00242-JDL, 2022 WL 3542187 (D. Me. Aug. 18, 2022).  However, the statute at issue in that case had only one exemption - a medical exemption.   On the other hand, §6355 has

three exceptions and an underinclusiveness problem.   Although *Tandon* held that even one comparable secular activity treated more favorably than religious exercise would render a regulation unconstitutional,  "As a rule of thumb, the more exceptions to a [regulation], the less likely it will count as a generally applicable, non-discriminatory law."  *Maryville Baptist Church*, at 614.  In addition, the government's asserted interests for the statute in *Lowe* were different than for §6355; and as stated above, the governments's asserted interests for §6355 are conflicting as to whether they support or cut against medical exemptions.

### (3.)   Strict Scrutiny

Having failed the "general applicability" test, the Defendant "has the burden of proving that the challenged law satisfies strict scrutiny."  *Tandon*, at 1296.

A government policy - in this case, applying the exception and underinclusiveness riddled vaccine mandate without allowing exemptions for religious objectors - can survive strict scrutiny only if it advances compelling interests - meaning "interests of the highest order" - and is narrowly tailored to achieve those interests.  *Fulton*, at 1881; and *Lukumi*, at 546.

Furthermore, the compelling interest question is not whether the underlying purpose for the law is compelling, but rather whether the government has a compelling interest in denying an exception to religious objectors while granting exceptions to others and excluding others from the reach of the law.  See: *Fulton*, at 1881; and *Dahl v. Board of Trustees of Western Michigan University*, 15 F. 4th 728, 734-735 (6th Cir. 2021).

In her Motion, Defendant Makin does not argue that she has a compelling interest in discriminating against the Plaintiffs.  Rather, at pages 20 - 21 she argues that Maine has a compelling interest in enacting a school vaccine mandate.  As noted above, this is not the correct, constitutionally mandated analysis.

Since the Defendant has failed to assert and failed to argue that the government has a compelling interest in denying an exemption to the Plaintiffs for their religious objections, despite the law granting exceptions to others and excluding others from the reach of the law who pose comparable risks, her policy of denying their request for an exception for C.F. does not survive strict scrutiny.

### (4.)   Rational Basis Scrutiny

Furthermore, even if rational basis scrutiny were applied, the Defendant's policy would still fail.  What could possibly be the rational basis for denying an exception to religious objectors while granting exceptions to others and excluding others from the reach of the law who pose comparable risks?  Again, the Defendant does not assert or argue that there is a rational basis for such discrimination; but rather argues only that the State has a rational basis for enacting a school vaccination law generally.

### B.   <u>Equal Protection</u>.

The Defendants' discriminatory application of §6355 also constitutes a violation of the Plaintiffs' rights to Equal Protection under the Fourteenth Amendment.  See generally: *Lukumi*, at 540.  As noted by the Defendant, at page 22 of her Motion:

> "Equal protection of the laws means that no person or class of persons shall be denied protection of the laws which is enjoyed by other persons or classes in the same place and under like circumstances.  *Walsh v. Massachusetts*, 618 F.2d 156, 158 (1st Cir. 1980)."

And as stated in the preceding section of this Objection, the Plaintiffs are being denied a religious exemption while numerous other people are being given exemptions in the same school, under the same circumstances, and with the same health risks.

Furthermore, if a law is applied in a manner that discriminates against plaintiffs in a way that impinges on one of their fundamental constitutional rights, then the government must prove that it

can survive a strict scrutiny analysis.  *San Antonio School District v. Rodriguez*, 411 U.S. 1, 17 (1973); and *Maher v. Roe*, 432 U.S. 464, 470 (1977).   Needless to say, the First Amendment right to Free Exercise of Religion is a fundamental constitutional right.

As stated above, the Defendants' application of §6355 in a religiously discriminatory manner cannot survive strict scrutiny, and cannot even survive rational basis scrutiny.

And this is true whether or not *Smith* remains the law for Free Exercise claims.[6]  Under *Smith*, the Court essentially applies an Equal Protection analysis to Free Exercise claims.  *Lukumi*, at 540.  And if Smith is overruled, that same analysis will still be applicable to Equal Protection claims.

At pages 23-24 of its Motion, Defendant Makin argues that children with IEPs and philosophical or religious exemptions are more deserving of continued exemptions than children who request religious exemptions today.  Again, however, the First Amendment does not permit such a value comparison between competing secular and religious interests.  *Lukumi*, at 537-538. This is true whether a Free Exercise claim stands on its own or if it is the basis for an Equal Protection claim - which, no doubt, is another reason why the Defendant recommends, at pages 24-25 of her Motion, that the IEP philosophical/ religious exemption be struck down and severed from §6355.  However, the grandfathered IEP / philosophical / religious exemption is only one of several exemptions and underinclusions to §6355 that make the Defendants' denial of the Plaintiff's demand for a religious exemption a violation of their Equal Protection rights.

## C.   Severence of the IEP Exception.

At Page 24 - 25 of her Motion, the Defendant argues that if the Court finds that §6355 is unconstitutional because of the IEP exemption, then it should be severed from the statute.  However,

---

[6]   There appears to be a ground swell on the Supreme Court to overrule *Smith*.  See: The concurring opinions in *Fulton*.

the Plaintiffs are not arguing that the IEP exception is unconstitutional.  Rather, the Plaintiffs are

arguing that the Defendant's "no religious exceptions" policy, and the way that she and the local

school Defendants are implementing that policy - and interpreting and applying the statute - is

unconstitutional in view of the three exceptions and the underinclusiveness of the statute.


## IV.   PERSONAL CAPACITY DAMAGE CLAIMS.

Next, at pages 7-8 of her Motion, the Defendant argues that her directing the other

Defendants to refuse to consider requests for religious exemptions was a "discretionary function,"

and therefore she has qualified immunity from damages in her personal capacity.

However, as the Defendant notes, qualified immunity does not apply when a defendant

violates "clearly established... constitutional rights of which a reasonable person would have

known."  *Martinez-Rodriguez v. Guevara*, 597 F.3 414, 419 (1st Cir. 2010).

As will be discussed in Section III A. above, the principle that it is unconstitutional to apply a

law in a way that denies religious exemptions while granting other exemptions to people similarly

situated has been clearly established since 1990.  See: *Employment Division v. Smith*, 494 U.S. 872

(1990).  See also: *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993).

In addition, it has been universally recognized since the U.S. Constitution was adopted, in

1788, that a state law cannot negate a person's federal constitutional rights.  U.S. Constitution, Art.

VI, cl. 22; and *Hillsborough County v. Automated Med. Labs, Inc.*, 471 U.S. 707, 712-13 (1985).

The Defendant argues that the principle of not discriminating against religion while treating

secular concerns more favorably was not "clearly established" because it had never been litigated

before in a school vaccination context.  However, this is ludicrous.  It's like a Commissioner of

Housing arguing, after *Brown -v.- Board of Education*, that she didn't know that the principle of

"**separate is inherently unequal**" was applicable to government housing because *Brown* was just a public school case !

Consequently, Commissioner Makin must have known - or clearly should have known - that the removal of the religious exemption from Title 20-A M.R.S. §6355 **could not** take away peoples' constitutional rights to religious exemptions under the Free Exercise Clause when it is so underinclusive and riddled with other exemptions... And her motion to dismiss the Plaintiffs' claims for damages in her personal capacity should be denied.

Dated at Portland, Maine this 12th day of February, 2023.

By:      /s/   Stephen C. Whiting
         Stephen C. Whiting, Bar No. 559
         Attorney for the Plaintiffs

The Whiting Law Firm, P.A. 75 Pearl Street, Suite 207, Portland, Maine 04101  (207) 780-0681

## <u>CERTIFICATE OF SERVICE</u>

Plaintiffs, by and through their undersigned legal counsel, hereby certify that on this date this objection was filed in the Court's ECF system, and that the ECF system will be sending a copy to all of the Defendants and/or their counsel of record.

Respectfully submitted,

Dated:   February 12, 2023        /s/ Stephen C. Whiting
Stephen C. Whiting, Bar No. 559
*Counsel to Plaintiffs*
The Whiting Law Firm
75 Pearl Street, Suite 207
Portland, ME  04101
(207) 780-0681
mail@whitinglawfirm.com