UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| GREGORY FOX and RITA FOX, Individually and as Parents of C.F.<br><br>Plaintiffs<br><br>-vs-<br><br>MAINE DEPARTMENT OF EDUCATION, COMMISSIONER PENDER MAKIN, MAINE SCHOOL ADMINISTRATIVE DISTRICT 51, SUPERINTENDENT JEFFREY PORTER, PRINCIPAL SALLY LOUGHLIN, and VICE PRINCIPAL COREY MUNSEY, Individually and in their Official Capacities<br><br>Defendants | Civil Action No. 2:22-cv-00251-GZS |

**PLAINTIFFS' AMENDED OBJECTION TO SCHOOL DEFENDANTS' MOTION TO DISMISS WITH INCORPORATED MEMORANDUM OF LAW**

In re-reading their Objection to the School Defendant's Motion to Dismiss [ECF #53], the Plaintiffs noticed that a sentence on Page 15 was misstated. Therefore, the Plaintiffs are filing this Amended Objection to correct that misstated sentence. The misstatement is corrected herein in bold at Page 16.

NOW COME Plaintiffs Gregory Fox and Rita Fox, individually and as parents of C.F., pursuant to Local Rule 7(b), and object to Defendants Maine School Administrative District 51's,

Porter's, Loughlin's, and Cory Munsey's [1] (hereinafter collectively the "School Defendants") Motion to Dismiss. [ECF #51] In support of this Objection, the Plaintiffs state:

In this action, brought pursuant to Title 42 U.S.C. §1983, the Plaintiffs seek injunctive relief from the School Defendants in their official capacities and damages in their personal capacities for violating the Plaintiffs' constitutional rights to Free Exercise of Religion and Equal Protection. The Plaintiffs do not claim that Maine cannot enact a law mandating that people get vaccinated against communicable diseases. Rather, they are claiming that if Maine does enact such a law, it cannot fail to include groups of people who pose identical risks as those covered by the law, and cannot be applied by the Defendants unevenly, in a way that exempts certain groups for secular reasons while refusing to exempt people with sincere religious objections.

The School Defendants have filed a Motion to Dismiss, claiming that this Court has no subject matter jurisdiction (under F.R.Civ.P. 12(b)(1)) and /or that the Plaintiffs' Complaint fails to state claims upon which relief can be granted (under F.R.Civ.P. 12(b)(6)).

The Plaintiffs object to the School Defendants' Motion to Dismiss for the reasons herein stated.

## I. FACTUAL BACKGROUND

The facts are set forth in the Plaintiffs' Amended Complaint [ECF #45], which the Plaintiffs incorporate by reference. At page 5 of their Motion, the Defendants acknowledge that the factual allegations in the Complaint should be accepted as true for the purpose of their Motion.

At pages 1- 2 of their Motion, the School Defendants state that they adopt by reference

---

[1] In footnote 1 of their Motion, the School Defendants state that: "Sally Loughlin served as the Principal of Mabel I. Wilson Elementary School and Cory Munsey served as the Assistant Principal. Loughlin has since retired, and Munsey is now the Principal of Mabel I. Wilson Elementary School."

the State Defendants' Motion to Dismiss. In response to the arguments presented in the State Defendants' Motion, the Plaintiffs hereby adopt by reference their Objection to that Motion.

## II. OFFICIAL CAPACITY DAMAGE CLAIMS.

First, at pages 5-6 of their Motion, the School Defendants argue that the Plaintiffs cannot seek damages from them in their official capacities, and seek dismissal of any such claims under F.R.Civ.P. 12(b)(1).. The Plaintiffs did not intend to seek damages from them in their official capacities, and therefore do not object to a dismissal of any such claims.

## III. PERSONAL CAPACITY CLAIMS FOR EQUITABLE RELIEF

At Page 9 of their Motion, the School Defendants argue that the Plaintiffs cannot obtain injunctive relief from them in their personal capacities. The Plaintiffs did not intend to seek injunctive relief from them in their personal capacities, and therefore do not object to a dismissal of any such claims.

## IV. PLAINTIFFS' OFFICIAL CAPACITY CLAIMS FOR EQUITABLE RELIEF

Title 20-A M.R.S. §6355 provides, in pertinent part:

> "A superintendent may not permit any child to be enrolled in or to attend school without a certificate of immunization..."

Consequently, Superintendent Porter has the statutory power and duty to apply and enforce the State's mandatory school vaccination law. In addition, the Plaintiffs have alleged that Defendant Porter created a "no religious exemptions" policy to the vaccination for MSAD 51, and applied that policy to deny the Plaintiffs a religious exemption for their child - C.F.- and refused to let him enroll in school. [ECF #45, para. 26, 29, and 41.6]

And the Plaintiffs have alleged that Defendant Munsey mis-applied the law and refused to grant the Plaintiffs' request for a religious exemption for C.F., and refused to allow him to enroll in school at the Mabel I. Wilson Elementary School. [ECF #45, para 25, 29, and 41.7]

. Consequently, it is proper for the Plaintiffs to seek injunctive relief from School Defendants Porter, Munsey, and MSAD 51. [2]. *Ex parte Young*, 209 U.S. 123, 157 (1908); and *Shell Oil Co. -v.- Noel*, 608 F.2d 208, 211 (1st Cir. 1979). Specifically, the Plaintiffs are asking the Court to grant injunctive relief against Defendants Porter, Munsey, and MSAD 51, enjoining them from requiring C.F. to get the required vaccinations and allowing him to enroll at the Mabel I. Wilson Elementary School.

### A.  Religious Discrimination.

In Count I of their Amended Complaint [ECF #45], the Plaintiffs allege that the School Defendants have discriminated against them and their child, C.F., because of their religious beliefs and practices.

The School Defendants do not challenge the Plaintiffs' allegation that:

> "22.  The Plaintiffs have sincerely held religious convictions that prevent them from having C.F. get vaccinated. In particular, God has impressed on them that they should not have their children vaccinated, and that to do so would be to disobey God !"

The First and Fourteenth Amendments give the Plaintiffs the right to not only hold religious beliefs, but also to act on those beliefs. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). However, laws and policies that only incidentally burden religious practices - as opposed to beliefs - are not subject to strict scrutiny **so long as** they are neutral and generally applicable. *Employment Division v. Smith*, 494 U.S. 872 (1990). The problem in this case is that Title 20-A M.R.S. §6355 is "underinclusive" and the way the Defendants are applying the statute make it neither neutral nor generally applicable. [3]

---

[2]   But not from Defendant Loughlin, since she has retired.

[3]   Again, The Plaintiffs do not argue that Maine cannot enact a law mandating that people get vaccinated against communicable diseases without including an express religious exemption in the statute. Rather, they are claiming that if Maine does enact such a law, the law

"[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise..." [Emphasis in original.] *Tandon v. Newsom*, 141 S.Ct. 1294, 1296 (2021).

Maine's mandatory school vaccination law (Title 20-A M.R.S. §6355) expressly includes three exemptions. The statute reads, in pertinent part:

> "A superintendent may not permit any child to be enrolled in or to attend school without a certificate of immunization for each disease or other acceptable evidence of required immunization or immunity against the disease, except as follows.
> 
> **1. Written assurance.** The parent provides a written assurance the child will be immunized within 90 days...
> 
> **2. Medical exemption.** The parent or child provides a written statement from a licensed physician, nurse practitioner or physician assistant that, in the licensed physician's, nurse practitioner's or physician assistant's professional judgment, immunization against one or more of the diseases may be medically inadvisable...
> 
> **4. Student covered by individualized education plan.** A student covered by an individualized education plan on September 1, 2021 who elected a philosophical or religious exemption from immunization requirements on or before September 1, 2021..."

In addition, Maine law fails to include thousands of people who work in or visit Maine schools every day, because neither §6355 nor any other law, rule, or regulation requires them to be vaccinated, thereby making the law "underinclusive." As a result, 20% to 50% of the people

---

cannot fail to include groups of people who pose identical risks as those covered by the law, and the law cannot be applied unevenly, in a way that exempts certain groups for secular reasons, while refusing to exempt people with sincere religious objections... Such as the Defendants are doing in this case.

in schools each day are not required to be vaccinated. [ECF #45, para. 33.1] [4] Nevertheless, the Defendants have not allowed C.F. to attend school because of their "no religious exceptions" policies.

### (1.) Neutrality.

To be neutral, a law or policy may not single out religion or religious practices. *Church of the Lukumi Babalu Aye, Inc. -v.- City of Hialeal*, 508 U.S. 520, 532-534 (1993); and *Doe v. Mills*, 16 F.4th 20, 29 (1st Cir. 2021). A law or policy is not neutral toward religion when it expressly treats religious practices more harshly than comparable secular activities. *Roman Catholic Diocese of Brooklyn, New York -v.- Cuomo*, 141 S. Ct. 63, 67-68 (2020); and *Tandon -v.- Newsom*, 141 S.Ct. 1294, 1296 (2021). In this case, each of the Defendants has created and/or enforced a policy that expressly requires all requests for religious exceptions to the school vaccination law to be denied, despite the fact that Title 20-A M.R.S. §6355 gives exemptions for three other secular reasons and "underinclusively" fails to include thousands who should be included. In addition, the Defendants have enforced those policies against C.F., denying the Plaintiffs' request for a religious exemption for him and refusing to enroll him in school. See: ECF #45, para 18-21.1, 25-33, and 41.4-41.7.

---

[4]   Randy J. Kassa, former School Approval and Student Enrollment Specialist at the Maine Department of Education, testified to the Maine Legislature:

> "Maine's statutes do not require any adult staff working with children to be immunized against the relevant diseases a child must [be vaccinated against] in order to attend a public or approved private school. Any unimmunized teacher, ed tech, administrator, custodian, substitute, social worker, monitor, volunteer, bus driver, cafeteria worker, or contracted services personnel could infect enrolled students. Why would we pass LD798 when it leaves out 20-50% of a school's population?"

ECF #25, Attachment #1, taken from the Maine Legislature's website.

Because the Defendants' policies specifically do not allow religious exemptions, while the law provides exemptions for three secular reasons and fails to include thousand more who pose identical risks, the Defendants' policies are not neutral toward religion. *Roman Catholic Diocese of Brooklyn, New York -v.- Cuomo*, 141 S.Ct.63, 67-68 (2020); and *Tandon -v.- Newsom*, 141 S.Ct. 1294, 1296 (2021).

In their Motion [ECF #51], at Page 13, the School Defendants argue: "... the statute is both facially neutral and non-disciminatory."  However, as will be discussed below, the statute fails to cover numerous groups of people in schools who pose identical risks of harm as religious objectors.  In addition, the Plaintiffs are arguing that the Defendants' "no religious exemptions" policies are not facially neutral (in fact, they're expressly aimed at religious beliefs and practices) and are discriminatory; and that the Defendants' application and enforcement of those policies against C.F. and the Plaintiffs is discriminatory.

### (2.)   General Applicability

"A law [or policy]... lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton v. City of Philadelphia, Pennsylvania*, 141 S.Ct. 1868, 1877 (2020).  Permitting secular conduct can occur by creating exemptions for similar secular conduct and/or by making the law "underinclusive," so that it does not include similar secular conduct.  See: *Lukumi, at 2232 - 2233; Fulton*, at 1877; and *Dr. A -v.- Hochul*, 595 U.S. 552, 558 (2021), On Application for Injunctive Relief, dissenting opinion of Justice Gorsuch.

The only issue is whether any of §6355's three exemptions and/or the "underinclusions" are "comparable."

"[W]hether two activities are comparable for purposes of the Free Exercise Clause must

be judged against the asserted government interest that justifies the regulation at issue..." *Tandon v. Newsom*, at 1296. If they both affect the government's interest in a similar way, they are "comparable." *Fulton v. City of Philadelphia, Pennsylvania*, at 1877. "Comparability is concerned with the risks various activities pose, not the reasons [for the activities.]." *Tandon -v.- Newsom*, at 1296.

The Plaintiffs have provided the Court with an in depth analysis of the "comparability" of a religious exception and each of the three exemptions listed in §6355, as well as with the "underinclusion" problem with the law, at Pages 8-16 of their Objection to Defendant Makin's Motion to Dismiss. Rather than re-make those arguments, the Plaintiffs hereby incorporate those arguments by reference here.

Suffice it to say that all three exemptions and the "underinclusiveness" of the statute allow thousands of unvaccinated people into Maine's schools each day; each of whom pose an **identical** risk of spreading communicable diseases to the students in those schools as someone with a religious exception to vaccination would pose... But they are all allowed in, and C.F. is not ! As the Sixth Circuit Court of Appeals explained, in *Maryville Baptist Church, Inc. -v.- Beshear*, 957 F.3d 610, 614: "Risks of contagion turn on social interactions in close quarters; the virus does not care why they are there."

Under exemption 1, a child can attend school for up to 90 days without being vaccinated so long as his/her parents provide written assurance that the child will take the vaccinations within 90 days. Obviously, a child claiming such an exemption could spread diseases throughout the school for up to 90 days. The risk of spreading diseases by allowing these children to attend school is identical to the risk of allowing unvaccinated children with religious objections to attend school, except the risk would be limited to 90 days... A distinction without a difference. Granted,

it would only be for 90 days, but a lot of people could be infected in 90 days... And that is 90 days times each new student enrolled in the school throughout the school year !

Under exemption 2, children with medical issues can attend school without being vaccinated and can spread diseases throughout the school, just as unvaccinated children with religious objections could.  An unvaccinated student with a medical exemption has avoided possible harm to himself by not taking the vaccinations; but if he contracts a disease, he would pose the same risk of infecting all the other students as C.F. would.  The risk of spreading diseases of the two groups is identical.  See:  Dissenting opinion of Justice Gorsuch in *Dr. A v. Hochul*, supra.

The Plaintiffs understand how the Defendants may feel that children who are unable to be vaccinated for medical reasons have a more compelling reason for an exemption than children who cannot be vaccinated for religious reasons.  However, the First Amendment does not permit such a value comparison between competing secular and religious interests.  See: *Lukumi*, at 537-538.  Again, as the Court explained in *Tandon*, at 1296:

> "Comparability is concerned with the risks various activities pose, not the reasons [for the activities.]." [Emphasis added.]

And under exemption 4, children with individualized education plans and philosophical or religious exemptions in place before September 1, 2021 can attend school without being vaccinated and can spread diseases throughout the school, just as unvaccinated children with religious objections could.  Again, the risk of spreading diseases of the two groups is identical. While fewer and fewer children will have that exemption, as students graduate, there will be unvaccinated IEP children in schools for the next 10 years with that exemption... And again, for the next 10 years, the risk of a student with an IEP philosophical/religious objection spreading diseases throughout the school is identical to the risk of a non-IEP unvaccinated child with a

religious objection spreading diseases. How is that not comparable ?

The School Defendants argue, at Page 13 of their Motion, that the IEP exemption "does not undermine the government's interests in protecting public health." Really ! Allowing unvaccinated special needs students to attend school doesn't undermine the government's interests in protecting public health ? On what planet ?

The Defendants note, at Page 14 of their Motion, that "Each year, the proportion of unvaccinated [IEP] students in Maine schools will decline..." However, without this exemption, all these students would have to be vaccinated now and would be added to the tally of the totally vaccinated.

Finally, §6355 is "underinclusive," because it does not require teachers, principals, school staff, janitors, volunteers, visitors (either adults or children), or other non-students to get vaccinations before entering schools. (ECF 45, para. 33.) All such people pose comparable risks for the spread of diseases in schools, and none of them are required to be vaccinated - either by §6355 or by any other law, rule, or regulation in Maine. Such underinclusion is further proof that §6355 is not generally applicable and is being applied by the Defendants in a discriminatory manner against those who profess religious objections to its vaccine mandate, such as the Palintiffs. See: *Lukumi,* at 544-546; and *Fulton,* at 1877.

In response to the Plaintiffs' "underinclusion" allegations, the School Defendants argue, at Pages 17-18 of their Motion: "However, "neither the Supreme Court... nor any other Court of which we are aware has ever hinted that a law must apply to all people, everywhere, at all times, to be "generally applicable." *Kane v. DeBlasio*, 19 F.4th 152, 166 (2nd Cir. 2021)." However, a law does have to be applicable to all people who pose a comparable risk to be generally applicable. See: *Lukumi,* at 544-546. Otherwise, all those excluded from the scope of the statute

are essentially exempted while those with religious objections are not, even though they all pose identical risks.

As noted above, §6355 leaves out and exempts so many people that pose the same risk of harm that unvaccinated religious objectors pose that any claim to "general applicability" does not pass the straight face test. It is likely that dozens of potentially unvaccinated people - children and adults - come to the Mabel I Wilson Elementary School, and to every other school in the State, every school day. Consequently, §6355 must be applied to also exempt those who object to the vaccine mandate for religious reasons - as required by *Fulton; Lukumi; Smith; Tandon;* and *Roman Catholic Diocese.*

### (3.) Strict Scrutiny -v.- Rational Basis Scrutiny

Having failed the "neutrality" and "general applicability" tests, the Defendants "have the burden of proving that the challenged law satisfies strict scrutiny." *Tandon*, at 1296.

A government policy - in this case, the Defendants' policies enforcingg the underinclusive and exclusion riddled school vaccine mandate without allowing exemptions for religious objectors - can survive strict scrutiny only if it advances compelling interests - meaning "interests of the highest order" - and is narrowly tailored to achieve those interests. *Fulton*, at 1881; and *Lukumi*, at 546.

Furthermore, the compelling interest question is not whether the underlying purpose for the law is compelling, but rather whether the government has a compelling interest in denying an exception to religious objectors while granting exceptions to others and excluding others from the reach of the law. See: *Fulton*, at 1881; and *Dahl v. Board of Trustees of Western Michigan University*, 15 F. 4th 728, 734-735 (6th Cir. 2021).

In their Motion the School Defendants do not argue that they have a compelling interest in

discriminating against the Plaintiffs. Rather, at pages 15 - 18 they argue only that the governmental infringement is rationally related to a legitimate government interest. Consequently, if the Court finds that the Defendants' "no religious exceptions" policies and/or the way they are applying the law is not neutral or generally applicable, then the Defendants' Motion should be denied.

Furthermore, even if rational basis scrutiny were applied, the Defendant's policy would still fail. What could possibly be the rational basis for denying an exception to religious objectors while granting exceptions to others who pose similar risks and excluding others from the reach of the law who pose similar risks? Again, the question is not whether the underlying purpose of the school vaccine mandate is rational, but rather whether the government has a rational basis for denying an exception to religious objectors while granting exceptions to others and excluding others from the reach of the law. See generally: *Fulton*, at 1881; and *Dahl v. Board of Trustees of Western Michigan University*, 15 F. 4th 728, 734-735 (6th Cir. 2021).

**(4.)     *We the Patriots* and *Lowe*.**

In their Motion, at Page 16, the Defendants argue: "This case is strikingly similar to *We the Patriots USA, Inc. -v.- Conn. Off. of Early Childhood Development* [579 F. Supp. 3d 290 (D. Ct. 2022)]." That case involved a school vaccination law with a medical exemption. The Plaintiffs made a facial Free Exercise challenge to the statute, arguing that the medical exemption required the statute to also expressly include a religious exemption. [5] The court ruled that a medical exemption was not comparable to a religious exemption because: (1.) the medical exemption furthered the state's interest in protecting the health of the students who needed the

---

[5]   The Plaintiffs also made an Equal Protection challenge to a religious exemption grandfathering provision in the statute, which the court rejected because there was a rational basis for the grandfathered exemption. The Plaintiffs did not argue that the grandfathered religious exemption created a Free Exercise problem for the statute.

exemption, whereas a religious exemption did not; and (2.) the group of kindergarten children who previously had religious exemptions was significantly larger than the group of children with medical exemptions, so the risks posed by the two groups were not comparable. The statistics in Connecticut showed that 2.3% of kindergarteners had had religious exemptions, whereas only 0.2% of kindergarteners had medical exemptions. The Plaintiffs believe the court erred in comparing the sizes of the two groups, rather than the risks that the individuals with each exemption posed to the rest of the school population. But nevertheless, even using such a group size comparison, the numbers in Maine result in the opposite conclusion. Maine's statistics show that in 2019, before the express religious exemption was removed from §6355, 0.6% of kindergartners in the State had medical exemptions, whereas only 0.4% had religious exemptions. [ECF #49-32]

Furthermore, the Plaintiffs' case not only involves a medical exemption, but two other exemptions and an "underinclusiveness" problem, such that 20% to 50% of the people in Maine schools are not required to be vaccinated. This case and *We the Patriots* are miles apart.

In their discussion of the Plaintiffs' Free Exercise claim, at Pages 12-14 of their Motion, the Defendants also cite extensively this Court's decision in *Lowe v. Mills*, 2022 WL3542187. In that case, healthcare workers with religious objections challenged a Maine statute requiring all healthcare workers to be vaccinated. There was one exception to the law - those who were medically unable to be vaccinated were exempt. The plaintiffs made a Free Exercise facial challenge to the statute based on that medical exemption. However, at Pages 29-34 of his decision, Judge Levy found that the statute did not mention religion and was therefore facially neutral. And at Pages 29-39 of his decision, he found that the medical exemption was not comparable to a religious exemption because a medical exemption protected the health of the

person in need of the exemption, whereas a religious exemption did not.

The Plaintiffs have already discussed the comparability of the risks posed by children with medical exemptions and those posed by children requesting religious exemptions, and will not reiterate them here.  Suffice it to say that *Lowe* only involved a medical exemption, but this case involves a medical exemption, two other exemptions, and an "underinclusiveness" problem, such that 20% to 50% of the people in Maine schools are not required to be vaccinated. .. Yet the Defendants cannot make an exception for the Plaintiffs based on their religious objections !

## V.   EQUAL PROTECTION

In Count II of their Amended Complaint [ECF #45], the Plaintiffs allege that the School Defendants have violated their right to Equal Protection by discriminated against them and their child, C.F., because of their religious beliefs and practices.

At Page 18 of their Motion, the School Defendants argue only that : "Because Count I fails under rational basis review, Count II fails too."  But the contrary is true in this case - because Count I succeeds, Count II also succeeds.

The Defendants' discriminatory application of §6355 also constitutes a violation of the Plaintiffs' rights to Equal Protection under the Fourteenth Amendment.  See generally: *Lukumi*, at 540.  As stated in *Walsh v. Massachusetts*, 618 F.2d 156 (1st Cir.1980), at 158:

> "Equal protection of the laws means that no person or class of persons shall be denied protection of the laws which is enjoyed by other persons or classes in the same place and under like circumstances."

And as stated in the preceding section of this Objection, the Plaintiffs are being denied a religious exemption while numerous other people are excluded from the vaccination law or are being given exemptions from the law in the same school, under the same circumstances., and posing the same risks.

Furthermore, if a law is applied in a manner that discriminates against plaintiffs in a way that impinges on one of their fundamental constitutional rights, then the government must prove that it can survive a strict scrutiny analysis. *San Antonio School District v. Rodriguez*, 411 U.S. 1, 17 (1973); and *Maher v. Roe*, 432 U.S. 464, 470 (1977). Needless to say, the First Amendment right to Free Exercise of Religion is a fundamental constitutional right.

As stated above, the Defendants' application of §6355 in a religiously discriminatory manner cannot survive strict scrutiny, and cannot even survive rational basis scrutiny.

And this is true whether or not *Smith* remains the law for Free Exercise claims. [6] Under *Smith*, the Court essentially applies an Equal Protection analysis to Free Exercise claims. *Lukumi*, at 540. If Smith is overruled, that same analysis will still be applicable to Equal Protection claims.

## VI. PERSONAL CAPACITY DAMAGE CLAIMS - QUALIFIED IMMUNITY.

Next, at pages 6-9 of their Motion, Defendants Porter, Loughlin, and Munsey argue that their denial of a religious exemption for C.F. was a "discretionary function," and therefore they have qualified immunity from damages in their personal capacities.

However, as the Defendants note at page 6 of their Motion, qualified immunity does not apply when a defendant violates "clearly established" constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

As discussed above, the principle that it is unconstitutional to apply a law in a way that denies religious exemptions while granting other exemptions to people similarly situated has been clearly established since 1990. See: *Employment Division v. Smith*, 494 U.S. 872 (1990). See

---

[6] There appears to be a ground swell on the Supreme Court to overrule *Smith*. See: The concurring opinions in *Fulton*.

also: *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993).  The fact that this well established principle had not yet been applied in a school vaccination case is irrelevant.  Such an argument is like a Commissioner of Housing arguing, after *Brown -v.- Board of Education*, that she didn't know the principle of "**separate is inherently unequal**" was applicable to government housing because *Brown* was just a public school case !

In addition, it has been universally recognized since the U.S. Constitution was adopted, in 1788, that a state law cannot negate a person's federal constitutional rights.  U.S. Constitution, Art. VI, cl. 22; and *Hillsborough County v. Automated Med. Labs, Inc.*, 471 U.S. 707, 712-13 (1985).  Consequently, the Defendants must have known - or clearly should have known - that the removal of the religious exemption from Title 20-A M.R.S. §6355 **could not** take away peoples' constitutional rights to religious exemptions under the Free Exercise Clause when it is so underinclusive and so riddled with other exemptions... And their motion to dismiss the Plaintiffs' claims for damages in their personal capacities should be denied.

At page 8 of their Motion, the Defendants argue that:

> "... Porter, Loughlin, and Munsey followed 20-A M.R.S.  §6355 to the very letter of the law..."

However, this is untrue.  Section 6355 does not say that school superintendents and principals have to deny requests for religious exemptions which are required by the First and Fourteenth Amendments.  All the recent amendment to §6355 did was to delete the express statutory exemption for philosophical and religious exemptions from the statute.  It did not, and could not, negate the requirement under the U.S. Constitution to grant religious exemptions when a statute provides exemptions for other things that pose similar risks.  Reading such a repeal of Constitutional rights into §6355 is a mis-interpretation and mis-application of the law.  As pled in the Plaintiffs' Amended Complaint [ECF #45]:

"20. While the state statutory exemption for religious objections was deleted from Maine law, the change in that statute did not, and could not, delete the Freedom of Religion clause from the First Amendment to the U.S. Constitution...

25. However, Defendants Principal Sally Loughlin and Vice Principal Corey Munsey denied the Plaintiffs a religious exemption for C.F., stating that religious exemptions were no longer allowed under state law, and refused to let C.F. attend school for the 2021-2022 school year.

26. Furthermore, in May of 2022 Defendant Superintendent Jeffrey Porter "unenrolled" C.F. from the Mabel I. Wilson Elementary School, with the explanation that Maine law had changed and that students could no longer get religious exemptions from the vaccination requirement.

27. Defendants Loughlin, Munsey, and Porter have told the Plaintiffs that C.F. cannot enroll in or attend the Mabel I. Wilson Elementary School until he gets his vaccinations, and that he cannot get a religious exemption to the vaccination requirement...

29. The Plaintiffs have made Defendants Loughlin, Munsey, Porter, and MSAD 51 aware of their religious convictions and have requested a religious exemption for C.F. under the First and Fourteenth Amendments to the U.S. Constitution, but the Defendants say they cannot grant C.F. a religious exemption because Title 20-A M.R.S. §6355 does not allow it...

34. Title 20-A M.R.S. §6355 is not generally applicable to all people similarly situated...

36. The manner in which the Defendants are interpreting Title 20-A M.R.S. §6355 violates the First and Fourteenth Amendments to the U.S. Constitution, and violates the Plaintiffs' First and Fourteenth Amendment rights to Freedom of Religion.

37. The manner in which the Defendants are enforcing Title 20-A M.R.S. §6355 violates the First and Fourteenth Amendments to the U.S. Constitution, and violates the Plaintiffs' First and Fourteenth Amendment rights to Freedom of Religion.

38. The manner in which the Defendants are interpreting and/or enforcing Title 20-A M.R.S. §6355's vaccination requirement against C.F. constitutes religious discrimination and violates the Plaintiffs' First and Fourteenth Amendment rights to Freedom of Religion."

Finally, qualified immunity does not immunize the Defendants from claims for injunctive relief [*Wood v. Strickland*, 420 U.S. 308, 314, fn. 6 (1975)], and the Defendants have not argued that it does.

### VII.     MUNICIPAL LIABILITY CLAIM AGAINST MSAD 51.

At Pages 9-10 of their Motion, the Defendants argue:

> "... a §1983 action only lies against a municipal entity where an official policy or custom causes the constitutional violation. [Citation omitted.] To show a causal link, plaintiff must establish one of the four conditions: 1) that an officially adopted policy violates the constitution [citation omitted]; 2) that a "final policymaker" has made a decision which is attributable to the municipality due to his or her role [citation omitted]"..."

In this case the Plaintiffs allege that Defendant Porter, in his official capacity as Superintendent of Schools in MSAD 51, has adopted a policy and/or made a decision - not expressly required by §6355 - to deny all requests for religious exemptions under the Free Exercise Clause of the Constitution. Needless to say, policies and decisions made for the school district by the Superintendent are attributable to the municipality due to his role. See: *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

At pages 9-10 of their Motion, the Defendants argue that MSAD 51 cannot be liable under §1983 because Superintendent Porter was only enforcing "clearly-stated provisions of Maine law." However, as stated previously, Maine law - and in particular, §6355 - does not clearly state that school superintendents and principals have to deny requests for religious exemptions which are required by the First and Fourteenth Amendments. This is a mis-interpretation and mis-application of the law.

Dated at Portland, Maine this 12th day of February, 2023.

By:     /s/   Stephen C. Whiting
Stephen C. Whiting, Bar No. 559
Attorney for the Plaintiffs

The Whiting Law Firm, P.A. 75 Pearl Street, Suite 207, Portland, Maine 04101  (207) 780-0681

## CERTIFICATE OF SERVICE

Plaintiffs, by and through their undersigned legal counsel, hereby certify that on this date this objection was filed in the Court's ECF system, and that the ECF system will be sending a copy to all of the Defendants and/or their counsel of record.

Respectfully submitted,

Dated: February 12, 2023        __/s/ Stephen C. Whiting____
Stephen C. Whiting, Bar No. 559
*Counsel to Plaintiffs*
The Whiting Law Firm
75 Pearl Street, Suite 207
Portland, ME  04101
(207) 780-0681
mail@whitinglawfirm.com