**UNITED STATES DISTRICT COURT
DISTRICT OF MAINE**

|  |  |
|---|---|
| GREGORY FOX and RITA FOX, individually and as parents to C.F., <br><br> Plaintiffs, <br><br> v. <br><br> PENDER MAKIN, MAINE SCHOOL ADMINISTRATIVE DISTRICT 51, JEFFREY PORTER, SALLY LOUGHLIN, and COREY MUNSEY, <br><br> Defendants. | Civil Action No. 2:22-cv-00251-GZS |

**COMMISSIONER MAKIN'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF HER MOTION TO DISMISS**

Defendant Pender Makin, Commissioner of the Maine Department of Education, (Commissioner), submits this reply memorandum in support of her Motion to Dismiss the Foxes' Amended Complaint, ECF No. 50.

The Foxes agree that the official capacity damage claims against the Commissioner may be dismissed.  ECF No. 54 at 2.  This memorandum addresses the Foxes' remaining claims.

**ARGUMENT**

**I.     Plaintiffs' Free Exercise claim fails under Rule 12(b)(6).**

The Free Exercise Clause does not prevent a State from enacting neutral laws of general applicability, even when those laws infringe on religious practices.  *See Emp't Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990).  Such laws need only be rationally related to a legitimate state interest.  *Id.*  The Foxes argue that they have alleged a plausible violation of the Free Exercise Clause of the First Amendment, but their arguments fall short.

Neutrality.  The Foxes do not claim "that §6355 is not neutral towards religion, or that the

1

removal of the religious exemption from §6355 was not neutral." ECF No. 54 at 7. Instead, they claim the Commissioner's alleged policy of "denying exemptions to those with sincere religious objections" and "the way that she [is] applying §6355 in light of that policy, is not neutral." *Id.*

Assuming for the purposes of this motion that such a policy exists—which it does not— then that policy is the enforcement of the statute as written. The Legislature amended section 6355 and repealed all nonmedical exemptions to the State's mandatory vaccination laws for school children effective September 1, 2021. In other words, although the Foxes couch their arguments as attacks on a policy, they are really challenging section 6355. The Foxes attempt to draw some distinction between an alleged policy of not allowing religious exemptions and a statute that does not allow religious exemptions, but they have not alleged any facts showing that the alleged policy is out of step with the existing statute. For example, the Amended Complaint does not allege that the Commissioner's policy permits students with political or philosophical objections to vaccination, but who do not qualify for a statutory exemption, to attend schools. Amend. Compl. ¶¶ 30, 31.1, 32.

Those are the types of analyses the Court must conduct in its neutrality analysis. The Commissioner has already shown that section 6355 is facially neutral and that it does single out religious objectors for harsher treatment.[1] ECF No. 50 at 13-15. The Foxes' Amended Complaint fails to plausibly allege otherwise or address the neutrality analysis of *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) (examining text of ordinance and circumstances surrounding its adoption in neutrality analysis). The Court should conclude that section 6355 is neutral towards religion.

---

[1] The Foxes argue that section 6355 is not neutral because it is "underinclusive," but under-inclusiveness is part of the analysis for general applicability and is addressed in this memo as such. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 543-46 (1993).

General Applicability.   Primarily, the Foxes argue that section 6355 is not generally applicable.   The Commissioner has already shown why the medical exemption and IEP sunset provision do not undermine the State's interests and why they are not comparable to religious exemptions,[2] ECF No. 50 at 16-19, and why Maine's school vaccination requirements are not substantially underinclusive because they do not apply to non-students, *id.* at 1-2, 19.

The Foxes, at length, argue that this Court must evaluate section 6355 based on comparative assessments of risk.   ECF 54 *passim*; Amend. Compl. ¶ 18.1 ("Each of these three exemptions pose a risk that is comparable to the risk of unvaccinated religious objectors attending school.").   But, as the Commissioner has already shown, this is forcing the facts of *Tandon v. Newsom*, 141 S. Ct. 1294 (2021) (per curiam) and *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) (per curiam).   ECF 50 at 16-19.

In both cases—and contrary to the Foxes' arguments, *see* ECF No. 54 at 15—the States made assessments of the risks various activities posed.   For example, California determined that private in-home gatherings, including religious gatherings, of more than three familial groups posed greater risk of transmission of COVID-19 than interactions in small businesses, such as salons and restaurants, which were subject to no such restriction.   Brief of Appellees *passim*, *Tandon v. Newsom*, 992 F.3d 916 (9th Cir. 2021), 2021 WL 1499787.   California explained: "The State's COVID-19 restrictions distinguish between activities (and the locations of those activities) based on their attendant risks."   *Id.* at 23.   Likewise, New York placed restrictions on houses of worship, but not on businesses it deemed essential, based on the risks those two activities posed.

---

[2]  The Foxes claim that the State's asserted interests are "a moving target," ECF No. 54 at 8-9, but their argument is belied by the record. *Compare* ECF No. 20 at 2-3, 16, 19, 20-21 (identifying State's interests as reversing the trajectory of falling vaccination rates, preventing communicable, preventable diseases from spreading in schools, and protecting children and others who unable to be vaccinated for medical reasons), *with* ECF No. 50 at 3-4, 17, 18, 19, 20 (same). Moreover, the State's interests are those articulated by the Maine Legislature in its consideration of the law that eliminated nonmedical exemptions, *see* ECF Nos. 49-2 to 49-29, not the Attorney General in this litigation.

New York explained: "'essential businesses' are also unlike religious services, as they generally do not involve large groups of people arriving and departing at the same time and intermingling while jointly participating in the same event.  Further, while social distancing can be maintained within business offices, it is less practical when individuals engage in joint prayer, singing, and chanting."  Defendants' Memorandum of Law in Opposition to Motion for Preliminary Injunction at 18-19, *Roman Catholic Diocese of Brooklyn v. Cuomo*, 493 F.Supp.3d 168 (E.D.N.Y. 2020), 2020 WL 8618139.[3]

As shown, Maine has made no such comparisons of risk.  ECF No. 50 at 16-19.  In eliminating nonmedical exemptions to school vaccination requirements, the Maine Legislature sought to reverse the trajectory of falling vaccination rates amongst schoolchildren in order to prevent communicable, preventable diseases from taking root in schools and to ensure that all students medically unable to be vaccinated could be protected by the immunity of his or her classmates.  ECF Nos. 49-2 to 49-20.  The Foxes fail to address Maine's actual, asserted interest in section 6355 or, at a minimum, fail to adequately contest the State's asserted interests.

The Foxes challenge the 90-day grace period, arguing it undermines the State's interests. ECF No. 54 at 10.  That provision allows a student up to 90 days to come into compliance with the required immunizations, provided that the parent (or student over 18) provides the school with written assurance that the student will be vaccinated within that time frame.  *See* 20-A M.R.S.A. § 6355(1).  The provision thus allows a one-time, temporary grace period during which that student may attend school.  *See* 05-071 Me. Code R. ch. 126, § 3(A)(1) (2021); 10-144 Me. Code. R. ch. 261, § 3(A)(1) (2021) [hereinafter "Immunization Rule"].  During these 90 days, the student must

---

[3] Likewise, the executive order challenged in *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020), prohibited mass gatherings, including religious services, but did not impose the same restrictions on "locations providing services that literally [are] necessary to sustain life, and necessary to maintain public health and safety." Brief of Appellants at 25-26, *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020), *dismissed as moot* 977 F.3d 561 (6th Cir. 2020), 2020 WL 4551934.

actually get vaccinated.  If the student does not receive all the required vaccinations in that time frame, they must be excluded from school until they are completed.  Immunization Rule § 3(A)(1).  So it is difficult to see why the Foxes "fail to understand how giving a 90 day grace period to <u>get</u> <u>vaccinated</u>" will "increase the overall vaccination rate of schoolchildren."  ECF No. 54 at 10 (emphasis added).

The 90-day grace period is a temporary delay in enforcement, and it is no different than what occurred in the healthcare worker context, when the State allowed time for healthcare facilities to ensure their workers were vaccinated against COVID-19.  *See Does 1-6 v. Mills*, 566 F. Supp. 3d 34, 38–39 (D. Me.), *aff'd*, 16 F.4th 20 (1st Cir. 2021), *cert. denied sub nom. Does 1-3 v. Mills*, 142 S. Ct. 1112 (2022) (noting original date to receive final dose of a COVID-19 vaccine extended from September 17, 2021, to October 15, 2021).  A temporary delay in enforcement, whether it operates across the state or at an individual level, is constitutionally valid.  Other states have adopted grace periods for compliance with mandatory vaccination laws, and those provisions have been not problematic.[4]  *See Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1179 (9th Cir. 2021) (reasoning 30-day grace period to one vaccination requirement did not defeat general applicability), *reconsideration en banc denied*, 22 F.4th 1099 (9th Cir. 2022); *F.F. v. New York*, 143 N.Y.S.3d 734, 740 (N.Y. App. Div. 2021) (concluding 14-day grace period before statue repealing religious exemptions became effective was reasonable because it allowed parents three months to come into compliance with vaccination requirements).

The Foxes also challenge the medical exemption, but concede that "the State should not require children to get a vaccination that could harm them."  ECF No. 54 at 11.  Instead, they argue

---

[4] Here too, the elimination of nonmedical exemptions did not become effective until more than two years after the statute was amended by the Maine Legislature.  The Foxes do not challenge this two-year grace period, during which C.F. was able to attend kindergarten.  Amend. Compl. ¶ 23.

that the medical exemption reflects a value judgment favoring secular interests over religious interests.  ECF No. 54 at 11-12.  But permitting a medical exemption, but a not a philosophical or religious exemption, to a required vaccination is no more a value judgment than the medical exception to Oregon's statute criminalizing possession of certain drugs—which the Supreme Court upheld under rational basis review in a Free Exercise challenge.  *Smith*, 494 U.S. at 874.

The Foxes next challenge the IEP sunset provision, calming it is underinclusive and not generally applicable, because it permits certain students with an IEP to continue to claim a philosophical or religious exemption.  ECF No. 54 at 12-13.  The Foxes fail to acknowledge that over time, less and less students will benefit from this provision.  Further, Connecticut's school vaccination law, which includes a similar sunset provision, was determined to be a neutral law of general applicability.  *See We the Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 579 F. Supp. 3d 290, 306-07 (D. Conn. 2022) (dismissing Free Exercise challenge to mandatory school vaccination law with medical exemption and religious exemption sunset pursuant to Rule 12(b)(6)).  The Connecticut sunset provision applies to <u>all</u> students who had previously claimed a religious exemption, not just those with an IEP, but the vaccination law was still determined to be generally applicable in a Free Exercise analysis.  This Court should conclude the same.  And unlike the circumstances in *Lukumi*, wherein the ordinance allowed nearly all animal killings except for the ritual sacrifice engaged in by adherents of the Santeria faith, 507 U.S. at 543-46, the IEP exemption was used by 0.3% of students in kindergarten, seventh grade, and twelfth grade in 2021, *see* ECF No. 49-33 at 7.  Under *Lukumi*, the IEP provision is not substantially underinclusive.

Last, the Foxes claim that section 6355 is underinclusive and not generally applicable because it does not apply to all people who enter a school.  ECF No. 54 at 13-15.  That argument was soundly rejected by the Second Circuit in *Kane v. DeBlasio*, 19 F.4th 152 (2d Cir. 2021).  There, several public-school teachers challenged a New York City order that required them to be

vaccinated against COVID-19, arguing, in part, that the order was not generally applicable because it did not apply to over a million students and other persons, like parents, who entered schools. Brief for Appellant at 12-13, *Kane v. DeBlasio*, 19 F.4th 152 (2d Cir. 2021), 2021 WL 5506772. The Second Circuit correctly rebuffed their argument: "But neither the Supreme Court, our court, nor any other court of which we are aware has ever hinted that a law must apply to all people, everywhere, at all times, to be 'generally applicable.' [Instead], a law can be generally applicable when, as here, it applies to an entire class of people." *Kane*, 19 F.4th at 166.

The same holds true here. Maine's mandatory school vaccination laws are designed and intended to protect <u>children</u> against childhood diseases, which interests are not harmed by not requiring non-students to be vaccinated. *See Lowe v. Mills*, 1:21-cv-00242-JDL, 2022 WL 3542187 at *14 (D. Me. Aug. 18, 2022) (dismissing Free Exercise claim challenging vaccine mandate that applied to employees of certain healthcare facilities, but not patients or visitors). The vaccination status of adults with respect to childhood diseases has no impact on the policy the State of Maine is implementing.

Finally, the Commissioner has already shown how Maine's vaccination laws, including the exemptions, are narrowly tailored to achieve its compelling state interest. ECF No. 50 at 20-21. The Foxes do not contest seriously that the State's goal of preventing the spread of communicable diseases in schools is a compelling interest.[5] The State's elimination of nonmedical exemptions[6] to its school vaccination requirements is the "least restrictive means among available, effective alternatives." *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004). Notably, one option before the

---

[5] The Foxes rely on *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021), to claim the State must have a compelling interest in not providing a religious exemption. ECF No. 54 at 16-17. But *Fulton* did not reformulate strict scrutiny review. It restated the familiar test: a compelling governmental interest that is narrowly tailored to achieve that goal.
[6] The IEP sunset provision operates over a longer period of time, but still represents an elimination of nonmedical exemptions. Further, by sunsetting the elimination of nonmedical exemptions of students with existing IEPs, the State chose a less restrictive option for students with individualized educational needs, so that those students could continue with the education plan that been agreed to by their parents and schools.

Legislature was to eliminate only philosophical, but not religious exemptions. Ultimately, that option was rejected *see* ECF No. 49-24 at 12; ECF No. 49-25 at 3; ECF No. 49-26 at 9, and the Foxes do not present any other options that they contend would be an effective alternative to achieving the State's goals. *Cf.* ECF No. 49-6 (noting ineffectiveness of parent-provider education and eliminating only philosophical objections); ECF No. 49-24 at 10 (noting example of state that eliminated philosophical, but not religious, exemption to school vaccination requirements subsequently experienced 400% increase in use of religious exemption).

**II.      Plaintiffs' Equal Protection claim fails under Rule 12(b)(6).**

"Unless state action burdens a suspect class or impinges upon a fundamental right," an equal protection claim is reviewed "for a rational relationship between the disparity of treatment and a legitimate government purpose." *Toledo v. Sanchez*, 454 F.3d 24, 33 (1st Cir. 2006). The Foxes seem to suggest that the religious discrimination analysis under the Equal Protection Clause is somehow different than the First Amendment Free Exercise Clause. ECF No. 54 at 17-18. Both the Supreme Court and the First Circuit have rejected this approach; there is no "separate and distinct framework for analyzing claims of religious discrimination under the Equal Protection Clause." *Eulitt ex rel. Eulitt v. Me. Dep't of Educ.*, 386 F.3d 344, 354 (1st Cir. 2004)) (citing *Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004)). The Commissioner has already demonstrated 1) that this case does not involve a classification that requires strict scrutiny review and 2) how the State's school vaccination laws are rationally related to its legitimate state interests. ECF No. 50 at 21-24.

**III.     The Commissioner is entitled to qualified immunity.**

The Foxes misapprehend what constitutes "clearly established" authority for purposes of qualified immunity. ECF No. 54 at 19-20. The Supreme Court's "longstanding principle" is that "clearly established law should not be defined at a high level of generality." *White v. Pauly*, 137

S. Ct. 548, 552 (2017) (cleaned up).  Instead, "the clearly established law must be 'particularized'

to the facts of the case," *id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)), and must

give "fair warning" to state officials, *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

      The Commissioner cited numerous cases in which mandatory school vaccination laws were

upheld to a variety of constitutional challenges, including Free Exercise challenges to school

vaccination laws without religious exemptions, in support of the Commissioner's entitlement to

qualified immunity.  ECF No. 50 at 11-12, 14.  In response, the Foxes failed to cite a single case

with similar facts to the present case to support their position.

      Instead, they rely on *Smith*, 494 U.S. 872, which addressed a criminal drug possession

statute, and *Lukumi*, 508 U.S. 520, which addressed a zoning ordinance.  Neither case is

"particularized" to mandatory school vaccination laws nor constitutes precedent sufficient to give

the Commissioner fair warning that any of her conduct might be unlawful.[7]  *White*, 137 S. Ct. at

552.  Moreover, *Smith* supports the Commissioner's position.  In *Smith*, the criminal law at issue

prohibited possession of a controlled substance and included a categorical medical exemption for

drugs prescribed by a physician, but not a religious exemption.  494 U.S. at 876-82.  As shown,

the Commissioner is entitled to qualified immunity and all damages claims should be dismissed.

## CONCLUSION

      For the reasons set forth above, and in their memorandum of law in support of their motion

to dismiss, ECF No. 50, the Commissioner requests that the Foxes' Amended Complaint be

dismissed.

---

[7] The other Supreme Court cases cited in the Foxes' opposition likewise do not address mandatory school vaccination laws.  The one school vaccination case cited by the Foxes, *Dahl v. Board of Trustees of Western Michigan University*, 15 F.4th 728 (6th Cir. 2021), is not particularized to the facts here.  In *Dahl*, the Sixth Circuit invalidated a vaccine mandate that it determined was a system of individualized exemptions that vested university officials with discretion to refuse an exemption—a claim the Foxes do not make here.  *See id.* at 733-34.

DATED:  February 27, 2023        Respectfully submitted,

AARON M. FREY
Attorney General

/s/ Kimberly L. Patwardhan
KIMBERLY L. PATWARDHAN
Assistant Attorney General
kimberly.patwardhan@maine.gov

SARAH A. FORSTER
Assistant Attorney General
sarah.forster@maine.gov

Office of the Attorney General
6 State House Station
Augusta ME  04333-0006
Tel.  (207) 626-8800
Fax (207) 287-3145

Attorneys for Commissioner Makin

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2023, I electronically filed this document and any attachments with the Clerk of the Court using the CM/ECF system and that the same will be sent electronically to registered participants as identified in the CM/ECF electronic filing system for this matter.

/s/ Kimberly L. Patwardhan
KIMBERLY L. PATWARDHAN
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta ME  04333-0006
Tel.  (207) 626-8570
Fax (207) 287-3145
kimberly.patwardhan@maine.gov

11