UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| GREGORY FOX, and<br>RITA FOX<br><br>Individually and on behalf of C.F.,<br><br>                    Plaintiffs,<br><br>v.<br><br>MAINE DEPARTMENT OF EDUCATION,<br>COMMISSIONER PENDER MAKIN,<br>MAINE SCHOOL ADMINISTRATIVE<br>DISTRICT 51,<br>SUPERINTENDENT JEFFREY PORTER,<br>PRINCIPAL SALLY LOUGHLIN, and<br>VICE PRINCIPAL COREY MUNSEY,<br><br>Individually and in Their Official Capacities,<br><br>                    Defendants. | No. 2:22-cv-00251-GZS |

**SCHOOL DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

Defendants Maine School Administrative District 51 ("MSAD 51"), Jeffrey Porter, Sally Loughlin and Cory Munsey (collectively, the "School Defendants"), submit this reply memorandum in support of their renewed Motion to Dismiss, ECF No. 51, and in response to the Amended Objection filed by Plaintiffs, ECF No. 55, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The School Defendants also incorporate by reference subsections I and II of the reply memorandum of law filed on behalf of Maine Department of Education and Commissioner Pender Makin (the "Commissioner"), ECF No. 60, pursuant to Fed. R. Civ. P. 10(c).

1

**ARGUMENT**

**Dismissal Of Unobjected-to Claims.** Plaintiffs agree to the dismissal of any damage claims against the School Defendants in their official capacities, as well as the dismissal of any equitable claims against the School Defendants in their individual capacities. (Am. Obj. at 3). Accordingly, any such claims should be dismissed. Moreover, while Plaintiffs do not say so, they *sub silentio* concede that they do not have a claim for equitable relief against now-retired Principal Sally Loughlin in her official capacity either, because Ms. Loughlin has since retired. (Am. Compl. ECF No. 45, ¶ 14). "Consequently, it is proper for the Plaintiffs to seek injunctive relief from School Defendants Porter, Munsey, and MSAD 51….But not from Defendant Loughlin, since she has retired." (Am. Obj. at 4 & n.2). Accordingly, Plaintiffs' only remaining claim against Ms. Loughlin is one for damages in her personal capacity, for which, as outlined below, she has qualified immunity.

**Plaintiffs' Official Capacity Claims For Equitable Relief Should Be Dismissed.** Plaintiffs' theory of injunctive relief against the School Defendants falls short of the mark. Plaintiffs request that the Court grant injunctive relief enjoining the School Defendants "from requiring C.F. to get the required vaccinations and allowing him to enroll at the Mabel I. Wilson Elementary School." (Am. Obj. at 4). As Plaintiffs have conceded, the Commissioner of Education is "ultimately responsible for implementing and enforcing Maine laws concerning education in the State of Maine" and "has the statutory authority and duty to make sure that school superintendents – such as Defendant Porter – enforce § 6355 and enforce it correctly." (Am. Compl., ¶¶ 11 & 21.2). Inasmuch as Plaintiffs concede that § 6355 contains no religious exemption, (*id.*, ¶ 19), and allege that the School Defendants have been "informed, directed, *and ordered*" by the Commissioner of Education that children can no longer get religious exemptions (*id.*, ¶ 21) (emphasis added), under

Plaintiffs' own theory of the case there is no option for school administrators to permit a child to enroll with a religious exemption and no more need to enjoin these various administrators responsible for executing state policy than there would be to enjoin the registrar handling the paperwork. Put differently, even if the Court determines injunctive relief is warranted in this case, the School Defendants are not the proper parties to be enjoined.

**The School Defendants Are Entitled To Qualified Immunity.** In challenging Porter, Loughlin, and Munsey's entitlement to qualified immunity, Plaintiffs argue 20-A M.R.S. § 6355 repeals their "clearly established" Constitutional rights. (Am. Obj. at 15). Plaintiffs can only reach such a conclusion if they flatly ignore the long history of mandatory immunization laws which have consistently been upheld as constitutional, even absent religious exemptions. (ECF No. 51 at 2). As is plain from this precedent, enforcement of a generally applicable school immunization law does not violate Plaintiffs' constitutional rights at all. Even Plaintiffs concede that their so-called "well established principle" has "not yet been applied in a school vaccination case," though argue that that is somehow "irrelevant" to whether several school administrators "must have known" about it. (Am. Obj. at 16).

Even if the Court ultimately determines otherwise in this case, the long history of case law upholding immunization laws such as Maine's defeats any claim by Plaintiffs that they have a "clearly established" right to an exception from the law, and therefore Porter, Loughlin, and Munsey are entitled to qualified immunity, which protects state officials from getting caught in the crossfire in disputes where the "guidance concerning the right is lacking or unclear." *Lopera v. Town of Coventry*, 652 F. Supp. 2d 203, 213 (D. R.I. 2009).

**MSAD 51 Is Not Subject To Municipal Liability.** In their Objection, Plaintiffs assert that Superintendent Porter has "adopted a policy and/or made a decision" to deny religious exemptions

to unvaccinated schoolchildren. (Am. Obj. at 18). However, as noted earlier, Plaintiffs' Complaint is rife with allegations that the policy was dictated by the State and enforced by the Maine Department of Education. (Am. Compl., ¶¶ 19-21.4). While Plaintiffs take issue with this policy and argue that it is a "mis-interpretation and mis-application" of applicable law (Am. Obj. at 18), both the statute and the regulations promulgated by the Maine Department of Education make clear that no religious exemption is permissible. *See* 20-A M.R.S.A. § 6355 (3) (Philosophical or religious exemption eliminated); 05-071 Me. Code R. ch. 126, § 2(A), § 3 (2021); 10-144 Me. Code. R. ch. 261, § 3 (2021) (providing that "no superintendent may permit any student to be enrolled in or to attend school" without a certificate of immunity, unless one of a limited number of circumstances—not including a request for religious exemption—applies). Ultimately, this "policy" of good faith compliance with state law cannot give rise to municipal liability under § 1983. *See Yeo v. Town of Lexington*, 131 F.3d 241, 257 (1st Cir. 1997) (Stahl, J., concurring).

Moreover, Plaintiffs' reliance on *Pembaur v. City of Cincinnati* is misplaced. The *Pembaur* Court held "municipal liability under §1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." 475 U.S. 469, 483 (1986). Here, MSAD 51 did not choose one course of action from among various policy alternatives as there were *no* such alternatives—the School Defendants simply followed state law.

**The Statute Is Constitutional Under Rational Basis Review**. While the Plaintiffs may have amended their Complaint to include numerous additional factual allegations, they have not and cannot surmount the conclusion that the statute in question is constitutional under rational basis review, because the law is neutral and generally applicable, and is rationally related to a legitimate government interest.

Plaintiffs concede that laws and policies that only incidentally burden religious practices are not subject to strict scrutiny so long as they are neutral and generally applicable. (Am. Obj. at 4). They also concede that Maine can enact a vaccine mandate without an express religious exemption. (*Id.* at 4 n.3). They insist, however, that this vaccine mandate is neither neutral nor generally applicable, and that strict scrutiny should apply. Applicable historical precedent begs to differ. There is a well-worn path to follow here "from the consistent use of rational basis review to assess mandatory vaccination measures." *Klassen v. Trustees of Indiana University* (*Klassen I)*, 549 F. Supp. 3d 836, 869-70 (N.D. Ind. July 18, 2021), *motion for stay pending appeal denied*, 7 F.4th 592 (7th Cir. 2021), *vacated as moot*, 24 F. 4th 638 (2022) (collecting cases demonstrating the "consistent use of rational basis review to assess mandatory vaccination measures"); *see also Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 St. Ct. 63, 70 (2020) (Gorsuch, J., concurring (acknowledging that *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), the seminal Supreme Court case addressing mandatory immunization laws, "essentially applied rational basis review" to a vaccination requirement)).

Despite a century's worth of precedent to the contrary, Plaintiffs dispute that the law is generally applicable, pointing to the existence of three limited exceptions contained in the law—a one-time 90-day grace period, a medical exemption, and a sunset provision for students covered by an individualized education plan as of September 1, 2021, who had elected a philosophical or religious exemptions prior to that date. *See* §§ 6355(1), (2), and (4). However, each of the exemptions to § 6355 furthers the purpose of the statute, which is "to reverse the trajectory of falling vaccination rates; prevent communicable, preventable diseases from spreading in schools and communities; and protect children and others who are unable to be vaccinated for medical reasons." (Commissioner's Motion to Dismiss at 3 (ECF No. 50) (citing Exhibits 2-12)).

First, the 90-day written assurance period allows families a reasonable period of time to get their child vaccinated. As acknowledged in *F.F. v. New York* and *Doe v. San Diego Unified School District*, grace periods for families to come into compliance with school vaccine requirements are consistent with the overall intent and purpose of school vaccination laws. 143 N.Y.S.3d 734, 740 (N.Y. App. Div. 2021), *cert. denied*, 142 S. Ct. 2738 (2022); 19 F.4th 1173, 1179 (9th Cir. 2021), *reconsideration en banc denied*, 22 F.4th 1099 (9th Cir. 2022). *See also Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1179 (9th Cir. 2021), *reconsideration en banc denied*, 22 F.4th 1099 (9th Cir. 2022) ("And, in line with the above analysis, the conditional enrollment period is both of temporary duration and of limited scope, and so does not undermine SDUSD's asserted interests in student health and safety the way a religious exemption would."); *Whitlow v. California*, 203 F. Supp. 3d 1079, 1088 (S.D. Cal. 2016) ("The 'checkpoints' provision therefore provides parents with an orderly opportunity to comply with the law and softens the impact of SB 277 through graduated application. That, of course, is rational."). Indeed, some courts have *urged* consideration of a grace period for vaccination requirements to take effect precisely in order to provide affected individuals with every opportunity to come into compliance. *See, e.g., Oklahoma v. Biden*, 577 F. Supp. 3d 1245, 1265 (W.D. Okla. 2021) (In enforcing military vaccine mandate, "The court strongly urge[d] the defendants to give every consideration to providing a brief grace period—to facilitate prompt compliance with the vaccination mandate—before directly or indirectly taking action which would end the military careers of any Oklahoma Guard members.").

Second, the medical exemption allows a student to attend school upon providing "a written statement from a licensed physician, nurse practitioner or physician assistant that, in the licensed physician's, nurse practitioner's or physician assistant's professional judgment, immunization

against one or more of the diseases may be medically inadvisable." § 6355(2). As described in the School Defendants' Motion to Dismiss, the statute's medical exemption protects children who are unable to be vaccinated for medical reasons and therefore furthers the overall purpose of the statute. (ECF No. 51 at 14 & 17). Indeed, protecting these medically-vulnerable students is one of the *express* goals of the statute.

Last, the IEP sunset provision should not lead this Court to conclude that the statute is not generally applicable. Each year, the proportion of unvaccinated students in Maine schools will decline, reducing the likelihood of a preventable outbreak among schoolchildren. Such sunset provision is therefore both "of temporary duration and of limited scope," *Doe,* 19 F.4th at 1179, and therefore, contrary to Plaintiffs' comments, does not present an "identical risk" (Am. Obj. at 8). Put differently, it does not "undermine [Maine's] asserted interests in student health and safety the way a religious exemption would." *Doe,* 19 F.4th at 1179. *See also Whitlow*, 203 F. Supp. 3d at 1085-86 (dismissing a Free Exercise challenge to a vaccine mandate that provided an exemption for children with an IEP). For all of these reasons, the statute is generally applicable and subject to rational basis review.

Plaintiffs' attempt to distinguish this case from *We the Patriots USA, Inc v. Conn. Off. Of Early Childhood Dev*., 579 F. Supp. 3d 290 (D. Conn. 2022), is unsuccessful. Applying rational basis review, the District of Connecticut *dismissed* We the Patriots USA's claims and *upheld* the Connecticut statute mandating vaccinations for schoolchildren, even *after* the Connecticut legislature eliminated religious exemptions. *Id*. In determining that the Connecticut statute was generally applicable, the District of Connecticut distinguished *Tandon v. Newsom*, 141 S. Ct. 1294 (2021), on which Plaintiffs rely here. "In *Tandon*, the Supreme Court concluded that the petitioners were likely to succeed on their Free Exercise challenge to California's restrictions on the number

of households that could gather for in-home religious worship. California did not impose similar restrictions on secular activities." *Id*. at 308 (internal citations omitted). The District of Connecticut distinguished *Tandon*, holding that non-medical religious exemptions and medical exemptions were not comparable in part because the risk posed by the two sets of exemptions was not comparable. In Connecticut, the number of students electing a religious exemption was more than eleven times greater than the number of students with medical exemptions, presenting a greater risk to the efficacy of any vaccination strategy than the much smaller medical exemption. 579 F. Supp. 3d at 308.

Plaintiffs claim that Maine's statistics "result in the opposite conclusion," (Am. Obj. at 13), but their presentation of the school immunization data cited by the Commissioner in her Motion to Dismiss is misleading.[1] As the data shows, in the 2018/2019 school year, statewide, 6.2%, 4.7%, and 5.1% of kindergarten, seventh, and twelfth grade students, respectively, were claiming exemptions from Maine's mandatory school vaccinations, of which all but 0.6%, 0.1% and 0.1%, respectively, were for non-medical religious or philosophical exemptions. (ECF No. 49–32). By the 2021/2022 school year, after the elimination of the religious and philosophical belief exemption, the *total* percentage of students claiming an exemption from the immunization requirement had been reduced to only 1.8%, 1.3%, and 1.2% of students statewide in kindergarten, seventh, and twelfth grade, respectively. (ECF No. 49–33).

---

[1] Plaintiffs argue that the statistics show that before the elimination of the religious and philosophical belief exemption, 0.6% of kindergarteners had medical exemptions and only 0.4% had religious exemptions. (Am. Obj. at 13). Plaintiffs omit the fact that another 5.2% claimed exemptions due to their philosophical beliefs, meaning that 5.6% of kindergartners were electing a non-medical exemption. (ECF No. 49–32). Prior to the amendment of § 6355, the "religious or philosophical exemption" was a single exemption contained in state law, previously codified as 20-A M.R.S. § 6355(3). The Maine Legislature's determination to eliminate non-medical exemptions is rationally related to the goal of protecting children's public health by increasing immunization rates, and the data demonstrates that this action has had the intended effect.

This Court should reach the same conclusion as the District of Connecticut in *We the Patriots*. Medical and religious exemptions are not comparable "when considering the 'interest that justified the regulation at issue'" because "medical exemptions further the state's interest in health and safety while religious exemptions undercut that same interest." *Id*. at 307-8 (citing *Tandon*, 141 S. Ct. at 1296) (recognizing that "an overarching religious exemption … jeopardizes the community immunity" and therefore does not further the purpose of the statute). Therefore 20-A M.R.S. § 6355 is subject to, and survives, rational basis review.

Plaintiffs also suggest the statute is underinclusive because it does not extend to other individuals in school buildings, such as teachers, school staff, volunteers, and visitors. (Am. Obj. at 10). However, "neither the Supreme Court … nor any other Court of which we are aware has ever hinted that a law must apply to all people, everywhere, at all times, to be 'generally applicable.'" *Kane v. DeBlasio*, 19 F.4th 152, 166 (2d Cir. 2021) (rejecting Free Exercise challenge to vaccine mandate for New York City employees). Indeed, the Connecticut statute upheld in *We the Patriots*, applied only to schoolchildren, and not to school staff or visitors.  Conn. Gen. Stat. §10-204a.  Plaintiffs counter by arguing that a law must be applicable "to all people who pose a comparable risk" to be generally applicable. (Am. Obj. at 10)). However, there is an obvious distinction to be made between students and visitors, volunteers, and even school staff—none of whom come into "prolonged daily contact" with large groups of students. *Kane v. DeBlasio*, 19 F.4th at 166. *See also Lowe v. Mills*, 2022 WL3542187, *14 (D. Me. Aug. 18, 2022) (dismissing Free Exercise claim challenging vaccine mandate that applied to employees of certain healthcare facilities, but not patients or visitors). Moreover, Maine's interests in its school vaccination laws stem from its concerns with the "large number of Maine children entering school without benefit of basic immunization against childhood diseases." (ECF No. 49-34 at 3, Statement of Fact). *See*

9

*also* Legislative Record (ECF No. 49-35 at 2) ("…now we find, not only in the State of Maine, but across the country, that there have been a number of outbreaks in various childhood communicable diseases"). Maine's interest in protecting *children* against *childhood* diseases are not harmed by not requiring non-children to be vaccinated.

Finally, even if the legislation may be underinclusive with regard to its goal, that does not signify that a rational relationship is lacking. *See Harris v. Univ. of Massachusetts, Lowell*, 557 F. Supp. 3d 304, 313-14 (D. Mass. 2021), *appeal dismissed*, 43 F.4th 187 (1st Cir. 2022) (upholding vaccination requirement for students, but not faculty and staff) (citing *Baker v. City of Concord*, 916 F.2d 744, 755 (1st Cir. 1990)). While Plaintiffs may disagree as to the best way of protecting children against childhood diseases, the determination of the effectiveness of a vaccine requirement was "for the legislature, not the individual objectors." *Phillips v. City of New York*, 775 F.3d 538, 542 (2d Cir. 2015). *See also Jacobson v. Mass.*, 197 U.S. 11, 30 (1905) (explaining that courts should not determine which public health strategy "was likely to be the most effective for the protection of the public against disease").

Maine has a legitimate interest in protecting the public health of its schoolchildren, an interest jeopardized if significant numbers of children are permitted to opt-out of a generally-applicable requirement. The elimination of a general exemption for religious and philosophical objections, which has had the effect of cutting by approximately two thirds the number of vaccination exemptions, is rationally related to this interest.

**Plaintiffs' Equal Protection Claim Also Fails.** As discussed above and in the underlying motion, Plaintiffs' fundamental constitutional rights are not implicated in this case. Because Plaintiffs' Free Exercise claim fails under rational basis review, Count II also fails. *Lowe*, 2022 WL3542187 at *14.

10

## CONCLUSION

The School Defendants respectfully request that for the foregoing reasons, Plaintiffs' claims against the School Defendants be dismissed with prejudice.

Respectfully submitted,

Dated: February 27, 2023

/s/ Nathaniel A. Bessey
Nathaniel A. Bessey
Stacy O. Stitham
Hannah L. Wurgaft
BRANN & ISAACSON
113 Lisbon Street; P.O. Box 3070
Lewiston, ME  04243-3070
Tel. (207) 786-3566
nbessey@brannlaw.com
sstitham@brannlaw.com
hwurgaft@brannlaw.com

*Attorneys for Defendants, Maine School Administrative District 51, Jeffrey Porter, Sally Loughlin, and Cory Munsey*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on February 27, 2023, I electronically filed the foregoing document using the CM/ECF system, which will send notification to counsel of record.

/s/ Hannah L. Wurgaft
Hannah L. Wurgaft
