UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| GREGORY FOX, et al., )<br>)<br>Plaintiffs )<br>)<br>v. )<br>)<br>PENDER MAKIN, et al., )<br>)<br>Defendants ) | 2:22-cv-00251-JAW |

**ORDER AND RECOMMENDED DECISION
ON MOTION TO AMEND COMPLAINT**

After Maine repealed a religious exemption regarding the state's vaccination requirement for children attending public schools, Plaintiffs' minor child was denied admission to a public elementary school. Plaintiffs subsequently filed suit against the school district, several employees of the district, and the Maine Commissioner of Education (the Commissioner). (Amended Complaint ¶¶ 10–15, 16–19, 22–29, ECF No. 45.)

In their original and amended complaints, Plaintiffs allege constitutional violations and assert that their action was "brought pursuant to 42 U.S.C. § 1983." (Complaint ¶ 1, ECF No. 1-1; Amended Complaint ¶ 1.) Following voluntary dismissal of certain claims and in response to two motions to dismiss, the Court determined that Plaintiffs had alleged plausible free exercise and equal protection claims for declaratory and injunctive relief against the Commissioner, the district superintendent (Defendant Porter), and the school's principal (Defendant Munsey), but the Court dismissed the claims for money damages

against the three officials and dismissed all claims against the district (MSAD #51). (Order on Motions to Dismiss, ECF No. 81.)

Plaintiffs seek leave to file a second amended complaint to: (1) change their request for relief regarding the placement of their minor child from the school to which the child was denied access to a school in the district that is appropriate for the child's grade level at the conclusion of the case; and (2) add a claim for equitable reimbursement of education costs Plaintiffs incurred for the child's education in a private school after the child was denied enrollment in public school. (Motion, ECF No. 90; Proposed Second Amended Complaint at 12–15, ECF No. 90-1.) Defendants do not oppose the motion as to the first request but object to Plaintiffs' attempt to assert an equitable claim for the reimbursement of education expenses. (Response, ECF No. 91.)

Following a review of the record and after consideration of the parties' arguments, I grant the motion as to the relevant school for the child's grade level and recommend the Court deny the motion to add a claim for equitable reimbursement.[1]

## STANDARD OF REVIEW

When a party seeks to amend a complaint more than 21 days after the filing of a responsive pleading, the other party's consent or leave of court is required to amend the complaint. Fed. R. Civ. P. 15(a)(2). In such a case, the court is to grant leave to amend "freely" when "justice so requires." *Id.*; *see also Foman v. Davis,* 371 U.S. 178, 182 (1962)

---

[1] While a motion to amend is often considered a pretrial non-dispositive motion and within a Magistrate Judge's authority to rule on directly, when the ruling would effectively dispose of a claim or defense, a recommended decision is appropriate. *Sargent v. Nordx*, No. 2:20-cv-00467-JAW, 2022 WL 17738711, at *4-5 (D. Me. Dec. 16, 2022).

("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'").

A "futile" amendment is one that "would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). In other words, "if the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend." *Boston & Me. Corp. v. Hampton,* 987 F.2d 855, 868 (1st Cir. 1993).

## DISCUSSION

### A.    The Relevant Public School

Plaintiffs seek to amend their complaint to ask the Court to allow Plaintiffs' minor child to attend whichever public school in the district is appropriate for the child at the time of judgment rather than directing the child to attend the school the child previously attended. The school listed in the operative pleading (Plaintiffs' first amended complaint) is evidently no longer the appropriate school for a student of the child's current age. Defendants do not oppose the request. Plaintiffs' request is reasonable and understandable.

### B.    Equitable Reimbursement

#### 1.    Effect of the Prior Order and the Legal or Equitable Characterization

Plaintiffs seek to add a claim for reimbursement of their expenses related to the enrollment of their child in private school. The Court previously dismissed Plaintiffs'

claims for money damages, which would have included their private school expenses. Plaintiffs nevertheless contend the Court's authority to order equitable relief includes the ability to order Defendants to pay Plaintiffs for some of the same expenses. According to Plaintiffs, equitable reimbursement of the funds Plaintiffs actually incurred is permissible provided the amount does not exceed the amount the school district and the state spends on each pupil to provide a free public education.

In support of their argument, Plaintiffs rely primarily on two Supreme Court cases, *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359 (1985), and *Bowen v. Massachusetts*, 487 U.S. 879 (1988). Defendants argue that the proposed amendment is an impermissible attempt to circumvent the effect of the Court's prior. Defendants contend the proposed amendment would be futile.

In *Burlington*, the Supreme Court held that the provision instructing courts to "grant such relief as the court determines is appropriate" within the predecessor statute to the Individuals with Disabilities Education Act (IDEA) "includes the power to order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed [Individual Education Plan (IEP) in the public school], is proper under the Act." *Burlington*, 471 U.S. at 370. The Supreme Court (Rehnquist, J.) reasoned that:

> . . . it seems clear beyond cavil that "appropriate" relief would include a prospective injunction directing the school officials to develop and implement at public expense an IEP placing the child in a private school. . .
>
> A final judicial decision on the merits of an IEP will in most instances come a year or more after the school term covered by that IEP has passed. In the meantime, the parents who disagree with the proposed IEP are faced with a

4

>  choice: go along with the IEP to the detriment of their child if it turns out to be inappropriate or pay for what they consider to be the appropriate placement. If they choose the latter course, which conscientious parents who have adequate means and who are reasonably confident of their assessment normally would, it would be an empty victory to have a court tell them several years later that they were right but that these expenditures could not in a proper case be reimbursed by the school officials. If that were the case, the child's right to a free appropriate public education, the parents' right to participate fully in developing a proper IEP, and all of the procedural safeguards would be less than complete. Because Congress undoubtedly did not intend this result, we are confident that by empowering the court to grant "appropriate" relief Congress meant to include retroactive reimbursement to parents as an available remedy in a proper case.

*Id.* at 370. The *Burlington* Court also noted that "the Town repeatedly characterizes reimbursement as 'damages,' but that simply is not the case" because "[r]eimbursement merely requires the Town to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP." *Id.* at 371.[2]

In *Bowen*, a state agency filed a lawsuit in a federal district court because the state agency claimed the federal government failed to make the proper payments for the operation of the state's Medicaid program. *Bowen*, 487 U.S. at 885–87.[3] The Supreme Court considered (1) whether the trial court had subject matter jurisdiction as an

---

[2] Courts have interpreted the remedies provisions within the IDEA as authorizing limited forms of compensatory equitable relief but not authorizing full tort-like claims for money damages. *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 124 (1st Cir. 2003).

[3] The transfers of federal funds to the states are often called "reimbursements," but as the Supreme Court explained:

> the stream of revenue is actually a series of huge quarterly advance payments that are based on the State's estimate of its anticipated future expenditures. The estimates are periodically adjusted to reflect actual experience. Overpayments may be withheld from future advances or, in the event of a dispute over a disallowance, may be retained by the State at its option pending resolution of the dispute.

*Id.* at 883–84 (footnotes omitted).

5

Administrative Procedures Act (APA) challenge to final agency action pursuant to 5 U.S.C. § 702, which allows only "[a]n action in a court of the United States seeking relief other than money damages," and (2) whether another provision, 5 U.S.C. § 704, required the state to bring the case in the Court of Claims because that court has jurisdiction to consider certain claims for money damages against the United States and § 704 limits judicial review under the APA to "final agency action for which there is no other adequate remedy in a court." *Id.* at 882–83, 892–893, 901–02. The *Bowen* Court held that the district court had subject matter jurisdiction because (1) "the monetary aspects of the relief that the State sought are not 'money damages' as that term is used in the law," and (2) the available remedies in another court were not an adequate substitute for APA review because the Court of Claims "does not have the general equitable powers of a district court to grant prospective relief." *Id.* at 893–94, 904–08.

Plaintiffs emphasize the Supreme Court's distinction between a claim for equitable relief and a claim for money damages:

> Our cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with backpay, or for the recovery of specific property or monies, ejectment from land, or injunction either directing or restraining the defendant officer's actions. The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as "money damages." Thus, we have recognized that relief that orders a town to reimburse parents for educational costs that Congress intended the town to pay is not "damages". . . .

*Id.* at 893–94 (citations omitted) (discussing *Burlington*).

Because *Burlington* and *Bowen* involved the interpretation of statutes not at issue here, the decisions are not directly applicable. The reasoning in *Burlington* and *Bowen*, however, demonstrates that, although courts might occasionally use terms like "damages," "compensation," and "monetary relief" interchangeably, there are certain contexts where the terms are not strictly synonymous. *See, e.g.*, *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 570 (1990) (analyzing the historical legal vs. equity distinction for purposes of Seventh Amendment right to a jury trial); *Sch. Union No. 37 v. United Nat. Ins. Co.*, 617 F.3d 554, 562 (1st Cir. 2010) (noting that a single type of monetary order, back pay, can be a form of equitable relief or legal relief depending on the circumstances).

Consistent with the Supreme Court's reasoning, Plaintiffs' proposed claim for equitable relief could conceivably include a reimbursement remedy that might be distinguished from money damages. An equitable claim for reimbursement, therefore, was not necessarily addressed by the Court in its ruling on the prior motions to dismiss.

The assessment of the possible futility of Plaintiffs' proposed amendment requires the Court to determine whether, in the context of this § 1983 action, a claim for equitable relief is actionable even if the Court were to conclude that a claim for equitable reimbursement does not constitute a claim for money damages. That is, the Court must assess whether Plaintiffs could potentially recover on a claim for equitable reimbursement

given the Court's prior analysis in the case of sovereign immunity, qualified immunity, and the limits of municipal liability under § 1983.[4]

### 2. Sovereign Immunity, Qualified Immunity, and Municipal Liability

Plaintiffs are not the first litigants to invoke restitution or reimbursement in response to certain limitations on damages claims. Because parties could characterize many types of damages as reimbursement or restitution, courts have concluded that a plaintiff's "descriptors . . . are not dispositive." *Resolute Forest Prod., Inc. v. U.S. Dep't of Agric.*, 219 F. Supp. 3d 69, 75 (D.D.C. 2016); *The Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 661 (9th Cir. 2019) ("plaintiffs attempt to characterize the relief they seek as equitable by labeling it 'restitution' and 'disgorgement,'" but "we must look to the substance of the remedy sought rather than the label placed on that remedy") (quotation marks omitted). Notably, as discussed in further detail below, when a party has attempted to rely on the historical distinction between equitable and legal relief to avoid dismissal of monetary claims in circumstances similar to this case, other courts have been unpersuaded. *See Tristani v. Richman*, 609 F. Supp. 2d 423, 486–87 (W.D. Pa. 2009) affirmed in part and vacated in part on other grounds, *Tristani ex rel. Karnes v. Richman*, 652 F.3d 360 (3d Cir. 2011) (noting that "[Plaintiffs] apparently believe that they can circumvent both [Sovereign Immunity] (which bars them from obtaining retroactive monetary payments

---

[4] The analysis of a § 1983 claim must be distinguished from a claim asserted pursuant to a statute that specifically authorizes a reimbursement remedy and waives sovereign immunity. For instance, as referenced above, a party aggrieved by a school district's failure to provide a child identified as having a disability with a free appropriate education can recover reimbursement for expenses in private education pursuant to the Individuals with Disabilities Education Act. *See* 20 U.S.C. § 1400 et seq.; *Lebron v. Commonwealth of Puerto Rico*, 770 F.3d 25, 29 (1st Cir. 2014).

from the [state agency], or from [the state official] in her official capacity) and qualified immunity . . . by asserting "equitable restitution" claims against [government employees] in their individual capacities" but concluding "that position is untenable").

Under the doctrine of sovereign immunity exemplified by the Eleventh Amendment, state governments may not be sued unless they voluntarily waive their immunity or it is clearly abrogated by valid federal legislation. *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253–54 (2011). "However, the exception to [sovereign] immunity laid out in *Ex Parte Young*, 209 U.S. 123 (1908), allows federal courts to grant prospective injunctive relief to prevent a continuing violation of federal law, in part because a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." *Doe v. Shibinette*, 16 F.4th 894, 903 (1st Cir. 2021) (internal quotation marks and modifications omitted).

In its prior order, the Court noted that when determining whether the Eleventh Amendment bars a claim, a court is instructed to ask, "whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (quotation marks and modifications omitted). Following the Supreme Court's decision in *Edelman v. Jordan*, 415 U.S. 651 (1974), federal courts have consistently rejected attempts to "impose a liability which must be paid from the public funds in the state treasury" even if (like Plaintiffs' proposed claim) it is characterized as "equitable" restitution or reimbursement. *Id.* at 664–67; *see also*, *Verizon Maryland*, 415 U.S. at 668 ("But no past liability of the State, or of any of its commissioners, is at issue. It does not impose upon

9

the State 'a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials'") (quoting *Edelman*, 415 U.S. at 668); *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015) ("The Constitution does not permit relief that would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by [sovereign immunity]") (internal quotation marks omitted); *Cf. Fred v. Aponte Roque*, 916 F.2d 37, 39 n.2 (1st Cir. 1990) (holding that "[b]ack pay is a retroactive award, and consequently payment thereof from the Commonwealth of Puerto Rico may not be sought" and rejecting the argument that "back pay is equitable relief and that immunity from damages liability does not bar an award of such equitable relief") (citing *Fernández v. Chardón*, 681 F.2d 42, 59 (1st Cir.1982) and other cases); *Price v. Medicaid Dir.*, 838 F.3d 739, 747 (6th Cir. 2016) ("in suits concerning a state's payment of public benefits under federal law, a federal court may enjoin the state's officers to comply with federal law by awarding those benefits in a certain way going forward" but it generally "may not order those officers to pay out public benefits wrongly withheld in the past"). The First Circuit explained in an analogous context:

> It is settled law in the federal courts that backpay as such cannot be awarded against a defendant in his or her individual capacity. By definition, backpay is an award against an employer and, thus, any demand for backpay from an individual-capacity defendant is a non-sequitur. . . As the plaintiffs point out, our previous decisions on this point discuss retroactive awards of wages and benefits, but do not specifically address retirement or Social Security contributions. But the logic that prohibits the imposition of the former against an individual-capacity defendant applies with equal force to the imposition of the latter. The concept of backpay is not monolithic but, rather, encompasses a panoply of items. One common denominator, however, is

10

> that all species of backpay are improper forms of relief when imposed upon a defendant who is sued only in his or her individual capacity.

*Negron-Almeda v. Santiago*, 528 F.3d 15, 26 (1st Cir. 2008) (citations omitted).

Under Plaintiffs' proposed equitable reimbursement claim, Plaintiffs seek a retroactive payment of funds from the state agency rather than from the Commissioner's assets. Plaintiffs' argument acknowledges the point. (*See* Reply at 6, ("The State is to provide 55% of the funding, and the school administrative district is to provide 45%. Title 20-A M.R.S. sec 15671(1). Therefore, it is appropriate for this court to order Defendants Makin and Porter to provide that relief from the Maine Department of Education and from MSAD 51, respectively")). Plaintiffs' claim for equitable reimbursement of the state's per-pupil education funding, therefore, is not within the sovereign immunity exception recognized in *Ex Parte Young*. Accordingly, an amendment to permit Plaintiffs to assert a claim for equitable reimbursement against the Commissioner would be futile.

The proposed amendment to assert a claim for equitable reimbursement against Defendants Porter or Munsey would be similarly futile. The Court dismissed Plaintiffs' money damages claims against the individual defendants on qualified immunity grounds after concluding that the denial of a religious exemption to mandatory school vaccination while granting certain non-religious exemptions would violate a religious objector's constitutional rights was not clearly established law at the time of the school district's decision. (Order at 24-34.) Although the ultimate dismissal referred to claims against the individual defendants for "money damages," the Court previously noted that the doctrine "shields [government employees] from *pecuniary liability* . . . ." *Lawless v. Town of*

11

*Freetown*, 63 F.4th 61, 67 (1st Cir. 2023) (emphasis added).  In other words, while courts often refer to money damages when discussing qualified immunity, to the extent there is a technical distinction between money damages and equitable relief involving the payment of money from a government employee, the doctrine extends to the other forms of relief, however characterized.  *See Roman Cath. Found. v. Regents of Univ. of Wisconsin Sys.*, 590 F. Supp. 2d 1083, 1091 (W.D. Wis. 2008) (qualified immunity protects against "the payment of money out of [officials'] own pockets . . . regardless of the label used to describe it").  As one court explained:

> At any rate, the "backpay" which Lenea seeks from the individual defendants is in the nature of damages, no matter what he calls it, which is barred by their qualified immunity. Lenea tries to circumvent defendants' qualified immunity by arguing that backpay is more in the nature of equitable relief, and hence not barred by qualified immunity.  But Lenea's semantic exercise ignores the purpose for qualified immunity: protection against personal monetary relief so that, among other things, a fear of the threat of personal liability will not deter citizens from holding public office; and avoiding a chilling effect on the exercise of the official's decision-making responsibilities.

*Lenea v. Lane*, 882 F.2d 1171, 1178–79 (7th Cir. 1989) (citations omitted).

Finally, the Court dismissed all claims against MSAD #51 because municipal organizations are only considered "persons" that may be sued under § 1983 when a plaintiff can show that the alleged harm resulted from an official policy or custom of the municipality, *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–92 (1978), and because the "policy" of merely following a binding state law is insufficient. (Order at 24–27 (discussing the consensus of out-of-circuit authority).)  The Court's dismissal of the claims against MSAD #51, therefore, did not depend on a distinction

between money damages and injunctive relief, or legal and equitable remedies. Plaintiffs do not directly set forth a new proposed claim against the district, but even if they had (and to the extent they sought to use the individual defendants to force the municipality to pay), a claim for reimbursement from the district's funds would fail for the same reasons stated in the Court's prior order. The proposed amendment, therefore, would be futile.

## CONCLUSION

Based on the foregoing analysis, I grant Plaintiffs leave to file an amended complaint to modify the request for placement with the relevant school for the age of Plaintiffs' child at the time of the judgment. I also recommend the Court deny Plaintiffs' request to amend the complaint to allege a claim for equitable reimbursement as the claim would be futile in Plaintiffs' § 1983 action.

## NOTICE

Any objections to the Order on Plaintiffs' motion to amend shall be filed in accordance with Federal Rule of Civil Procedure 72.

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 22nd day of February, 2024.