# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

GREGORY FOX, *individually* )
*and as Parent of C.F.*, )
  )
    Plaintiff, )
  )
  v. )   No. 2:22-cv-00251-JAW
  )
PENDER MAKIN, *in her official* )
*capacity as Commissioner*, et al., )
  )
   Defendants. )

## ORDER ON MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. STEPHEN PAULDING

In a suit challenging the state of Maine's public school vaccination requirements, the defendant moves to exclude the testimony of the plaintiff's expert on the grounds that his expert report was prepared by counsel and lacks the support required under Federal Rule of Evidence 702. The plaintiff opposes exclusion of his expert, arguing his expert based his opinions on his medical experience and common sense. After scrutinizing the record, the court finds that the expert's report in this case was written, not by the expert, but by the plaintiff's former attorney, and that the articles appended to the expert report were supplied, not by the expert, but by the attorney. In this unique situation, the court excludes the expert's testimony because it violates the basic requirement of Federal Rule of Civil Procedure 26(a)(2)(B) that an expert witness's written report must be prepared by the witness.

## I.    PROCEDURAL HISTORY

On July 22, 2022, Dr. Gregory Fox, individually and as parent of C.F.,[1] and Rita Fox, individually and as parent of C.F. (jointly, the Plaintiffs), filed a lawsuit in the Cumberland County Superior Court for the state of Maine against the state of Maine, the Maine Department of Education, Maine School Administrative District (MSAD) 51, and various state and local officials (collectively, the Defendants), alleging the Defendants violated the United States Constitution in promulgating and implementing a vaccination policy at MSAD 51. *Notice of Removal*, Attach. 1, *Compl.* (ECF No. 1).  The Defendants initially identified themselves as two groups: the State Defendants (the state of Maine, the Maine Department of Education, and Maine Department of Education Commissioner Pender Makin) and the School Defendants (MSAD 51, MSAD 51 Superintendent Jeffrey Porter, Mabel I. Wilson Elementary School Principal Sally Loughlin, and Mabel I. Wilson Elementary School Vice Principal Corey Munsey). *Notice of Removal* at 1, 3.  On August 17, 2022, the case was removed to this Court. *See, generally, id.*

With the Court's permission, the Plaintiffs filed an amended complaint on December 14, 2022 that did not name either the state of Maine or the Maine Department of Education as defendants and thus left Commissioner Makin and the School Defendants as the only defendants. *Pls.' Mot. to Am. Compl.* (ECF No. 32); *Order* (ECF No. 41); *Pls.' Am. Compl.* (ECF No. 45).

---

[1]    The Court refers to Dr. Fox's minor son by his initials, C.F., in accordance with the Federal Rule of Civil Procedure 5.2. *See* FED. R. CIV. P. 5.2(a)(3).

Next, ruling on motions to dismiss from Commissioner Makin and the School Defendants, respectively, on August 16, 2023, the Court dismissed all claims against MSAD 51 and Principal Loughlin, who had retired, and further dismissed all claims for money damages against Commissioner Makin, Superintendent Porter, and Mr. Munsey.[2]  *Order on Defs.' Mots. to Dismiss* (ECF No. 81).  After the Court's order, the only surviving claims were against Commissioner Makin, Superintendent Porter, and Mr. Munsey in their official capacities for declaratory and injunctive relief.[3]  *Id.*

Following the submission of pre-filing memoranda, the Court held a Local Rule 56(h) conference on September 18, 2024, *Min. Entry* (ECF No. 154), and the next day issued an order on the conference providing a schedule for the proposed motions for summary judgment and responses.  *Order on Local Rule 56(h) Conf.* (ECF No. 155) (*Order*).  At the conference, counsel also raised the possibility that they might file motions relating to the introduction of expert witness testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v.*

---

[2]    After Principal Loughlin retired, Mr. Munsey was promoted to principal of Mabel I. Wilson Elementary School.  *Order on Defs.' Mots. to Dismiss* at 5 n.7.

[3]    On November 20, 2023, the Plaintiffs moved to amend the amended complaint, seeking to modify their prayer for relief based on C.F. aging out of Mabel I. Wilson Elementary School and to add a claim for equitable reimbursement of the expenses paid to educate C.F.  *Pls.' Second Mot. to Am. Compl.* (ECF No. 90).  On February 22, 2024, a United States Magistrate Judge issued an order and recommended decision on the second motion to amend complaint, recommending the Court grant the motion to amend the complaint insofar as it requests placement in the relevant school for the age of the Plaintiffs' child at the time of the judgment but deny the motion insofar as it requests equitable reimbursement.  *Order and Recommended Decision on Mot. to Am. Compl.* at 13 (ECF No. 96).  On July 11, 2024, over the objection of Dr. Fox, the Court affirmed the Magistrate Judge's recommended decision.  *Order on Obj. to Recommended Decision* (ECF No. 118).  Ms. Fox filed her second amended complaint on July 14, 2024, and Dr. Fox filed his second amended complaint on August 1, 2024, each of which incorporated the contents of the first amended complaint with revisions to the prayers for relief.[3]  *Pl. Rita Fox's Second Am. Compl.* (ECF No. 119); *Pl. Gregory Fox's Second Am. Compl.* (ECF No. 127).

3

*Carmichael*, 526 U.S. 137 (1999).  *Id.*  The Court allowed the parties to confer and decide whether to file the dispositive and *Daubert* motions simultaneously or, alternatively, to file the *Daubert* motions first.  *Id.*

Commissioner Makin, with the support of the School Defendants, moved to amend the scheduling order on October 11, 2024, asking the Court to permit filing and resolution of *Daubert* motions before summary judgment.  *Mot. to Amend Scheduling Order* (ECF No. 158).  Dr. Fox responded in opposition to an amendment to the scheduling order on October 15, 2024.  *Pl.'s Opp'n to Comm'r Makin's Mot. to Amend Schedule ECF 158* (ECF No. 161).  Commissioner Makin replied on October 17, 2024 and the School Defendants replied on October 18, 2024.  *Def. Makin's Reply in Support of her Mot. to Amend Scheduling Order* (ECF No. 162); *School Defs.' Reply in Support of Def. Makin's Mot. to Amend Scheduling Order* (ECF No. 164).

On October 21, 2024, the Court granted Commissioner Makin's motion to amend scheduling order over Dr. Fox's objection, staying the deadlines for the filing of motions for summary judgment until the *Daubert* motions are resolved and setting deadlines for the parties to file *Daubert* motions, oppositions, and replies.  *Order on Mot. to Am. Scheduling Order* at 6-7 (ECF No. 165).  On October 25, 2024, Dr. Fox, acting pro se, petitioned the Court to reconsider its order.  *Pet. to Recons. the Decision to Reset Deadlines as to the Ct.[']s Order ECF 165* (ECF No. 167).  The Court dismissed Dr. Fox's motion for reconsideration on November 4, 2024.  *Order on Pet. to Recons.* (ECF No. 168).

On November 8, 2024, in accordance with the deadlines set in the Court's order on motion to amend scheduling order, Commissioner Makin moved to exclude testimony by the Plaintiff's expert witness, Dr. Stephen Paulding, on *Daubert* grounds. *Def. Makin's Mot. to Exclude Opinion Testimony of Dr. Stephen Paulding* (ECF No. 170) (*Makin's Mot.*). Dr. Fox opposed Commissioner Makin's motion on December 6, 2024.[4] *Pl. Gregory Fox's Resp. to Def. Makin's Daubert Mot.* (ECF No. 179) (*Pl.'s Opp'n*). Commissioner Makin replied on December 20, 2024. *Def. Makin's Reply Mem. in Support of Her Mot. to Exclude Opinion Testimony of Dr. Stephen Paulding* (ECF No. 188) (*Makin's Reply*).

The Court issues this order to resolve Commissioner Makin's motion to exclude the expert testimony of Dr. Paulding.

## II.    THE PARTIES' POSITIONS

### A.    Commissioner Makin's Motion to Exclude Testimony

Commissioner Makin moves to exclude Dr. Paulding's testimony comparing the risk of disease transmission by vaccinated and unvaccinated individuals pursuant to Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 702, asserting Dr. Paulding did not prepare his report, his testimony would not aid the trier of fact, and his opinions are not based on reliable methodology or support. *Makin's Mot.* at 1.

Beginning with her claim that Dr. Paulding did not prepare his report himself, Commissioner Makin argues Rule 26 requires any expert witness to disclose his

---

[4]    Ms. Fox also filed an opposition to Commissioner Makin's motion. *See Pl. Rita Fox's Counsel's Resp. to Def. Makin's Daubert Mot.* (ECF No. 175). However, as Ms. Fox stipulated to the dismissal of her case prior to judicial resolution of the pending motion sequence, the Court does not consider the contents of her opposition in resolving the pending motion.

opinions through a "written report . . . prepared and signed by the witness." *Id.* at 3. While some assistance by counsel in the preparation of the report is permitted, she says, an expert report cannot be prepared in full by the party or counsel and then simply signed by the expert. *Id.* at 3-4 (citing *Manning v. Crockett*, No. 95 C 3117, 1999 U.S. Dist. LEXIS 7966, at *4-11 (N.D. Ill. May 17, 1999) (citation amended). Here, Commissioner Makin submits, it is undisputed that Plaintiff's then counsel Attorney Whiting drafted the expert report and presented it to Dr. Paulding, who then agreed to sign his name to it. *Id.* at 4 (citing *id.*, Attach. 4, *Deponent: Stephen B. Paulding, M.D.* at 59:4-12 (*Paulding Dep. Tr.*)). She further contends that Attorney Whiting also presented Dr. Paulding with all the medical articles he relied on in forming his opinion. *Id.* (citing *Paulding Dep. Tr.* at 6:12-8:10).

Commissioner Makin also emphasizes the overt similarities between Dr. Paulding's opinions as stated in his expert report and the allegations Plaintiffs advance in the amended complaint. *Id.* (comparing, e.g., *id.*, Attach. 1, *Pls.' Expert Witness Designation and Consolidated Expert's Rep.* at 2 (*Paulding Rep.*) ("A new student attending school for 90 days without first receiving one or more of the 9 required vaccinations poses the same risk of spreading those diseases to other students as a student with religious objections who attends school for that same time period without being vaccinated against those diseases") *with Pls.' Am. Compl.* ¶ 18.2 ("In particular, allowing new students to attend school without being vaccinated for 90 days poses the same risk of spreading diseases throughout the school as allowing unvaccinated religious objecting students to attend school would pose[. . .] at least for

the first 90 days of each new student's attendance"). Commissioner Makin argues Dr. Paulding's "conclusory statements are substantively identical to the allegations in Plaintiffs' Amended Complaint, which was also drafted by Plaintiffs' counsel," and contends the expert's opinions should thus be excluded as violative of Rule 26(a). *Id.* at 4-5 (citing *Ask Chemicals, LP v. Computer Packages, Inc.*, 593 F. App'x 506, 510 (6th Cir. 2014) ("Where an expert merely offers his client's opinion as his own, that opinion may be excluded")).

Commissioner Makin continues to claim that, even if the Court were to conclude that the Plaintiffs' expert report is compliant with Rule 26(a)(2)(B), Dr. Paulding's opinion constitutes common knowledge or simple logic, such that designation as expert opinion is erroneous. *Id.* at 5 (citing *United States v. Zajanckauskas*, 441 F.3d 32, 39 (1st Cir. 2006)). She asserts that his "fundamental conclusion is that all unvaccinated individuals are equally likely to spread a particular disease," which Dr. Paulding himself describes as "common sense." *Id.* at 5-6 (citing *Paulding Rep.* at 2-3; *Paulding Dep. Tr.* at 56:16-21 ("I believe it's just common sense that . . . whether they're unvaccinated for one reason or are unvaccinated for a different reason makes very little difference to be unvaccinated"), 57:1-9 (basing his opinions on common sense and experience)). Commissioner Makin argues Dr. Paulding's conclusions based on common sense should be excluded as simply beyond the scope of expert opinion testimony. *Id.* at 6.

Commissioner Makin next urges the Court to exclude Dr. Paulding's testimony, even if accepted as proffered expert opinion, for lack of reliable principles

or methodology. *Id.* (collecting federal cases regarding the requirements for expert testimony to be admissible, including scientifically valid principles and methodology). Addressing his alleged lack of methodology, Commissioner Makin argues Dr. Paulding's report "reaches a series of conclusions regarding comparability of risk, but nowhere in his report does he explain how he reached those conclusions." *Id.* at 6-7 (citing *Paulding Rep.* at 2-3) (internal citations omitted). While he attached a number of medical articles to his report and stated he relied on them, *id.* at 7 (citing *Paulding Dep. Tr.* at 7:22-8:10), Dr. Paulding also said at deposition that he "ha[d] not looked at all of th[o]se documents in detail" and his report barely mentions them, explaining that his opinions were based on his experience as a family practitioner. *Id.* (quoting *Paulding Dep. Tr.* at 6:23-7:6, 18:24-19:9).

Commissioner Makin concedes Rule 702 permits expert opinions based on experience but insists "[i]f the [expert] witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* (citing *Brown v. Wal-Mart Stores, Inc.*, 402 F. Supp. 2d 303, 308 (D. Me. 2005) (in turn quoting FED. R. EVID. 702 advisory committee note)). Rule 702 does not permit admitting non-scientific expert testimony based on *ipse dixit*. *Id.* at 7-8 (citing, e.g., *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *United States v. Gonyer*, No. 1:12-cr-00021-JAW, 2012 WL 3043020, at *2 (D. Me. July 24, 2012)). Here, Commissioner Makin contends Dr. Paulding's conclusory statements do not satisfy this requirement. *Id.* at 8-9 (collecting cases from the First

8

Circuit and the District of Maine which excluded conclusory expert testimony, and citing *Paulding Dep. Tr.* at 44:10-12, 52:7-9, 57:3-4).

She adds that, while factual underpinnings usually go to the weight of an expert's opinion rather than its admissibility, an expert opinion must at minimum present sufficient factual grounds to draw their conclusions. *Id.* at 9 (citing *Damon v. Sun Co.*, 87 F.3d 1467, 1475 (1st Cir. 1996)). Dr. Paulding's report, she says, bases its conclusions on only one specific fact: "the fact that one unvaccinated person is just as likely to contract and spread a disease as another unvaccinated person, all other things being equal," *id.* at 10 (quoting *Paulding Rep.* at 3). Commissioner Makin objects that this fact is only supported, by Dr. Paulding's own admission, by "common sense" and "his observations as a family practitioner," not by any scientific evidence, and is "at best, a theory." *Id.* at 10 (for the former, quoting *Paulding Dep. Tr.* at 57:3-19).

## B.    Dr. Fox's Opposition

Dr. Fox opposes Commissioner Makin's requested exclusion of Dr. Paulding, first arguing that Dr. Paulding's experience as a family practitioner rather than a specialist in vaccines does not affect the admissibility of his expert testimony. *Pl.'s Opp'n* at 1-2 (citing *Payton v. Abbott Labs*, 780 F.2d 147, 150 (1st Cir. 1985) ("The fact that the physician is not a specialist in the field in which he is giving his opinion affects not the admissibility of his opinion but the weight the jury may place on it")). Dr. Fox also responds to Commissioner Makin's argument under Rule 26(a)(2)(B), asserting Plaintiff did not dispute the report's probative value or raise issues with the alleged assistance of counsel during the discovery period, which ended on July 19,

9

2024, such that Commissioner Makin should not be permitted to raise a Rule 26 argument within a *Daubert* challenge to expert reliability. *Id.* at 2. Dr. Fox asserts Dr. Paulding permissibly reached his conclusions with assistance of counsel based on the law and factual elements of the case. *Id.* at 5.

Turning to Commissioner Makin's challenge to Dr. Paulding's expert opinions under Rule 702, Dr. Fox claims she seeks to deny Dr. Paulding's opinions based on common sense as unreliable by asking the Court to "to apply a standard of scientific certainty to the testimony beyond that which Daubert envisions or demands." *Id.* at 3 (citing *Daubert*, 509 U.S. at 590 ("arguably, there are no certainties in science")). In addition to common sense, Dr. Fox points out, Dr. Paulding based his conclusions on "his medical knowledge, differential diagnosis skills, and experience" and thus exercised his "medically reasonable judgment . . . in a valid and scientific manner that a layperson cannot." *Id.* at 4. Focusing on differential diagnosis, Dr. Fox asserts "'two unvaccinated individuals' was the foundation he qualified the remainder of this analysis 'all things being equal' in the differential consideration," which demonstrates Dr. Paulding's reasoning skills and medical judgment. *Id.* Dr. Fox submits Dr. Paulding's use of differential judgment, which "rules in" all possible causes before "ruling out" unlikely causes to identify the most likely, is supported by caselaw of the First Circuit. *Id.* at 5 (citing, e.g. *Milward v. Acuity Specialty Prods. Grp.*, 639 F.3d 11, 19 (1st Cir. 2011); *Granfield v. CSX Transp., Inc.*, 597 F.3d 474, 486 (1st Cir. 2010); *Baker v. Dalkon Shield Claimants Tr.*, 156 F.3d 248, 253 (1st Cir. 1998)).

Dr. Fox argues the Defendants have neither argued nor provided any factual data to support the claim that nonreligious exemptions pose a lesser risk of transmission than unvaccinated religious observers. *Id.* He directs the Court to *Tandon v. Newsom*, 593 U.S. 61 (2021), which he describes as holding that the free exercise of religion must be given the same favored status as any comparable secular activity and placing the burden on the state to justify any imposition on religious exercise. *Id.* at 5-6 (citing *Tandon*, 593 U.S. at 63). Dr. Fox also quotes a passage from *Lowe v. Mills*, 68 F.4th 706 (1st Cir. 2023), in which the First Circuit declined to dismiss an analogous claim based on the state of Maine's argument that it did not ground its decision to provide only medical exemptions on comparative risk and concluded that the Supreme Court had directed courts to assess comparability of risk in the public health context. *Id.* at 6 (citing *Lowe*, 68 F.4th at 714-15 (in turn citing *Tandon*, 593 U.S. at 62)).

Dr. Fox argues further that the Defendant's expert, Dr. Laura Blaisdell, when asked about comparability of transmission risk, answered "the risk of transmission is unknowable." *Id.* at 6-7 (citing *id.*, Attach. 3, *Video Dep. of Dr. Laura Blaisdell* at 21:21-25:10 (*Blaisdell Dep. Tr.*)). Dr. Fox tells the Court that he sought information on the Defendant's reasoning regarding risk comparisons of non-religious exemptions to vaccination requirements and unvaccinated adults in public schools through interrogatories and requests for admission, which Commissioner Makin responded to on January 29, 2024 and again on April 18, 2024 by saying the State does not deny diseases for which students are required to be vaccinated can be spread by adults.

11

*Id.* at 7-8 (citing *Tr. of Proceedings* 4:7-13, 8:6-19 (ECF No. 159) (*Discovery Hr'g Tr.*)). Dr. Fox notes his second set of interrogatories also sought information on the Defendant's knowledge and applied criteria for risk analysis—specifically, "1) Correlate of Protection (COP), 2) Relative Cor[r]elate, (3) Absolute Cor[r]elate, and Co-Correlate of Protection"—and that Commissioner Makin did not object but "denie[d] that any of these terms are [relevant] to the issues presented in this case." *Id.* at 8 (citing *id.*, Attach. 6, *Def. Pender Makin's Answers to Pl. Gregory Fox's Second Set of Interrogs.* at 5).

Based on the above, Dr. Fox asserts Defendants "had multiple opportunities to provide facts and information in support of denial of comparability of risks," and that Dr. Paulding's expert report accurately accounts for facts provided from Defendant's responses, which Dr. Fox claims "were deficient and problematic" despite those answers being confirmed as sufficient by the Magistrate Judge. *Id.* at 8-9 (citing *Discovery Hr'g Tr.* at 8:14-15). Dr. Fox contends Rule 702 and *Daubert* do not require a proponent of expert testimony to prove the expert's assessment is correct, merely that it "rests upon 'good grounds, based on what is known.'" *Id.* at 9 (quoting *Daubert*, 509 U.S. at 590). Plaintiff insists the Court should not assume Dr. Paulding would not consider more facts if the Defendant had provided them in discovery, and argues Commissioner Makin's responses were "devoid of facts for the Plaintiff's expert to analyze." *Id.* at 10. "Lack of certainty is not, for a qualified expert, the same thing as guesswork," he proffers. *Id.* (quoting *Acuity Specialty Prods. Grp.*, 639 F.3d at 22

(in turn quoting *Primiano v. Cook*, No. 06-15563, 2010 U.S. App. LEXIS 8859 at *13-14 (9th Cir. Apr. 27, 2010))).

Dr. Fox concludes that Dr. Paulding's opinions are reliable and supported by law. *Id.* at 10-11.

### C.    Commissioner Makin's Reply

Commissioner Makin replies in support of her motion, reasserting her claims that Dr. Paulding's expert report was prepared by counsel, does not assist the trier of fact, and is not the product of reliable principles and methods, such that it must be excluded. *Makin's Reply* at 1-5.

She first reiterates her arguments that Attorney Whiting drafted Dr. Paulding's report and provided all resources he relied upon in violation of Rule 26(a)(2)(B). *Id.* at 1-2 (citing *Paulding Dep. Tr.* at 6:12-8:10, 59:4-12). After collecting federal caselaw in which courts have excluded expert testimony prepared by counsel, Commissioner Makin notes Dr. Fox presents no countervailing authority regarding preparation of an expert report by counsel, nor does he explain why this violation is "substantially justified" or "harmless" pursuant to Federal Rule of Civil Procedure 37(c)(1). *Id.* Rather, Commissioner Makin says, Dr. Fox asserts without citing authority that she should have challenged Dr. Paulding's report on this basis at an earlier stage of the proceeding. *Id.* at 2-3. Commissioner Makin directs the Court to caselaw from other federal districts in which motions to exclude expert testimony for lack of preparation were brought alongside *Daubert* motions. *Id.* at 3 (citing, e.g., *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, Civil. Action No. 5:11-374-DCR, 2014 U.S. Dist. LEXIS 59689, at *18-19 (E.D. Ky. Apr. 30, 2014)

(citation amended); *DataQuill Ltd. v. Handspring, Inc.*, No. 01 C 4635, 2003 U.S. Dist. LEXIS 2981, at *4-5 (N.D. Ill. Feb. 28, 2003) (citation amended)).

Commissioner Makin next asserts that Dr. Paulding's expert opinions do not assist the trier of fact because his proposed testimony "easily can be derived from common sense, common experience, the trier of fact's own perceptions, or simple logic." *Id.* at 3 (quoting *Zajanckauskas*, 441 F.3d at 39). She also argues Dr. Paulding's proposed testimony satisfies none of the bases for admissible expert testimony, which Rule 702 permits only "if (1) 'the testimony is based on sufficient facts or data,' (2) 'the testimony is the product of reliable principles and methods,' and (3) the witness has applied those principles and methods reliably to the facts of the case." *Id.* (quoting FED. R. EVID. 702 and citing *Daubert*, 509 U.S. at 597). She reiterates her position that Dr. Paulding provided no reliable methodology or description of the facts and data that formed the basis of his opinion. *Id.* at 3-4.

Responding to Dr. Fox's assertion that the Defendants "are at fault for any insufficiency in Dr. Paulding's opinion" based on deficient discovery responses, *id.* at 4 (citing *Pl.'s Opp'n* at 5-9), Commissioner Makin insists his argument is inapposite and flips the burden of persuasion by focusing on the Defendants rather than showing that Dr. Paulding's opinion is based on sufficient data and reliable methods. *Id.* (citing *Milward v. Rust-Oleum Corp.*, 820 F.3d 469, 473 (1st Cir. 2016) ("The party seeking to introduce" expert opinion "has the burden of establishing both its reliability and its relevance") (in turn citing *Daubert*, 509 U.S. at 593 n.10; FED. R. EVID. 702. advisory committee's note to 2000 amendment) (citation amended)). She

14

adds that Dr. Fox errs by asserting Dr. Paulding was limited to facts disclosed by the Defendants during discovery, directing the Court to the language of Federal Rule of Evidence 703:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

*Id.* at 4-5 (quoting FED. R. EVID. 703). Commissioner Makin also clarifies that her motion does not ask the Court to choose among competing methodologies, as Dr. Fox suggests, but rather argues Dr. Paulding has presented no methodology as the basis for his opinions. *Id.* at 5.

Lastly, Commissioner Makin asks the Court to disregard Dr. Fox's claim that "Attorney Whiting provided Dr. Paulding with 'facts that the expert relied on in forming the opinions to be expressed,'" *id.* (quoting *Pl.'s Opp'n* at 10), as unsupported by the evidence. *Id.* For all these reasons, Commissioner Makin asks the Court to exclude Dr. Paulding's proffered expert testimony. *Id.* at 5, 7.

## III. LEGAL STANDARD

Federal Rule 26 requires expert witnesses to disclose "a written report— prepared and signed by the witness," which must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

15

> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. P. 26(a)(2)(B); *accord Duval v. United States VA*, 69 F.4th 37, 43 (1st Cir. 2023) (explaining the rule "requires expert witness reports to include a complete statement of all opinions the witness will express and the basis and reasons for them") (internal quotation marks omitted)).  If a party fails to provide information required under Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  FED. R. CIV. P. 37(c)(1); *accord, e.g.*, *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998) (excluding evidence under Rule 37(c)(1) for violations of Rule 26(a)).

The admissibility of expert testimony is a question of law governed by Federal Rule of Evidence 702 and by the United States Supreme Court in *Daubert* and its progeny.[5]  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or otherwise specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>>
>> (b) the testimony is based on sufficient facts or data;
>>
>> (c) the testimony is the product of reliable principles and methods; and

---

[5]     *See, e.g., Daubert*, 509 U.S. 579; *Kumho Tire Co.*, 526 U.S. 137.

(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The First Circuit has "long entrusted federal trial judges to be 'gate-keeper[s],' empowered by Rule 702 and *Daubert* to 'ensure that an expert's testimony "both rests on a reliable foundation and is relevant to the task at hand."'" *United States v. Vargas*, 471 F.3d 255, 261 (1st Cir. 2006) (quoting *Daubert*, 509 U.S. at 597).

In general, "[e]xpert testimony is admissible if 'scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue' and if the proposed witness is qualified as an expert by some specialized 'knowledge, skill, experience, training, or education.'" *Liberty Mut. Ins. Co. v. Broan-NuTone LLC*, No. 21-cv-11986-DLC, 2024 U.S. Dist. LEXIS 76408, at *5-6 (D. Mass. Apr. 26, 2024) (quoting *Daubert*, 509 U.S. at 588). "A district court may exclude expert testimony where it finds that the testimony has no foundation or rests on . . . speculative evidence." *Schubert v. Nissan Motor Corp. in U.S.A.*, 148 F.3d 25, 29-30 (1st Cir. 1998) (quoting *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 681 (1st Cir. 1994)); *accord Gonzalez-Arroyo v. Drs.' Ctr. Hosp. Bayamon, Inc.*, 54 F.4th 7, 14 (1st Cir. 2022) ("to provide admissible testimony, an expert must render conclusions 'in a scientifically sound and methodologically reliable fashion'") (quoting *Acuity Specialty Prods. Grp.*, 639 F.3d at 15))

"Neither *Daubert* nor Rule 702 permits expert opinions grounded only in the unsupported assertions of the expert." *Gonzalez-Arroyo*, 54 F.4th at 14 (citing *López-Ramírez v. Toledo-González*, 32 F.4th 87, 94 (1st Cir. 2022)). "[T]he overarching

concern is on the 'evidentiary relevance and reliability' of the proposed testimony," with speculative expert testimony often satisfying neither criterion. *Seahorse Marine Supplies, Inc. v. P.R. Sun Oil Co.*, 295 F.3d 68, 81 (1st Cir. 2002) (quoting *Daubert*, 509 U.S. at 595). Should a court determine an expert opinion is unsupported, the First Circuit directs "a court may conclude that there is simply too great an analytical gap between the data and the opinion proffered, provided that gap is not of the district court's making." *Gonzalez-Arroyo*, 54 F.4th at 14 (citing *López-Ramírez*, 32 F.4th at 94) (internal citations and quotation marks omitted)).

Exclusion of proposed expert witnesses often occurs in the run-up to trial; however, the First Circuit has clarified that the same standard applies to motions brought at the summary judgment stage. *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 31-32 (1st Cir. 2004) ("Evidentiary rulings have the potential to shape and winnow the scope of the summary judgment inquiry, and a trial court should have as much leeway in dealing with those matters at the summary judgment stage as at trial").

## IV.   DISCUSSION

After reviewing the parties' filings and the record, the Court concludes Dr. Paulding's expert opinions do not comport with the well-established rules governing federal practice and warrant exclusion. In particular, the Court concludes that Dr. Paulding did not prepare the December 15, 2023 written expert report, *see Paulding Rep.* at 2-4, as required by Federal Rule of Civil Procedure 26(a)(2)(B). Instead, Mr. Fox's then attorney Stephen Whiting prepared Dr. Paulding's report, and Dr.

Paulding only signed it. [6]  This highly unusual situation compels the Court to exclude Dr. Paulding's expert witness testimony.

### A.    The Record on Preparation of the Report

First, the Court considers Commissioner Makin's complaint that Attorney Whiting prepared Dr. Paulding's report in violation of Federal Rule of Civil Procedure 26.  The Court has carefully reviewed the record to determine whether it reveals who wrote Dr. Paulding's report, Dr. Paulding or Attorney Whiting.  The Court concludes that Attorney Whiting not only wrote Dr. Paulding's report, but he also provided the articles appended to the Paulding report.  Unfortunately for Dr. Fox, the record allows no finding other than the Paulding report was in fact the Attorney Whiting report.

At his July 8, 2024 deposition, Assistant Attorney General (AAG) Kimberly L. Patwardhan directly questioned Dr. Paulding about who authored his expert report:

> Q.  With respect to your opinion about the grace period, just talking about that right now, did you review any documents in order to form that opinion?
>
> A.  No.
>
> Q.  Did you talk to anyone in forming that opinion?
>
> A.  I believe that Mr. Whiting's wording of this is - - he offered to me and I agreed with it.
>
> Q.  Did you write this?

---

[6]    Attorney Whiting moved to withdraw as attorney for Dr. Fox on March 8, 2024, explaining Dr. Fox had terminated him as counsel.  *Mot. to Withdraw as Counsel for Pl. Gregory Fox* (ECF No. 100). The Court granted Attorney Whiting's motion that same day.  *Order* (ECF No. 101).  Since that date, Dr. Fox has represented himself pro se in this matter.

A.  Not specifically.  I agreed with it after Mr. Whiting presented it to me in this report.

Q.  So to be clear, Mr. Whiting drafted this expert report?

A.  Yes.

*Paulding Dep. Tr.* at 58:25-59:12.  Thus, Dr. Paulding clearly conceded at his deposition that Attorney Whiting drafted the expert report, and Dr. Paulding merely agreed with the report as drafted.

Both Attorney Whiting and Dr. Fox questioned Dr. Paulding during his deposition; however, neither Attorney Whiting nor Dr. Fox elicited any testimony to contradict Dr. Paulding's prior statements that the expert report was drafted by Attorney Whiting and presented to Dr. Paulding.  *Id.* 81:15-85:3 (Attorney Whiting), 85:18-104:8 (Dr. Fox), 108:12-109:20 (Dr. Fox).  In fact, the phrasing of Attorney Whiting's own questioning implicitly supports Commissioner Makin's contention that Dr. Paulding's involvement in the report was limited to signing it.  *Id.* at 83:22-24 ("[Attorney Whiting:] And you took that into consideration when you signed this report?  [Dr. Paulding:] Yes")

The colloquy at deposition also reveals that the medical articles appended to Dr. Paulding's report were entirely provided by Attorney Whiting, and further that Dr. Paulding "ha[d] not looked at all of th[o]se documents in detail," nor was he even entirely sure of their contents:

[AAG Patwardhan:] Okay.  So, again, I just want to be clear, do you have any documents that were provided to you by Mr. Whiting or [Dr.] Fox that you considered in forming your expert opinion?

[Dr. Paulding:] I have not looked at all of these documents in detail so, no, I have not considered these documents.  I thought they were just

evidence of the fact that there was a discussion and a disagreement about vaccinations.

[AAG Patwardhan:] Did Mr. Whiting provide you with any documents that you relied on in forming your expert opinion?

[Dr. Paulding:] Yes.

[AAG Patwardhan:] What documents were those?

[Dr. Paulding:] These are a list of articles from medical journals which pertain to the diseases that we had discussed, and I have been aware of this -- these diseases for many years, and I have always been pro vaccine with my patients.

[AAG Patwardhan:] So the articles that were attached to your expert report, were all of those articles provided to you by Mr. Whiting?

[Dr. Paulding:] Yes.

[AAG Patwardhan:] And did you consider all of those documents in forming your expert opinion?

[Dr. Paulding:] I did.

. . . .

[AAG Patwardhan:] Other than the documents that Mr. Whiting provided to you that were attached to your expert report, did you consider, rely or review any other documents in forming your expert opinion?

[Dr. Paulding:] I think that these and my years of experience have formed my opinions.

[AAG Patwardhan:] Did you rely on any other document or information other than the ones that were attached to your expert report?

[Dr. Paulding:] No.

*Id.* at 6:23-7:21, 8:1-10.  In fact, during Attorney Whiting's examination of Dr. Paulding, Attorney Whiting confirmed that he had provided Dr. Paulding with seventeen articles, and Dr. Paulding agreed that he had relied on these seventeen articles in coming to his conclusions.  *Id.* at 82:8-83:2; 85:9-15.

21

Based on this evidence, the Court finds that Attorney Whiting wrote Dr. Paulding's expert report and supplied all the articles appended to the Paulding report. Indeed, these conclusions seem compelled by Dr. Paulding's frank responses at his deposition.

### B.    The Law on Expert Reports Authored by Counsel

Unfortunately for Dr. Fox, the Court's finding that Attorney Whiting, not Dr. Paulding, authored Dr. Paulding's expert report and supplied the corroborating articles appended to the report compels the Court to exclude Dr. Paulding's testimony as an expert witness in this case. Not surprisingly, there is a dearth of First Circuit caselaw on the degree to which counsel may draft an expert report. Of the two district courts within the First Circuit to have considered the question, both recognized that "it is generally accepted that the rule requires the expert to 'substantially participate in the preparation of his report.'" *Flebotte v. Dow Jones & Co.*, Civil Action No. 97-30117-FHF, 2000 U.S. Dist. LEXIS 19875, at *25 (D. Mass. Dec. 6, 2000) (quoting *Manning*, 1999 U.S. Dist. LEXIS 7966, at *8); *accord Inmusic Brands, Inc. v. Roland Corp.*, No. 17-00010-MSM, 2023 U.S. Dist. LEXIS 101526, at *5 (D.R.I. June 12, 2023) ("Rule 26 is violated when the expert is not involved whatsoever in the preparation of his expert report") (citing same).

Federal district courts in other circuits have uniformly disapproved of expert testimony revealed to be the exclusive product of counsel. *See, e.g., Best Process Sols., Inc. v. Blue Phx. Inashco USA, Inc.*, No. 1:21-cv-00622, 2023 U.S. Dist. LEXIS 205028, at *8 (N.D. Ohio Nov. 16, 2023) ("Counsel may not prepare the report for the

witness"); *Manning*, 1999 U.S. Dist. LEXIS 7966, at *8 ("preparing the expert's opinion from whole cloth and then asking the expert to sign it if he or she wishes to adopt it conflicts with Rule 26(a)(2)(B)'s requirement that the expert 'prepare' the report"); *Ask Chemicals*, 593 F. App'x at 510 (6th Cir. 2014) ("Where an expert merely offers his client's opinion as his own, that opinion may be excluded"); *Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 941 (E.D. Mich. 2014) ("An expert witness who is merely a party's lawyer's avatar contributes nothing useful to the decisional process"); *Bekaert Corp. v. City of Dyersburg*, 256 F.R.D. 573, 579 (W.D. Tenn. 2009) (excluding proffered expert testimony because the expert report "was originally prepared by Defendant's counsel"); *cf. Crowley v. Chait*, 322 F. Supp. 2d 530, 544 (D.N.J. 2004) (declining to exclude an expert report where the witness "claim[ed] to have offered substantial input into what was put into the report").

As analyzed in detail in *Manning*, the 1993 advisory committee notes to Rule 26 permit some degree of participation by counsel in the preparation of an expert's report. *Manning*, 1999 U.S. Dist. LEXIS 7966, at *4-5 (citing FED. R. CIV. P. 26(a)(2)(B) advisory committee's notes to 1993 amendment). After considering other court's analysis of the requirements of Rule 26(a)(2)(B), the *Manning* Court concluded that "[the other court decisions], as well as the advisory committee notes to Rule 26(a)(2), stand for the proposition that some attorney involvement in the preparation of an expert report is permissible, but that the expert must also substantially participate in the preparation of the report." *Id.* at 8. The *Manning* Court distinguished "an attorney's assistance with the preparation of documents required

by Rule 26, such as a list of cases in which the expert has testified, or fine-tuning a disclosure with the expert's input to ensure that it complies with the rules" from "[p]reparation [which] implies involvement other than perusing a report drafted by someone else and signing one's name at the bottom to signify agreement." *Manning*, 1999 U.S. Dist. LEXIS 7966, at *8-9. The *Manning* Court thus summarized its holding as: "[i]n other words, the assistance of counsel contemplated by Rule 26(a)(2)(B) is not synonymous with ghost-writing." *Id.* at 9. This Court agrees with the *Manning* Court's analysis of Rule 26(a)(2)(B) and considers Dr. Paulding's report and testimony under this framework.

After reviewing the record, the Court agrees with Commissioner Makin that the preparation of Dr. Paulding's purported expert report by Attorney Whiting, as well as his providing Dr. Paulding with all the resources appended to his report, is deeply problematic and inconsistent with the requirements of Rule 26. *Makin's Mot.* at 3-5. The plain language of Rule 26 requires, inter alia, the disclosure of "a written report—*prepared* and signed by the witness." FED. R. CIV. P. 26(a)(2)(B) (emphasis added by Court). Based on this Court's finding that Attorney Whiting authored Dr. Paulding's expert report and supplied the attached articles, the Court must conclude that Dr. Paulding's report does not comply with Rule 26(a)(2)(B) because Dr. Paulding did not prepare it as the Rule requires. The Court observes that there is no evidence in this record that Attorney Whiting's involvement fell inside the permissible edges of an attorney's involvement with an expert report allowed under the caselaw. There is an obvious difference between an attorney editing an expert report for form or

clarity and an attorney writing the report for the expert.  Here, Attorney Whiting wrote Dr. Paulding's report.

To the extent that Dr. Fox's response insists that Dr. Paulding, not Attorney Whiting, wrote the expert report, *see Pl.'s Opp'n* at 10, the Court must reject his contention as unsupported by the record.  Dr. Fox also raises another defense, placing dispositive weight on his argument that Commissioner Makin's challenge under Rule 26(a)(2)(B) was not brought during the discovery period.  *Id.* at 2.  The Court is not persuaded by this claim.  First, as Dr. Fox notes, the discovery period concluded on July 19, 2024, and Dr. Paulding's deposition at which Attorney Whiting's authorship became clear was not held until July 8, 2024, leaving Defendants very little time to raise this issue within the discovery period.  *Id.*; *Makin's Reply* at 3 n.1.  Second, moving to exclude Dr. Paulding's report at the *Daubert* stage is appropriate as a challenge to whether the proffered testimony is "the product of reliable principles and methods" and has been permitted by numerous federal district courts.  FED. R. EVID. 702; *see, e.g.*, *Flebotte*, 2000 U.S. Dist. LEXIS 19875, at *21-25 (granting a motion to exclude proffered expert testimony based on Rule 26(a)(2)(B) violations); *Inmusic Brands, Inc.*, 2023 U.S. Dist. LEXIS 101526, at *5 (same); *James T. Scatuorchio Racing Stable, LLC*, 2014 U.S. Dist. LEXIS 59689, at *18-19 (same).

Based on Dr. Paulding's uncontroverted testimony that Attorney Whiting drafted the expert report and provided all appended sources, the Court concludes the record evidences Dr. Paulding's lack of substantial participation in production of his

expert report and thus grants Commissioner Makin's motion to exclude Dr. Paulding's testimony.

## V.    CONCLUSION

The Court GRANTS Defendant Pender Makin's Motion to Exclude Opinion Testimony of Dr. Stephen Paulding (ECF No. 170).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 10th day of March, 2025